No. 16-17050

IN THE

**UNITED STATES COURT OF APPEALS**

FOR THE NINTH CIRCUIT

---

PATRICIA HARDING MORRISON
for the Estate of TOMMY MORRISON
*Plaintiff & Appellant,*

v.

QUEST DIAGNOSTICS INCORPORATED
JOHN HIATT
DR. MARGARET GOODMAN
NEVADA STATE ATHLETIC COMMISSION
MARC RATNER
*Defendants & Respondents.*

---

**APPENDIX B: Dockets 277,278,279,283,284,285,286.**

---

| **Contents:** | **Docket:** |
|---|---|
| Opinion & Order...　...　....　...　...　...　...　... | **277** |
| Judgment of Entry...　...　...　...　...　...　...　... | **278** |
| Notice of Appeal...　...　...　...　...　...　...　... | **279** |
| Opposition to Bill of Costs......　...　...　...　...　... | **283** |
| Notice to Stay Judgment...　...　...　...　...　... | **284/285/286** |

2

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| PATRICIA HARDING MORRISON, | Case No. 2:14-cv-01207-RFB-PAL |
| Plaintiff, | **OPINION & ORDER** |
| v. | Defendants' Motions for Summary Judgment<br>(Dkt. No.'s 174 and 175) |
| QUEST DIAGNOSTICS INC.., *et al*. | |
| Defendants. | |

## I.    INTRODUCTION

Before the Court are Defendants Margaret Goodman, Nevada State Athletic Commission (NSAC), and Marc Ratner's Motion for Summary Judgment, (Dkt. No. 174), and Defendants John Hiatt and Quest Diagnostics Incorporated's Motion for Summary Judgment, (Dkt. No. 175). For the reasons stated below, the Court GRANTS summary judgment as to all of Plaintiffs' claims in Defendants' favor.

## II.    BACKGROUND
### A. Procedural History

In July 2014, Plaintiff, the surviving spouse of Tommy Morrison, filed her initial Complaint against Defendants. On October 16, 2015, Plaintiff filed an Amended Complaint as a survival action, in her capacity as the Executor of Tommy Morrison's estate, bringing claims for Negligence, Defamation, Slander, Libel, Fraud, Negligent Misrepresentation, Intentional Infliction of Emotional Distress, and Intentional Interference with a Contract, against all Defendants.

1   Defendants filed Motions to Dismiss the Amended Complaint in October and November of 2015.

2   (Dkt. Nos. 82, 84).

3         Defendants filed Motions for Summary Judgment on June 8, 2016. (Dkt. Nos. 174, 175).

4   On September 8, 2016, the Court held a hearing to address all pending motions in the case,

5   including the fully briefed Motions to Dismiss and Motions for Summary Judgment. (Dkt. No.

6   261). On September 26, 2016, the Court denied the Motions to Dismiss without prejudice, as the

7   pending Motions for Summary Judgment encompass the same arguments. (Dkt. No. 263).

8

9   **B. Factual Background**

10        The Court incorporates its discussion of the undisputed facts from its hearing on September

11  8, 2016. In order to participate in a professional bout of unarmed combat (boxing, MMA, or

12  kickboxing) in the State of Nevada, a person must obtain a license from the NSAC. N.R.S.

13  467.070(1), N.R.S. 467.100. In order to obtain that license, applicants must comply with the

14  requirements found in the Nevada Revised Statutes and Nevada Administrative Code, which

15  includes proof that the applicant meets the medical requirements to obtain a license. A license is

16  valid for the calendar year in which it is issued, and a person must reapply for a license each year

17  in order to take part in professional unarmed combat in Nevada.

18        Tommy Morrison, former world heavyweight boxing champion, was scheduled to

19  participate in a professional boxing match on February 10, 1996, in Las Vegas, Nevada. Mr.

20  Morrison had previously filed applications, and been granted combatant's licenses, in 1989, 1990,

21  1991, 1992, and 1993. On February 7, 1996, Morrison filled out an application for an unarmed

22  combatant's license, but failed to provide all of the medical requirements to obtain a license. That

23  day, Mr. Morrison went to a private physician in Las Vegas, Dr. Voy, to complete his medical

24  examination. Mr. Morrison refused to provide a blood sample for the HIV test. He was told that

25  he could not fight without completing this requirement, so he provided a blood sample, which was

26  sent to APL (Quest Laboratories' predecessor in interest) for analysis.

27        Quest reported the results of the test as positive for HIV. Those results met the clinical

28  laboratory standard of care for HIV-1 antibody testing in 1996, and no evidence has been presented

- 2 -

1     to controvert the accuracy of the results. Quest purchased its HIV-1 antibody confirmatory test

2     kits, which were approved for commercial use by the U.S. Food and Drug Administration

3     ("FDA"), from the test kit manufacturers, and used the kits in accordance with the manufacturers'

4     instructions. Quest used the HIV-1 antibody testing algorithm recommended by the CDC to test

5     for HIV.

6          Tommy Morrison signed a written consent form as part of his application for an NSAC

7     license, allowing the NSAC to receive his HIV test result. On February 10, 1996 and February 12,

8     1996, Quest reported Tommy Morrison's test result to the NSAC and to the authorized physician

9     ordering the test. Marc Ratner, executive director of the NSAC, met privately with Tony Holden,

10    Tommy Morrison's advisor and promoter, and Tommy Morrison's attorney, Stuart Campbell, and

11    informed them of the test result and the cancellation of the fight.

12         Tommy Morrison immediately thereafter submitted to several additional HIV tests to

13    ensure that Quest's result was accurate. All of the testing, including testing by the Center for

14    Disease Control (CDC), came back positive for HIV. Upon receipt of the subsequent positive HIV-

15    1 antibody test results, on February 15, 1996, Tommy Morrison held a press conference in which

16    he announced that he had tested positive for HIV. He gave interviews with Larry King, Maria

17    Shriver, and Maury Povich about his HIV status.

18         From 1996 until Tommy Morrison's death in 2013, he was repeatedly tested, diagnosed,

19    and treated for HIV and/or AIDS by various physicians. In 2007, Tommy Morrison attempted to

20    resume his boxing career, and publicly questioned the accuracy of Quest Diagnostic's February

21    1996 laboratory test result. In response to Mr. Morrison's public statements in 2007, and his efforts

22    to overturn NSAC's 1996 licensing decision, the NSAC contacted Quest regarding the laboratory's

23    procedures for HIV testing. In 2007, Defendant Dr. John Hiatt was the primary laboratory contact

24    at Quest for the NSAC. He explained to the NSAC that the laboratory's HIV testing procedures in

25    1996 met the standard of care in 1996, and were reliable. Dr. Hiatt was not personally involved in

26    the February 1996 HIV-1 antibody testing of Mr. Morrison's blood specimen, nor the reporting of

27    the results. He has never made any statements to the media or press regarding Mr. Morrison, his

28    HIV status, or his HIV test results. Dr. Margaret Goodman was the head of the NSAC's Medical

1   Advisory Board from September 2001 to July 2007. Dr. Goodman requested the information from
2   Dr. John Hiatt in 2007. Dr. Goodman was not personally involved in the February 1996 testing of
3   Mr. Morrison's blood specimen, or NSAC's decisions in 1996 regarding Mr. Morrison's licensing.

4     In 2009, Tommy Morrison met Patricia Harding. In 2009, according to Patricia Harding
5   Morrison's own deposition, Mr. Morrison told her that he considered the 1996 Quest test result to
6   be a false positive. In May 2011, Tommy Morrison married Patricia Harding. On September 1,
7   2013, Tommy Morrison died. His discharge summary at the time of his death included a diagnosis
8   of HIV. Patricia Morrison alleges that, after Tommy Morrison's death, electron microscopy
9   revealed that he never had HIV. However, she has provided no evidence to support this allegation,
10  and the uncontroverted evidence demonstrates that Mr. Morrison was repeatedly diagnosed with,
11  and received treatment for, HIV, from 1996 through 2013. According to Ms. Morrison's
12  deposition, to the best of her understanding based on what she was told by Mr. Morrison in 2009,
13  he had begun questioning whether he actually had HIV beginning in 1996. Ms. Morrison has no
14  first-hand knowledge of events that occurred in Mr. Morrison's life prior to 2009.

15
16    **C. Pending Non-Dispositive Motions**
17    As a preliminary matter, the Court addresses several pending non-dispositive motions in
18  this case.
19    On March 30, 2016, Plaintiff filed a "Request for Judicial Notice in Support of Summary
20  Adjudication/Trial Brief and Plaintiff's Second Amended Complaint" (Dkt. No. 125). In this
21  request, Morrison asks the Court to take judicial notice of thirty-two assertions, and attaches
22  hundreds of pages of exhibits in support of her request. Morrison relies on Fed. R. Evid. 201(b) to
23  support her motion. This rule allows a court to take judicial notice of a fact "not subject to
24  reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction;
25  or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably
26  be questioned." Since the effect of taking judicial notice is to deprive a party of the opportunity to
27  use rebuttal evidence, cross-examination, and arguments to attack contrary evidence, district court
28  typically only do so when the "matter is beyond controversy." See Rivera v. Philip Morris, Inc.,

1    395 F.3d 1142, 1151 (9th Cir. 2005). However, Morrison asks the Court to take judicial notice of

2    asserted facts which are not "beyond controversy", and are couched in arguments related to her

3    case. Furthermore, Morrison did not move to file a Second Amended Complaint, and the Court

4    does not find any good cause for recognizing, sua sponte, the Second Amended Complaint she

5    filed along with her "Request for Judicial Notice". Therefore, the Court denies Morrison's Request

6    for Judicial Notice and does not take her Second Amended Complaint under submission (Dkt. No.

7    125).

8          Defendants have filed several Motions to Strike as to various filings by Ms. Morrison.

9    Defendant Hiatt filed a Motion to Strike (Dkt. No. 205) Plaintiff's "Separate Statement of Disputed

10   Facts and Conclusions of Law in Support of Plaintiff's Opposition to Defendant John Hiatt's

11   Motion for Summary Judgment" (Dkt. No. 191). Defendants NSAC, Goodman, and Ratner, filed

12   Motions to Strike (Dkt. Nos. 212, 217, 218, 222, 224, 225) Plaintiff's "Separate Statements of

13   Disputed Facts and Conclusions of Law" (Dkt. No. 193), and Plaintiff's "Separate Disputed Facts"

14   (Dkt. Nos. 202, 203). Plaintiff filed her separate statements in addition to her Responses to

15   Defendants' Motions for Summary Judgment. The Court's Local Rules do not allow lengthy

16   separate statements in support of pleadings regarding motions for summary judgment. D. Nev.

17   L.R. 56-1. Furthermore, the content of Ms. Morrison's separate statements do not create any

18   disputes as to issues of material fact addressed by Defendants' Motions for Summary Judgment.

19   Therefore, the Court grants Defendants Motions to Strike (Dkt. Nos. 205, 212, 217, 218, 222, 224,

20   225), and does not take Plaintiff's separate statements (Dkt. Nos. 191, 193, 202, 203) under

21   submission. In addition, the Court grants Defendants' Motion to Strike (Dkt. No. 229) Plaintiff's

22   Exhibit 1 filed in support of her Response to Defendants' Motion to Strike her separate statements.

23   This exhibit is an affidavit from Dr. Antonio Oslo, and constitutes supplemental evidence that

24   Plaintiff was not permitted to file without leave of court. D. Nev. LR 7-2(g). The Court does not

25   find good cause for the filing of Dr. Oslo's affidavit, and does not take exhibit 219-1 under

26   submission.

27          Defendants filed a Motion to Strike (Dkt. No. 216) Plaintiff's Exhibit List (Dkt. No. 200).

28   This series of filings consists of a declaration by Plaintiff arguing her theory of her case, a list of

1    objections to Defendants' exhibit list, and a series of documents that contain arguments and legal
2    conclusions by Plaintiff. All of Plaintiff's purported exhibits consist of uncertified copies of
3    testimony, unsupported legal arguments, or conclusory, self-serving affidavits. Defendants argue
4    that because of Plaintiff's non-compliance with local rules regarding filing, these documents
5    should not be taken under consideration. Again, the Court's Local Rules do not allow lengthy
6    separate statements in support of pleadings regarding motions for summary judgment. D. Nev.
7    L.R. 56-1. Furthermore, the content of Ms. Morrison's separate statements do not create any
8    disputes as to issues of material fact addressed by Defendants' Motions for Summary Judgment.
9    See Nilsson v. City of Mesa, 503 F.3d 947, 952 (9th Cir. 2010) ("A conclusory, self-serving
10   affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine
11   issue of material fact.") The Court grant Defendants' Motion to Strike (Dkt. No. 216), and does
12   not take Plaintiff's Exhibit List (Dkt. No. 200) under submission.

13           The Court denies Defendants' Motion to Strike (Dkt. No. 220) as to Plaintiff's declaration
14   in support of her Response to Motion for Summary Judgment (Dkt. No. 194). The Court construes
15   this declaration as part of Plaintiff's arguments in response to Defendants' Motion for Summary
16   Judgment, since it was filed with her Response. Although, pursuant to Nilsson, 503 F.3d at 952,
17   the Court does not find the self-serving affidavit to create a genuine issue of material fact, the
18   Court takes it under submission.

19

20   **III.   LEGAL STANDARD**

21           Summary judgment is appropriate when the pleadings, depositions, answers to
22   interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no
23   genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."
24   Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering
25   the propriety of summary judgment, the court views all facts and draws all inferences in the light
26   most favorable to the nonmoving party. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960
27   (9th Cir. 2011). If the movant has carried its burden, the non-moving party "must do more than
28   simply show that there is some metaphysical doubt as to the material facts . . . . Where the record

1   taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

2   genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal

3   quotation marks omitted).

4

5   **IV.   ANALYSIS**

6   **A. Statute of Limitations**

7   Defendants argue that all of Ms. Morrison's claims are time-barred by the relevant statutes

8   of limitations, because all of Morrison's claims arise from actions and conduct relating to the

9   February 1996 Quest laboratory test and denial of a license by NSAC. Ms. Morrison's amended

10  complaint situates each of her claims as arising from actions committed by defendants towards

11  Mr. Morrison "on or about February 10, 1996, and on many dates thereafter". Her claims for

12  negligence arise from allegations that the 1996 HIV test was improperly conducted by Quest, and

13  that NSAC and Ratner were negligent in relying on that result to make the decision not to license

14  Morrison to fight. Her claims on Mr. Morrison's behalf for defamation, libel, and slander, all stem

15  from alleged public statements made by NSAC and Quest regarding Mr. Morrison's HIV status in

16  1996 and onwards. Plaintiff's fraud and negligent misrepresentation claims relate to alleged

17  statements by Defendants, in 1996, that Mr. Morrison was diagnosed with HIV. Her intentional

18  infliction of emotional distress claims stem from what she alleges to be "the false and fraudulent

19  'diagnosis' of his blood on February 10, 1996." Finally, her intentional interference with

20  contractual relations claim relates to the cancellation of Mr. Morrison's contract to fight in

21  February 1996. Plaintiff's lawsuit was filed on July 24, 2014.

22  Under Nevada law, a two year statute of limitations applies to claims for personal injuries

23  or death, including claims for negligence. N.R.S. § 11.190(4)(e). A two year statute of limitations

24  also applies to claims for defamation, libel, intentional infliction of emotional distress, and slander.

25  N.R.S. § 11.190(4)(c), 4(e). A three year statute of limitations applies to claims for fraud,

26  misrepresentation, and intentional interference with contractual relations. N.R.S. § 11.190(3)(d),

27  (3)(c). Each of Ms. Morrison's claims on her husband's behalf appear to have accrued in 1996,

28  based on the evidentiary record before the Court.

1    The statute of limitations begins to run "when the wrong occurs and a party sustains injuries

2    for which relief could be sought." Orr v. Bank of America, 285 F.3d 764, 780 (9th Cir. 2002)

3    (quoting Peterson v. Bruen, 792 P.2d 18, 20 (Nev. 1990)). When a person is unaware of his injury

4    or cause of injury at the time of its occurrence, the statute of limitations is tolled until the injured

5    party discovers or reasonably should have discovered facts supporting a cause of action. See

6    Bruen, 792 P.2d at 20. Although generally the time of discovery of a cause of action is a question

7    of fact, where the undisputed evidence proved the plaintiff knew or should have known of the

8    conduct, the time of discovery can be decided as a matter of law. Nevada Power Co. v. Monsanto

9    Co., 955 F.2d 1304 (9th Cir. 1992). The undisputed facts and evidentiary record in this case show

10   that Tommy Morrison was aware of NSAC's requirements that his blood be tested as a condition

11   for his eligibility to fight, and that he signed a consent form allowing NSAC access to his HIV test

12   results in 1996.  It is undisputed that he was informed that he could not obtain a license and fight

13   in 1996 due to his positive HIV test result in that year. The evidence also shows that he publicly

14   questioned the veracity of his HIV test results many times, beginning in 1996, and that he

15   petitioned NSAC to overturn its licensing decision in 2007. Therefore, the record demonstrates

16   undisputedly that Morrison was aware in 1996 of the facts and circumstances that serve as a basis

17   for the claims in this case.  Indeed, even if he arguable was not aware then, he would have been

18   aware in 2007 when he sought to revive his professional boxing career.

19   Ms. Morrison argues that Tommy Morrison could not have discovered his claims prior to

20   his death, and that therefore the limitations period should be tolled. She alleges that Mr. Morrison's

21   blood, when tested subsequent to his death, was clear of the HIV virus, and that this post-mortem

22   test is what has given rise to her claims. Ms. Morrison has provided no evidence of this subsequent

23   blood test, aside from her bare allegations. The evidentiary record in this case is replete with

24   multiple affidavits from witnesses and from Mr. Morrison's own treating doctors that he was HIV

25   positive and that he knew himself to be diagnosed as HIV positive. Furthermore, according to Ms.

26   Morrison's own deposition, Tommy Morrison began questioning the accuracy of his diagnosis in

27   1996. In 2007, he tried to overturn NSAC's 1996 licensing decision, and publicly questioned its

28   veracity, in response to which NSAC contacted Quest to confirm that its testing of Mr. Morrison's

- 8 -

1    blood sample in 1996 met the standard of care for HIV screening in 1996. Therefore, on the record

2    before the Court, Mr. Morrison was on notice of all of his claims in 1996, or at the very latest, in

3    2007.

4         Plaintiff also points to communication from Dr. Voy, the doctor who initially examined

5    Mr. Morrison in advance of his NSAC license application in 1996. Dr. Voy did not test a blood

6    sample of Mr. Morrison's, and only completed a physical examination of Mr. Morrison. Plaintiff

7    argues that the statute of limitations should be tolled to when Mr. Morrison received

8    communication from Dr. Voy that Voy had not diagnosed Mr. Morrison with AIDS in 1996. In

9    July 15, 2011, Dr. Voy sent an email to Mr. Morrison stating, "You are correct; I did not diagnose

10   you as having AIDS. I did your required licensing exam and found you physically qualified and

11   fit to box at the time." The Court does not find Dr. Voy's email to be sufficient cause to toll the

12   statute of limitations, when the evidence shows multiple occasions, beginning in 1996, when Mr.

13   Morrison expressed publicly his disagreement the reliability of his original diagnosis, and that he

14   wanted NSAC to overturn its licensing decision from 1996. Furthermore, even were the statute of

15   limitations to toll to the date of Dr. Voy's email on July 15, 2011, Plaintiff's lawsuit, brought on

16   July 24, 2014, still falls outside of the two and three year statutes of limitations that apply to her

17   claims.

18        Therefore, all of Plaintiff's claims are time-barred by the applicable statutes of limitations,

19   and must be dismissed with prejudice by this Court. In the alternative, the Court also finds that, on

20   the undisputed facts, all of Plaintiff's claims fail on the merits.

21

22        **B.  Claims Against Dr. John Hiatt and Dr. Margaret Goodman**

23        All of Plaintiff's claims against Defendants are rooted in the events of February 1996, when

24   Mr. Morrison was denied an unarmed combatant's license, and when he first made public

25   statements regarding his HIV diagnosis. Aside from general allegations that all Defendants

26   contributed to a 20 year "downward spiral" in Mr. Morrison's life, Plaintiff has failed to allege

27   any specific facts implicating Dr. Hiatt in any of her claims. In her Response to Dr. Hiatt and

28   Quest's Motion for Summary Judgment (Dkt. Nos. 191, 175), Plaintiff argues that because Hiatt

-9-

is an employee of Quest, he is equally liable for claims arising from the February 1996 testing of Mr. Morrison's blood. Dr. Hiatt's only involvement in the underlying facts of this litigation was to report to Dr. Margaret Goodman, in 2007, the reports Quest had on file regarding the 1996 testing of Mr. Morrison's blood. This was in response to a request from Dr. Goodman. Dr. Goodman, similarly, was not involved in the events of 1996, and was merely the head of NSAC's medical advisory board from 2001-2007. In 2007, when Mr. Morrison petitioned to have NSAC's 1996 licensing decision overturned, Dr. Goodman was responsible for contacting Dr. Hiatt to ascertain whether Quest's 1996 testing met the appropriate standard of care.

Therefore, Dr. Goodman and Dr. Hiatt cannot be held liable under any of the causes of action that Plaintiff raises, because Plaintiff has failed to raise any specific facts implicating them in the events underlying each of her claims. All claims against Dr. Goodman and Dr. Hiatt must be dismissed with prejudice.

### C. Count 1: Negligence

In Nevada, "to prevail on a negligence claim, a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc., 221 P.3d 1276, 1280 (Nev. 2009). The existence of a duty is "a question of law to be determined solely by the courts." Turner v. Mandalay Sports Entertainment, LLC, 180 P.3d 1172, 1177 (Nev. 2008). Breach and proximate cause, however, are generally questions of fact for the jury to decide. Foster v. Costco Wholesale Corp., 291 P.3d 150, 153 (Nev. 2012); Lee v. GNLV Corp., 22 P.3d 209, 212 (Nev. 2001). While the tort of negligence can be committed by parties to a contract, the alleged breach must be of a duty imposed by law independent of any contractual duty. Bernard v. Rockhill Dev. Co., 734 P.2d 1238, 1240 (Nev. 1987).

As to NSAC, Ratner, and Goodman, ("the State Defendants"), Plaintiff has failed to show any affirmative duty imposed by law that they owed to Mr. Morrison and breached. There is no evidence of any breach of a duty of reasonable care, and aside from that general duty, NSAC and Mr. Morrison were parties to a contractual agreement that was clear about its requirements in order

1    for Mr. Morrison to obtain a license to fight. NSAC reasonably relied on the HIV test results that

2    Mr. Morrison provided to them, from Quest, through his signing of a consent form allowing them

3    to access his medical results. As to Quest, its testing of Mr. Morrison's blood sample in 1996 met

4    the clinical laboratory standard of care for HIV-1 antibody testing in 1996, and no evidence has

5    been presented to controvert the accuracy of the results. Quest purchased its HIV-1 antibody

6    confirmatory test kits, which were approved for commercial use by the U.S. Food and Drug

7    Administration ("FDA"), from the test kit manufacturers, and used the kits in accordance with the

8    manufacturers' instructions. Quest used the HIV-1 antibody testing algorithm recommended by

9    the CDC to test for HIV. To the extent that Plaintiff is challenging Quest's methodology for testing

10   Mr. Morrison's blood, Quest Diagnostics complied with the standard of care for clinical laboratory

11   HIV testing in 1996, as the undisputed evidence demonstrates.

12          Therefore, the undisputed facts do not show any legally imposed duty of care that any of

13   the Defendants have breached with respect to Mr. Morrison, and therefore, Defendants Motions

14   for Summary Judgment are granted as to Ms. Morrison's negligence claim.

15

16   **D. Counts 2-4: Defamation, Libel, and Slander**

17          The Court addresses Plaintiff's defamation, libel, and slander allegations together, because

18   libel (defamation in writing) and slander (spoken defamatory statements) must all satisfy the

19   elements of a defamation cause of action, and Plaintiff has not raised facts specific to libel or

20   slander claims. Mr. Morrison was a former world heavyweight champion, and was frequently

21   interviewed on television. He was therefore a public figure, and in order for Ms. Morrison to

22   adequately raise claims of defamation on his behalf, she had the burden of proving the following

23   elements: (1) a false and defamatory statement by each Defendant concerning Mr. Morrison; (2)

24   an unprivileged publication to a third person; (3) fault, amounting to at least negligence; (4) actual

25   or presumed damages; and "actual malice – that is, [a statement made] with the knowledge that

26   the statement was false or with reckless disregard of its truth." New York Times Co. v. Sullivan,

27   376 U.S. 254, 279-80 (1964); *see also* Pegasus v. Reno Newspapers, Inc., 57 P.3d 82, 90 (Nev.

28   2002).

1    Plaintiff's defamation claims fail for several reasons. First, aside from broad allegations
2    that Defendants have defamed Mr. Morrison continually since 1996, Plaintiff has not clearly
3    proven which specific alleged defamatory statements she seeks to address in this lawsuit. She has
4    submitted evidence of media articles published about Mr. Morrison's HIV status since 1996, but
5    these are merely media reports flowing from publicly available information, including information
6    Mr. Morrison provided to journalists – they are not direct interviews with the defendants.

7    Furthermore, truth is an absolute defense to allegations of defamation, and Defendants have
8    proven this defense conclusively. See Pegasus, 57 P.3d 82. The undisputed evidence in this case
9    shows that many tests over two decades of Mr. Morrison's life, including the 1996 test, revealed
10   the presence of HIV in his blood. Plaintiff has raised no evidence to prove that Quest's reporting
11   of a positive HIV test result to NSAC in 1996, nor NSAC's subsequent reporting to Mr. Morrison's
12   promoter and attorney that Mr. Morrison could not be cleared for a fighting license due to medical
13   reasons, were false.

14   Therefore, Defendants' Motions for Summary Judgment are granted as to Ms. Morrison's
15   defamation, libel, and slander claims.

16   **E. Count 5: Fraud**

17   Under Nevada law, a claim for fraud must be comprised of the following elements: (1) a
18   false representation made by the defendants; (2) defendant's knowledge or belief that the
19   representation is false, or defendant's knowledge of an insufficient basis for making the
20   representation; (3) defendant's intention to induce the plaintiff to act or to refrain from acting in
21   reliance upon the misrepresentation; (4) plaintiff's justifiable reliance upon the misrepresentation;
22   and (5) damage resulting from plaintiff's reliance. See Barmettler v. Reno Air, Inc., 956 P.2d 1382,
23   1386 (Nev. 1998). Plaintiff has provided no evidence of a false representation made by any of the
24   Defendants. Pursuant to the analysis of the undisputed facts, supra, Quest's reporting of the 1996
25   test results to NSAC, and NSAC's denial of a fighting license based on that report, do not constitute
26   false representations. Defendants reasonably relied on test results that were performed with the
27   standard of reasonable care required, and Mr. Morrison was aware, and had signed a consent form
28   acknowledging, that his license to fight was contingent on a medical clearance.

1    Therefore, Defendants' Motions for Summary Judgment are granted as to Plaintiff's fraud

2    claim.

3    ### F. Count 6: Negligent Misrepresentation

4    Under Nevada law, in order to prove a claim of negligent misrepresentation, Plaintiff must

5    prove that Defendants "in the course of [their] business, profession or employment, or in any other

6    action in which [they] have a pecuniary interest, supplie[d] false information for the guidance of

7    others in their business transactions" and caused pecuniary loss by Plaintiff's justifiable reliance

8    upon the information, if Defendants "fail[ed] to exercise reasonable care or competence in

9    obtaining or communicating the information." Barmettler, 956 P.2d 1387. Pursuant to the Court's

10   analysis in Sections D and E, supra, Plaintiff has presented no evidence of false information

11   supplied by any of the Defendants in this case.

12   Therefore, Defendants' Motions for Summary Judgment are granted as to Plaintiff's

13   negligent misrepresentation claim.

14

15   ### G. Count 7: Intentional Infliction of Emotional Distress

16   Under Nevada law, in order to prove a claim of Intentional Infliction of Emotional Distress

17   (IIED), Plaintiff must prove that Defendants engaged in (1) extreme and outrageous conduct; (2)

18   with the intention of, or reckless disregard for, causing emotional distress; (3) which actually or

19   proximately caused; (4) severe or extreme emotional distress. See Posadas v. City of Reno, 851

20   P.2d 438, 444 (Nev. 1993). "Extreme and outrageous conduct," as an element of IIED, is that

21   which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized

22   community. See Maduike v. Agency Rent-A-Car, 953 P.2d 24, 26 (Nev. 1998). Plaintiff has

23   neither alleged, nor provided evidence of, any "extreme and outrageous" conduct on the part of

24   any of the Defendants. As noted above, the Court finds that, within the context of the claims in

25   this lawsuit, the Defendants acted reasonably based upon the information they received and the

26   tests that were performed.

27   Therefore, Defendants' Motions for Summary Judgment are granted with respect to

28   Plaintiff's IIED claim.

## H. Count 8: Intentional Interference with a Contract

Under Nevada law, to prevail on a claim of intentional interference with a contract, Plaintiff must establish: (1) a valid and existing contract); (2) Defendants' knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage. J.J. Indus., LLC v. Bennett, 71 P.3d 1264, 1267 (Nev. 2003). Morrison alleges that Quest intentionally interfered with Mr. Morrison's contract to box in the match scheduled for February 10, 1996 by conducting the blood sample test for HIV antibodies, and reporting those results to NSAC, and that NSAC interfered with the contract by rejecting Mr. Morrison's application for a license to fight. Ms. Morrison has failed to produce evidence of a valid and existing contract from February 1996. During discovery in this case, Ms. Morrison produced three pages from a different contract, not the contract under which Mr. Morrison would have fought on February 10, 1996. Furthermore, Plaintiff has produced no evidence of an intent to interfere with Mr. Morrison's contract to fight on February 10, 1996. Both Quest and NSAC, and its employees, merely followed their standard practices for testing blood samples, and for issuing licenses to fight.

Therefore, Defendants' Motions for Summary Judgment are granted as to Plaintiff's claim for intentional interference with a contract.

## V.    CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motions for Summary Judgment (Dkt. Nos. 174 & 175) are GRANTED.

**IT IS FURTHER ORDERED** that Defendants' Motions to Extend Time (Dkt. Nos. 119, 155, and 156), Defendants' Motion to File Medical Records Under Seal (Dkt. No. 215), Defendants' Motion to Stay further briefing (Dkt. No. 268), and Plaintiff's Motion for Hearing (Dkt. No. 158) are DENIED as moot.

**IT IS FURTHER ORDERED** that Plaintiff's Request for Judicial Notice and Motions in Support of Summary Adjudication (Dkt. Nos. 125, 262) are DENIED with prejudice.

1     **IT IS FURTHER ORDERED** that Defendants' Motions to Strike (Dkt. Nos. 205, 212,

2 216, 217, 218, 222, 224, 225, 229) are GRANTED, and Dkt. No. 220 is DENIED.

3          The Clerk of the Court is instructed to close this case.

4          **DATED** this 24th day of October, 2016.

5

6                                                        _____

7                                                        **RICHARD F. BOULWARE, II**

                                                         **UNITED STATES DISTRICT JUDGE**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AO450 (Rev. 5/85)   Judgment in a Civil Case

# UNITED STATES DISTRICT COURT

DISTRICT OF                    Nevada

Patricia Harding Morrison

Plaintiff,            ▾            **JUDGMENT IN A CIVIL CASE**

v.

Quest Diagnostics Inc., et al                    Case Number:  2:14-cv-1207-RFB-PAL

Defendants.            ▾

☐ **Jury Verdict.**  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court.**  This action came to trial or hearing before the Court.  The issues have been tried or heard and  a decision has been rendered.

☐ **Notice of Acceptance with Offer of Judgment.**  A notice of acceptance with offer of judgment has been filed in this case.

  IT IS ORDERED AND ADJUDGED

that Judgment is hereby entered in favor of defendants against plaintiff pursuant to Order #277.

October 25, 2016                    /s/ Lance S. Wilson

Date                               Clerk

                                   /s/ Justin Matott            ▾

                                   (By) Deputy Clerk

```
                              ┌─────────────────────────────┐
                              │ ___FILED     ___RECEIVED     │
                              │ ___ENTERED   ___SERVED ON    │
                              │      COUNSEL/PARTIES OF RECORD│
                              │                              │
                              │        NOV - 3 2016          │
                              │                              │
                              │   CLERK US DISTRICT COURT    │
                              │     DISTRICT OF NEVADA       │
                              │ BY:_____ DEPUTY  │
                              └─────────────────────────────┘
```

1  Patricia Harding Morrison
2  PO Box 454
   Rose Hill, KS 67133
3  Telephone: (865) 296-9973
4  Email: tommyandtrishamorrison@yahoo.com
   Email: tommythedukemorrison@yahoo.com
5  *Plaintiff and Administrator for the Estate of Tommy Morrison*

6

7                **UNITED STATES FEDERAL COURT**

8
9      **IN AND FOR THE DISTRICT OF NEVADA – SOUTHERN DIVISION**

10  PATRICIA HARDING MORRISON,           )
11  individually and in her capacity as   ) Case. No.:2:14-cv-01207-RFB-PAL
    Plaintiff and Personal                ) Hon. Richard F.Boulware II
12  Representative/Administrator of the   )
13  Estate of Tommy Morrison              )
                                          )
14           Plaintiff,                   )
15                                        ) **PLAINTIFF'S NOTICE OF APPEAL**
    vs.                                   ) **OF ORDER GRANTING**
16                                        ) **DEFENDANTS' MOTION FOR**
17  QUEST DIAGNOSTICS                     ) **SUMMARY JUDGMENT**
18  INCORPORATED, a Nevada domestic       )
    corporation; JOHN HIATT, an           )
19  individual; DR. MARGARET              )
20  GOODMAN, an individual; NEVADA        )
    STATE ATHLETIC COMMISSION, an         )
21  unknown business entity; MARC         )
22  RATNER, an individual;                )
                                          )
23           Defendants.                  )
                                          )
24                                        )
25  _____)

26                      **NOTICE OF APPEAL**

27      **NOTICE IS HEREBY GIVEN** that PATRICIA HARDING MORRISON,

28  individually and in her capacity as Plaintiff/Appellant, *pro se*, and Personal

    ───────────────────────────────────────────────────────
    NOTICE OF APPEAL OF ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
                              - 1 -

Representative/Administrator of the Estate for Tommy David Morrison, hereby appeals to the United States Court of Appeals for the Ninth Circuit of Nevada from the Opinion & Order granting defendants' motions for summary judgment (docket#277) and entered in this action, *Morrison v Quest et al; Case: 2:14-cv-01207-RFB-PAL,* on the 25th day of October, 2016 (docket#278).

**Plaintiff simultaneously submits to the clerk of the district court the notice of appeal, the filing fee of $500, and the appellate docket fee of $5.00.**

Within seven (7) days from the filing of this notice of appeal, the transcript of the September 08th, 2016 hearing in this matter shall be requested and filed with this Court, and the case record is respectfully requested to be transmitted to the Ninth Circuit.

A case number shall be assigned by the Ninth Circuit Court of Appeals of Nevada in order that Plaintiff may file an opening brief and excerpts of the record.

It is understood by all parties to this case, and the Court, that Plaintiff is not on the ECF filing system.

Dated: November 02nd, 2016

Respectfully Submitted,

PATRICIA HARDING MORRISON,
Plaintiff/Appellant, *pro se,*
Individually and in her capacity as Personal
Representative / Administrator for
the Estate of Tommy Morrison

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing **NOTICE OF APPEAL** was made on 2nd day of November, 2016, pursuant to the rule, by depositing a copy of the same in the United States Mail in Rose Hill, Kansas, postage prepaid, addressed as follows:

X_____    **BY OVERNIGHT DELIVERY:**
       County Clerk's Office (for filing)
       **U.S. District Court- Ninth Circuit Court of Appeals**
       Lloyd. D. George Courthouse
       333 South Las Vegas Blvd,
       Las Vegas, NV89101 Tel: 1-702-464-5400

X___    **BY REGULAR FIRST CLASS MAIL:**

Keith A. Weaver, Esq. **Lewis Brisbois Bisgaard & Smith LLP**
6385 S Rainbow Blvd., Suite 600, Las Vegas, NV 89118, **and**
D. Faye Caldwell, Esq. **Caldwell Everson, PLLC**
2777 Allen Pkwy, Suite 950, Houston, TX 77019 Tel: (713) 654-3000
*Counsel for Quest Diagnostics Inc. and John Hiatt*

Vivienne Rakowsky, Esq.,
Deputy Attorney General
555 E. Washington Ave, Suite 3900, Las Vegas, NV 89101
*Counsel for Nevada Athletic Commission, Marc Ratner & Margaret Goodman*

Dated this   2nd November, 2016

Patricia Harding Morrison

Appellant

1   PATRICIA HARDING MORRISON
2   P.O. BOX 454
    ROSE HILL, KANSAS 67133
3   tommyandtrishamorrison@yahoo.com
    tommythedukemorrison@yahoo.com
4   Tel: (865) 296-9973
    *Plaintiff and Administrator for the Estate of:*
5   *Tommy Morrison*

```
_____ FILED          _____ RECEIVED
_____ ENTERED        _____ SERVED ON
              COUNSEL/PARTIES OF RECORD

          NOV 1 5 2016

      CLERK US DISTRICT COURT
       DISTRICT OF NEVADA
BY:_____ DEPUTY
```

8            **UNITED STATES FEDERAL COURT**

9    **IN AND FOR THE DISTRICT OF NEVADA – SOUTHERN DIVISION**

| | |
|---|---|
| Patricia Harding Morrison , an individual, )<br>*Personal Representative /Administrator* )<br>*for the Estate of* TOMMY MORRISON, )<br> )<br>         Plaintiff, )<br> )<br>vs. )<br> )<br>Quest Diagnostics Incorporated, a Nevada )<br>corporation; John Hiatt, an individual; Dr. )<br>Margaret Goodman, an individual; Nevada )<br>State Athletic Commission, an unknown )<br>business entity; Marc Ratner, an )<br>individual. )<br> )<br>       Defendants. )<br>_____ ) | Case No.: 2:14-cv-01207-RFB-PAL<br>Case No.: 16-17050 Ninth Circuit Court<br><br>**PLAINTIFF'S OPPOSITION**<br>**TO DEFENDANTS**<br>**QUEST DIAGNOSTICS INC.; AND**<br>**JOHN HIATT'S**<br>**BILL OF COSTS**<br>**(DKT 281)** |

21        Plaintiff, Patricia Harding Morrison, *Personal Representative/Administrator for the*

22 *Estate of Tommy Morrison*, (hereinafter referred to as "Plaintiff"), opposes docket #281 'Bill

23 of Costs', filed by Quest Diagnostics Incorporated (hereinafter "QUEST") and John Hiatt

24 (hereinafter "HIATT"), whom together make up a multi-billion dollar corporate enterprise,

25 seeking to collect costs against the Estate of TOMMY MORRISON, following this Court's

closure of the *Morrison v Quest et al case inter alia*. Defendants' application should be denied in its entirety.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I

## INTRODUCTION

## DEFENDANTS' 'BILL OF COSTS' SHOULD BE DENIED

The Estate for Tommy Morrison is the innocent party in this Complaint and the loss that it has suffered was forseeable only by all named defendants. Before the District Court and Ninth Circuit Court of Appeals, are bona-fide claims against named defendants.

QUEST, is fraudulently producing, and providing defendant NSAC (Nevada State Athletic Commission), **and physicians from around the nation,** with a "patient-specific-diagnosis" on TOMMY in the form of a 'laboratory report'. A laboratory report considered by the FDA as *only* an 'aid' to a diagnosis, but this District Court overruled the FDA by enforcing a 'lab report' as a *definitive diagnosis* of any disease, and an 'HIV status'. As concluded by this District Court, <u>no</u> medical factors are to be taken into account such as 1)patient history; 2)physical and clinical examinations; 3) symptoms; 4) additional testing to *rule out* other known ailments that trigger reactions to an 'algorithm of testing' (that does not 'fit all' as per the CDC) ; 5) *non-disclosure* of packet inserts with FDA *warnings* and *disclaimers* is now permitted; 6) tests can be *misbranded* and used for their not *intended use* therefore not complying with FDA, nor FTC, regulations, and 7) the absence of the scientific methodology of 'isolation and purification' of the human immunodeficiency virus is not required, because it simply is not available, and because it simply does not exist.

In reality, as admitted by defendants, QUEST's clinical laboratory reports are actually <u>not a diagnosis, not an 'HIV' status, not to be used for treatment</u> (*not even if they are*

- 2 -
PLAINTIFF'S OPPOSITION TO DEFENDANT QUEST DIAGNOSTICS INCORPORATED
AND JOHN HIATT'S 'BILL OF COSTS' DKT#281

Case No.:2:14-cv-01207-RFB-PAL / Case No.: 16-17050 Ninth Circuit Court of Appeals

*originals or certified copies or faxed copies or via email copies or downloaded from the Quest website).* QUEST, are prohibited, by the Anti-Kick-Back Law, to provide this District Court with any clinical laboratory report that they knowingly, deceivingly and intentionally are demanding to be perceived as a 'definitive patient-specific-diagnosis', just as they were relied upon by Tommy Morrison. (hereinafter "TOMMY").

## II

### ARGUMENT

### THE COURT DID NOT FIND THIS CASE FRIVOLOUS

First, as a surviving spouse of TOMMY, then amended to 'Administrator for the Estate of Tommy Morrison' as approved by this Court, Plaintiff continued to ask individuals, corporations and entities *"Who and with what "documentation" made a diagnosis of the Virus/HIV in the blood of Tommy Morrison, in Las Vegas, Nevada, on February 10, 1996 that lead to the cancellation of the first of a multi-million dollar fight contract, cancelled boxing license, and immediate indefinite world-wide suspension".*

Defendants were given ample opportunity to answer this simple question prior to the filing of this lawsuit. Defendants chose to ignore the surviving spouse and prejudiced her in to filing this lawsuit on behalf of the Estate of Tommy Morrison and to turn to the judicial system for answers. **This Court found** it possible that Plaintiff, as Administrator, could allege facts in an Amended Complaint, under the status of Administrator, that would state causes of action for NEGLIGENCE, and DEFAMATION and FRAUD.

Plaintiff's due diligence which commenced on December 21, 2013 upon receipt of an *authenticated* email from an attorney representing Dr.Voy, TOMMY's physician in Las Vegas, which allowed for Plaintiff's claims to fall under the *delayed discovery rule,* and **this Court found** it possible that Plaintiff may be able to allege additional facts demonstrating

that the statute of limitations on her negligence, defamation, and fraud claims should be tolled under the discovery rule and not necessarily barred by the statute of limitations. **This Court found** Plaintiff could potentially allege facts in an Amended Complaint showing that the "*Athletic Commission Defendants made decisions that were not discretionary in nature or were not based on policy considerations.*" **This Court found** Plaintiff's claim of defendants' HIPAA violation be denied because private citizens, and presumably Administrators for Estate's, are not entitled to sue in court for violations of the HIPAA statute. Plaintiff addressed defendants' illegal actions within the Amended Complaint under negligent misrepresentation of qualifications by the defendants and its employer-QUEST. **This Court found** Plaintiff could allege facts that would survive dismissal despite Defendants' arguments to the contrary and Plaintiff was granted leave to amend her negligence, defamation and fraud claims in the capacity of Administrator of the Estate for TOMMY.

TOMMY became criticized, criminalized, ridiculed, and banished from his career in the sport he loved and helped make popular, after he was persuaded to accept a "diagnosis" that his blood was "harboring the human immunodeficiency virus," that his blood was "contagious in and out of the ring with the human immunodeficiency virus," and that his blood was "infected with the human immunodeficiency virus" on February 10, 1996 in Las Vegas, Nevada. TOMMY passed away on September 1, 2013 after suffering 21 months of septic shock from a hospital acquired blood infection due to 12 foot of infected surgical gauze having been left in his chest following a surgery for an insect bite (tick/spider) in Tennessee in 2011. Prior to TOMMY's death his blood was drawn and sent to Boston and was photo imaged and <u>diagnosed</u> with no viral particles and "no abnormalities" in his blood by renowned Boston Mass. General Hospital, pathology department. Furthermore, blood

drawn postmortem, was also diagnosed as "no viral particles" and no "budding retroviruses" (no HIV). Both reports are in front of this Court, and were in the possession of defendants, but they chose not to turn them over to this Court. In addition, TOMMY did not suffer any 'AIDS' defining diseases throughout his life, no 'wasting-syndrome' and his death certificate confirmed *no* AIDS defining diseases at death.

Plaintiff was met with *silence*; *unanswered questions* to the original and amended Complaint and a multitude of *Motions to Dismiss, Extensions of Time, inter alia,* by all defendants to try and silence her efforts, and to avoid giving her definitive answers to her simple questions.

During Plaintiff's due diligence, the test kit manufacturers took only days to come back with emails, that confirmed that they did not, and do not, make a diagnosis of the Virus/HIV. All emails are in front of this Court and in the possession of defendants. So Plaintiff continued her due diligence and contacted the "labs".

The clinical laboratories, *(such as Quest Diagnostics Inc.,)* around the country (but not QUEST in Las Vegas) took only days to respond to Plaintiff confirming that their laboratory report does **not** constitute a diagnosis of the Virus/HIV, **not** in Las Vegas, Nevada, and in fact **not** anywhere in the United States of America.

The home office for the CDC confirmed that clinical laboratories do not diagnose. **This crucial information** was never provided to TOMMY, and nor throughout this case by the defendants. This crucial information was hidden to the Plaintiff until she began her due diligence on **December 23,2013.**This crucial information continues to be kept a "secret" from the Court. **This is called FRAUD upon the court** . Plaintiff continued her due diligence to find a certain DR.JOHN HIATT, MD, as publicly advertised by defendant Dr. Margaret Goodman. Plaintiff's due diligence uncovers that HIATT is listed within

numerous HEALTH.**NV.GOV** websites as an MD. (in addition to a voluminous amount of mainstream media articles –worldwide). *See:* PSAP Subcommittee Minutes April 28, 2010

Page 1 of 3:
**NEVADA STATE HEALTH DIVISION PERINATAL SUBSTANCE ABUSE PREVENTION SUBCOMMITTEE MINUTES**
http://**health.nv.gov**/PDFs/PSAP/minutes/2010/20100428_%20Minutes_%20PSAP.pdf
**Subcommittee Members Present:**
Maggie Carlton, Senator
Johnette Ohman, M.Ed, Supervisor, Nevada Early Intervention Services (NEIS)
Susan Pittenger, PhD., Reno/Sparks Tribal Health and Yerington Tribal Health Center
Vidya Kalish, Proxy for Deborah McBride, Substance Abuse Prevention and Treatment Agency (SAPTA)
Charlene Herst, SAPTA
**John Hiatt, MD, Quest Diagnostics**
Susan Doctor, PhD, University of Nevada, Reno (UNR)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

NEVADA STATE HEALTH DIVISION PERINATAL SUBSTANCE...

**health.nv.gov**/PDFs/PSAP/minutes/2010/2010-01-21 Minutes...**John Hiatt**, MD, Quest Diagnostics Anna Severns, ... He will **contact Lou Ruvo** Brain Facility in **Las Vegas** to see if they may have an interest in...

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

http://www.boxingscene.com/-tommy-morrison-hiv-saga-continues--9622

Dr. Margaret Goodman, very well known in the boxing community and former chief ringside physician in Nevada, told the The Times, that the pathologist *who conducted the 1996 tests* for Quest Diagnostics in Las Vegas, had told her they were "unequivocally positive."

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

     Dr. John Hiatt- *"the renowned Quest Diagnostics Pathologist, who has worked with the Nevada Commission for many years and was the physician in 1996"* . Plaintiff finally is lead to believe that she has found the person that "diagnosed" TOMMY with the virus/HIV on February 10, 1996 in Las Vegas by **Dr. John Hiatt, MD/Pathologist.** QUEST, GOODMAN, NSAC, RATNER, HIATT, and this Court, continue to allow the world

to believe, that HIATT was/is a pathologist and physician to TOMMY and qualified to diagnose and disclose TOMMY's alleged blood results/report. This was a fraudulent lie. A twenty (20) year unconscionable, reckless, and deceiving lie. HIATT has never retracted any media articles that went viral stating openly and publicly that he was a licensed physician and pathologist. HIATT has never corrected *Minutes of Meetings and Agendas* **on .nv.gov websites** *holding himself out* as an MD at QUEST DIAGNOSTICS INC in Las Vegas. HIATT is not and never has been a licensed physician nor board certified pathologist. Courts have held that each time a plaintiff discovers another fraudulent act of the defendants, as in this case, a cause of action accrues to recover damages. **This was not uncovered until 2014. As this Court had aptly recognized,** there are justifying reasons and good cause for the Plaintiff to move forward in this case. Defendants however are above the law, do not have to abide by the law, and can act under the Color of Law, and continue their unlawful acts even now against the Estate of TOMMY. Defendants took steps to shield documents and materials from *discovery, all with the permission of this Court,* such as the test kit manufacturer's warnings/package inserts; clinical laboratory reports perceived as a diagnosis; protection order for HIATT ; and suppressing the physical examination results from the attending physician presented by defendants for the first time in TOMMY's life, and death, in their *initial disclosures,* whom signed off on TOMMY being mentally and physically healthy to box and receive a license to fight on February 10, 1996. Defendants even produced, for the first time, a 'medical release form' , with not a probable signature of TOMMY, as investigated by Plaintiff, and dated February **09th**, 1996, only therefor allowing for test results to be disclosed during the time period of February **09th, 1995** − February **09th, 1996,** and *not* on February 10th, 1996. This outdated form did not allow for the NSAC

to take results to any unauthorized third person, unlicensed persons for the bout, other than to TOMMY himself, and the ordering physician. However, the NSAC and RATNER did not abide by their own rules and took it upon themselves to disclose information anyway to anyone they wanted on February 10th, 1996.

A contract is formed when acceptance is communicated by the offeree *(QUEST accepts the duty of sending laboratory reports as a confirmation of the virus/HIV)* to the offeror *(NSAC which is mandating a laboratory report to show if an applicant has the human immunodeficiency virus/HIV).*   If it is necessary to determine where a contract is formed, this should be at the place where acceptance (by QUEST) is communicated to the offeror (NSAC), Las Vegas, Nevada.The offeror (NSAC) dictated the terms of the acceptance. Offers may set certain conditions on acceptance and to these, *(NSAC requires QUEST to send them proof of the absence or presence of the virus/HIV in the form of their original or certified copy of the QUEST laboratory report)* the acceptor (QUEST) is **bound**. QUEST's conduct of providing the NSAC with a laboratory report was and still is an expression of acceptance of a contract to provide the NSAC, and TOMMY, with proof of the virus/HIV in TOMMY. QUEST and all defendants have accepted the terms of the NSAC's offer which is clear, unequivocal, unconditional and made validated by the person/corporation/entity to whom the offer is intended – that acceptance of a laboratory report from QUEST **validates** the <u>contract</u> required by the NSAC, and TOMMY and a duty was enforced. QUEST and HIATT were aware, and have admitted in this case, that the tests used were not intended to be used for the retrovirus (human immunodeficiency virus) . Applying the Rule of the "reasonable  man", given all the circumstances, a reasonable man, would believe there to be a contract between the NSAC and QUEST. *An 1871 English case, Smith v Hughes, (1871) 6*

*QB 597, summarized this principle as follows: "If whatever a man's real intention may be, he so conducts himself that a reasonable man would believe that he was assenting to terms proposed by the other party and that other party, upon that belief, enters into a contract with him, the man thus conducting himself would be equally bound as if he had agreed to the other person's terms."*

**There is no question,** that QUEST issued their own "Quest diagnosis/laboratory report" on TOMMY both in conformity with, and in response to the invitation to tender by the NSAC, the ordering physician, and TOMMY, and is therefore binding and irrevocable . Simply stated, the NSAC having indicated from the language on their licensing requirements to TOMMY, and to QUEST , that their need for an *original or certified laboratory report is confirmation of the presence or absence of the virus/HIV,* and that acceptance of that offer was then made by QUEST based on their actions and submissions and based on the collection of the language used by the NSAC. *Applying a 1978 Canadian case (Marquest Industries v Willows Poultry Farms Ltd., 67 DLR (2d) 753, 1967)* sets out the principle as follows: *"...if the real intentions of the parties can be collected from the language within the four corners of the instrument, the Court must give effect to such intention by supplying anything necessarily to be inferred and rejecting whatever is repugnant to such intention so ascertained."* Where a contract is open to two different but equally probable interpretations, it is interpreted against the author (NSAC), especially if there is a power imbalance between the parties- *verba fotius accipiuntur contra proferentem.* Both NSAC and QUEST, and for that matter all defendants, had a duty to TOMMY, but took no steps to verify what they were asserting and any "mistake" that existed on the "laboratory report" on the alleged blood of TOMMY was and still is  induced by their own culpable conduct.

- 9 -
PLAINTIFF'S OPPOSITION TO DEFENDANT QUEST DIAGNOSTICS INCORPORATED
AND JOHN HIATT'S 'BILL OF COSTS' DKT#281

Case No.:2:14-cv-01207-RFB-PAL / Case No.: 16-17050 Ninth Circuit Court of Appeals

1   Defendants, by the application of reasonable care, were in the position to avoid any loss to

2   TOMMY and now his Estate, and should bear any loss that resulted and continues to result

3   when the only alternative available to this Court would be to place the loss upon the

4   innocent victim TOMMY and his Estate.

5

6   ## III

7   ### CASE CLOSED OCTOBER 24TH, JUDGMENT ENTERED OCTOBER 25TH, 2016

8   ### CASE APPEAL FILED  IN THE NINTH CIRCUIT COURT NOVEMBER 3RD, 2016.

9   ### DEFENDANTS' 'BILL OF COSTS' FILED ON NOVEMBER 07TH, 2016

10          On October 24, 2016, the District Court granted defendants' motions for summary

11  judgment, of which one was filed _outside_ of the cut-off for filing but this Court quickly closed

12  the case. On October 25th, 2016, the Clerk of the Court entered the judgment, based on the

13  Opinion and Order of Judge Richard F. Boulware II. Plaintiff filed an appeal with the Ninth

14  Circuit Court in Nevada on November 03rd, 2016, Case: 16-17050. The District Court erred

15  in its Decision-making. Plaintiff's 'story' has never changed throughout this lawsuit. But,

16  nevertheless, the District Court cannot find any _no wrong-doing_ on the part of any of the

17  defendants.  Defendants filed their 'Bill of Costs' on November 07th, 2016.

18  ## IV

19  ### STANDARD OF REVIEW

20  ### 'BILL OF COSTS'

21          Taxation of costs is authorized by Fed.R.Civ.P. 54(d) and governed by 28 U.S.C.§

22  1920. A bill of costs shall be filed in the case and, upon allowance, included in the judgment

23  or decree.   It is unclear whether defendants' 'Bill of Costs' is directed at the 'Estate',

24  'Administrator', or personally at 'Patricia Harding Morrison'. Nevertheless, defendants' 'Bill

25  of Costs' should be denied for the following reasons:

26  

27  

28

1.   The 'Bill of Costs' filed is invalid. As this Court in Nevada will note, that the header of the 'Bill of Costs' refers to the United States Court in the District of **NEBRASKA.**

2.   The 'Estate' of Tommy Morrison has no assets and is not in a position to pay any costs for QUEST and HIATT.

3.   The 'Administrator' for the 'Estate of Tommy Morrison' does not receive any compensation from the 'Estate'.

4.   'Patricia Harding Morrison', personally, does not have any assets, and is not in the position to pay for QUEST and HIATT's 'costs' .

5.   The subpoenas were served by a private service, not a U.S. Marshall, even though allowed by local rules of Nevada as *ordinarily* taxable, fees of private process servers do not fall within the taxable items in 28 U.S.C.§ 1920. *See In re Air Crash Disaster at Stapelton Int'l Airport, 1989 WL.259995 (D. Colo. July 24, 1989)*. In addition, the subpoenas were frivolous. If all it 'takes' is to place in front of this Court 'clinical laboratory reports' from QUEST and HIATT as a 'definitive diagnosis', and nothing else, then as this Court recalls, the counsel for QUEST, hacked into the QUEST data system on July 30th, 2014, *(prior to being served summons and complaint, with no written authority from the surviving spouse, no Order from this Court, and three (3) months prior to Attny. Caldwell entering as pro-hac vice in this case)* and simply RE-CREATED and RE-PRINTED everything with the name of TOMMY MORRISON. So, to simply subpoena the same information again was a complete waste of time, money, and judicial economy and two years of filings and hearings and 277 dockets. The fact that physicians are only producing a QUEST laboratory report and nothing else is a red flag. QUEST and HIATT did not provide Plaintiff a 'notice of intent' and violated FRCP 45(a)(4) in sending 22 subpoenas on November 11, 2015.

6.   The deposition transcripts of BRADY, HOLDEN, HOSTERMAN and KOPRIVICA

were also purchased by Plaintiff. Defendants had to merely ask for them or print them when Plaintiff had filed them with this Court. Copies that defendants had purchased were merely for the convenience of the defendants' counsels and not necessarily obtained for use in this case. *See: Furr v AT&T technologies, 824 F.2d 1537, 1550 (10th Circ.1987) depositions taken solely for discovery purposes are not taxable as costs, only depositions actually admitted, read, or used at trial are taxable.*

7. Defendants purchased video footage of the depositions, purely as a form of intimidation and served no purpose in *discovery*. The depositions of Patricia Harding Morrison and Dr. Jonas Moses were over the legal limit allowed by the FRCP.

Title 28 U.S.C § 1920 requires that for costs to be awarded, "[a] bill of costs shall be filed in the case and upon allowance, included in the judgment or decree." The District Court reviews a prevailing party's proposed bill of costs in "scrupulous detail," and the claimed expenses must be "reasonable, both in amount and necessity to the litigation." It should be noted that neither QUEST, nor HIATT, nor NSAC/RATNER/GOODMAN, subpoenaed nor deposed 1) any witness in Las Vegas, Nevada, and 2) not one of the test kit manufacturers that they purchase tests from to validate that they are allowed even to be 'diagnosing' TOMMY with the human immunodeficiency virus with their tests. Red flag.

**V.**

**PLAINTIFF SUPPORTS HER OPPOSITION TO THE 'BILL OF COSTS' DEMONSTRATING HOW DAMAGING DEFENDANTS' ATTEMPTS ARE TO RECOUP THEIR COSTS.**

If the 'Bill of Costs' are to be accepted, then also should the information disclosed, and not disclosed, be accepted.

| Invoice | Service By Private Processor | Information Disclosed (and Not Disclosed) by QUEST/HIATT |
|---------|------------------------------|---------------------------------------------------------|
| 108436 | Massachusetts General Hospital | Received, tested, photo-imaged TOMMY's blood and found no abnormalities and no viral particles (no HIV). Completed a full diagnosis report and disc of photo images of blood. Defense Counsel did not disclose these documents. |
| 108437 | JohnTrapp MD | Did not diagnose and did not treat HIV. |
| 108438 | James Nora MD | Defense counsel failed to disclose that this physician also used the ROCHE test, and crushed HIV meds into g-tube, and held an Ethics Meeting that any medical help was futile if TOMMY did not consent to HIV meds. |
| 108439 | Bryan Medical Center | Did not diagnose and did not treat HIV and did not provide any evidence of HIV. Their position is that outside laboratories are separate from the hospital and therefore not responsible for the products the laboratories purchase, nor their testing protocols, and the interpretation on the reports are solely generated by the outside laboratory – not the hospital or any physician. |
| 108440 | Nebraska Medical Center (UNMC) | Received, tested, photo-imaged TOMMY's blood , after having issued a 'Discharge Summary', and found no abnormalities,no viral particles, and no 'budding retroviruses' (no HIV). Completed a full diagnosis report and disc of images. However, erroneously, did not amend discharge papers. Did |

| | | |
|---|---|---|
| | | not treat for HIV. Defense Counsel did not disclose these documents. UNMC lost a vial of blood and did not seem concerned. Discharge papers show 'HIV infection' by use of: _ROCHE PCR: "The Amplicor HIV-1 Monitor test, is not intended to be used as a screening test for HIV or as a diagnostic test to confirm the presence of HIV infection."_ No physician can diagnose or confirm the presence of HIV infection in TOMMY, or anyone, by using the ROCHE test. UNMC have been reprimanded. |
| 108433 | Fouad Ghaly MD | Provided no proof of a physician's diagnosis of HIV in response to the subpoena. |
| 108429 | Arizona Boxing & MMA Commission | Did not diagnose and did not treat HIV and did not provide any evidence of HIV. The ABC (American Boxing Commission) would have records and it was unnecessary to subpoena each commission separately. |
| 108441 | Texas Combative Sports Program | Did not diagnose and did not treat HIV and did not provide any evidence of HIV. The ABC (American Boxing Commission) would have records and it was unnecessary to subpoena each commission separately. |
| 108442 | West Virginia Athletic Commission | Did not diagnose and did not treat HIV and did not provide any evidence of HIV. The ABC (American Boxing Commission) would have records and it was unnecessary to subpoena each commission separately. |
| 108435 | Wesley | Did not diagnose and did not treat HIV and did not provide |

| | Medical Center | any evidence of HIV. Their position is that outside laboratories are separate from the hospital and therefore not responsible for the products the laboratories purchase, nor their testing protocols, and the interpretation on the reports are solely generated by the outside laboratory – not the hospital or any physician. |
|---|---|---|
| 108469 | George Schuchmann MD | Did not diagnose and did not treat HIV,as per his attorney. This surgeon left 12 foot of surgical gauze in TOMMY'S chest for one week, without documentation after surgery for an insect/tick bite in 2011. |
| 108472 | Mari Klausner MD | Did not treat for HIV. However, did perform the ROCHE/PCR test and was not aware of the warning: *ROCHE PCR: "The Amplicor HIV-1 Monitor test, is not intended to be used as a screening test for HIV or as a diagnostic test to confirm the presence of HIV infection."* |
| 108473 | Ft.Sanders Regional Medical Center | Did not diagnose and did not treat HIV and did not provide any evidence of HIV. Their position is that outside laboratories are separate from the hospital and therefore not responsible for the products the laboratories purchase, nor their testing protocols, and the interpretation on the reports are solely generated by the outside laboratory – not the hospital or any physician. |
| 108443 | Wyoming State Board of | Did not diagnose and did not treat HIV and did not provide any evidence of HIV. The ABC (American Boxing |

| | Mixed Martial Arts | Commission) would have records and it was unnecessary to subpoena each commission separately. |
|---|---|---|
| 108474 | Stanley Bodner MD | Did not provide a physician's diagnosis of HIV, and did not provide any medical records in response to subpoena. |
| 108434 | Brent Koprivica MD | Did not diagnose, did not treat HIV. Did not provide any evidence of HIV. Deposition states he drew blood and sent to CDC for testing, and 'some guy' called him with the results. Does not have any written confirmation, does not know what test(s) was done, did not know that the ROCHE/PCR is not to be used for diagnosis. Testimony is unreliable as he also states under oath that he did not receive payment for his services, but Plaintiff has evidence he did. CDC was never subpoenaed. |
| 108430 | Carl Ferguson DO | Did not provide physician's diagnosis of HIV, or evidence of treatment or medical records in response to subpoena. |
| 108431 | Todd Simpson DO | Did not provide physician's diagnosis of HIV, or evidence of treatment or medical records in response to subpoena. |
| 108432 | Stephen Hennigan MD | Did not provide a physician's diagnosis of HIV, and did not provide any evidence of treatment or medical records. QUEST and HIATT provided to this Court their own generated laboratory report of a test they purchased for the physician from ROCHE Pharmaceutical Co. that contains the FDA mandated *disclaimers* and *intended use* of their test: *ROCHE PCR: "The Amplicor HIV-1 Monitor test, is not intended to be used as a screening test for HIV or as a* |

| | | |
|---|---|---|
| | | *diagnostic test to confirm the presence of HIV infection."* <br><br> **No** physician can diagnose or confirm the presence of HIV infection in TOMMY in this case by using the ROCHE test. |
| 108428 | Howard Reuben MD | Did not provide physician's diagnosis of HIV, or evidence of treatment or medical records in response to subpoena. QUEST and HIATT provided to this Court their own generated laboratory report of a test they purchased for the physician from ROCHE Pharmaceutical Co. that contains the FDA mandated *disclaimers* and *intended use* of their test: *ROCHE PCR: "The Amplicor HIV-1 Monitor test, is not intended to be used as a screening test for HIV or as a diagnostic test to confirm the presence of HIV infection."* <br><br> **No** physician can diagnose or confirm the presence of HIV infection in TOMMY in this case using the ROCHE/PCR test. |
| 108468 | Jerry Bradley MD | Did not provide physician's diagnosis of HIV, or evidence of treatment or medical records in response to subpoena. |
| 108476 | Bryan Flint MD | Did not provide physician's diagnosis of HIV, or evidence of treatment or medical records in response to subpoena. |
| 108475 | LeConte Medical Center | Did not diagnose and did not treat for HIV and did not provide any evidence of HIV. Their position is that outside laboratories are separate from the hospital and therefore not responsible for the products the laboratories purchase, nor their testing protocols, and the interpretation on the reports are solely generated by the outside laboratory – not the |

PLAINTIFF'S OPPOSITION TO DEFENDANT QUEST DIAGNOSTICS INCORPORATED
AND JOHN HIATT'S 'BILL OF COSTS' DKT#281

Case No.:2:14-cv-01207-RFB-PAL / Case No.: 16-17050 Ninth Circuit Court of Appeals

| | | |
|---|---|---|
| | | hospital or any physician. |
| 110419 | WA State Dept. of Licensing-Combative Sports | Did not diagnose and did not treat HIV and did not provide any evidence of HIV. The ABC (American Boxing Commission) would have records and it was unnecessary to subpoena each commission separately. |
| 110426 | Massachusetts General Hospital (2nd attempt) | Plaintiff is not responsible for the inability of a 'private service processor' being unable to serve a subpoena on one of the most renowned hospitals in the nation. Not only that, counsel did not provide the diagnosis/report that was generated by Boston Mass. General, and the photo images – of no HIV in TOMMY'S blood. This information was presented by Plaintiff and is in front of this Court. |
| 110425 | Dr.Jonas Moses | Plaintiff's REBUTTAL EXPERT WITNESS. Did not treat and did not diagnose HIV. |
| 110451 | Dawn Freeman Hosterman (deposition) | Hosterman is an ex-wife, not physician, and states HIV is an *autoimmune* disorder (which it is not), was never shown packet inserts or disclaimers of tests; and TOMMY was never tested for any other non-HIV ailments to rule-out HIV, she and TOMMY were only shown a QUEST laboratory report as proof of a diagnosis. |
| 110420 | Washington Regional Medical Center | Did not diagnose and did not treat for HIV and did not provide any evidence of HIV. Their position is that outside laboratories are separate from the hospital and therefore not responsible for the products the laboratories purchase, nor |

| | | |
|---|---|---|
| | | their testing protocols, and the interpretation on the reports are solely generated by the outside laboratory – not the hospital or any physician. |
| 110421 | TruHealth Family Care Dr.Todd Simpson | Did not provide physician's diagnosis of HIV, or evidence of treatment or medical records in response to subpoena. DUPLICATE SUBPOENA. |
| 110432 | Kenneth Fisher MD | Did not provide a physician's diagnosis of HIV, and did not provide any evidence of treatment or medical records in response to subpoena. QUEST and HIATT provided to this Court their own generated laboratory report of a test they purchased for the physician from ROCHE Pharmaceutical Co. that contains the FDA mandated disclaimers and intended use of their test: *ROCHE PCR: "The Amplicor HIV-1 Monitor test, is not intended to be used as a screening test for HIV or as a diagnostic test to confirm the presence of HIV infection."* . *and further confirmation in front of this Court presented by plaintiff:* taken from an *August 23, 2013,* (further tolling the statute of limitations) email from Sarah I. Moseley, PhD, Manager PAS, Medical and Scientific Affairs at Roche Diagnostics Corporation to Plaintiff): *"Thank you for your interest. Because there have been several different emails over the past few days, we want to be clear regarding the intended use of the Roche FDA-approved COBAS* |

| | | |
|---|---|---|
| | | *AmpilPrep/COBAS Taqman HIV-1 Test, v2.0. A copy of the package insert for this test is attached, and the 'intended use' statement can be found on page 2. Please note that neither this test nor any other Roche Diagnostics assay is intended for use as a diagnostic test to confirm the presence of HIV-1 infection."* NO physician can make a diagnosis or confirm the presence of HIV infection in TOMMY in this case with a ROCHE laboratory report. |
| 110452 | Tony Holden (deposition) | Not a licensed promoter in 1996, not a legal representative to receive person health information on TOMMY, not aware of packet inserts and disclaimers, not aware of Boston and Omaha diagnosis reports of no viral particles, not abnormalities, and no budding retroviruses. Not aware that autoimmune disorders can react to tests TOMMY was given. |
| 110427 | Andrew Maniotis Pd.D. | Did not treat and did not diagnose HIV, and did not receive subpoena. |
| 110422 | TeamHealth Dr.Jerry Bradley | Did not provide a physician's diagnosis of HIV, did not treat for HIV or medical records in response to subpoena. DUPLICATE SUBPOENA. |
| 110428 | Madonna Rehabilitation Hospital | Did not diagnose and did not treat for HIV and did not provide any evidence of HIV. Their position is that outside laboratories are separate from the hospital and therefore not responsible for the products the laboratories purchase, nor their testing protocols, and the interpretation on the reports |

| | | |
|---|---|---|
| | | are solely generated by the outside laboratory − not the hospital or any physician. |
| 110433 | Daniel Einspahr MD | Did not treat and did not diagnose HIV. Treated for Miller Fisher Syndrome/Guillain-Barre Syndrome and anemia, and other autoimmune disorders. |
| 110905 | Dawn Brady (deposition) | Brady is an ex-wife, not a physician. Stated in her deposition that HIV is an *autoimmune disease (which it is not)*; treatment by testosterone shots (which is absurd); over prescribed medications of Adderoll by Dr.Epp; never shown packet inserts or disclaimers of tests; and TOMMY was never tested for any other non-HIV ailments to rule-out HIV, she and TOMMY only shown QUEST laboratory report. |
| 110418 | Wesley Medical Center -Woodlawn | Did not diagnose and did not treat for HIV and did not provide any evidence of HIV. Their position is that outside laboratories are separate from the hospital and therefore not responsible for the products the laboratories purchase, nor their testing protocols, and the interpretation on the reports are solely generated by the outside laboratory − not the hospital or any physician. |
| 110423 | Donna Sweet MD | Did not treat and did not diagnose HIV; was never an attending physician and did not have a patient-physician and did not provide evidence of HIV. |
| 110424 | Antonio Osio MD | Did not treat and did not diagnose HIV; and did not provide evidence of HIV. Treated for autoimmune disorders. |

PLAINTIFF'S OPPOSITION TO DEFENDANT QUEST DIAGNOSTICS INCORPORATED
AND JOHN HIATT'S 'BILL OF COSTS' DKT#281

Case No.:2:14-cv-01207-RFB-PAL / Case No.: 16-17050 Ninth Circuit Court of Appeals

| 110429 | Dr.Ann Kiesling | Did not treat, did not diagnose HIV; did not provide evidence of HIV. Performed a non FDA approved procedure to capture sperm (due to a vasectomy in 1994) for infertility treatment. |
|---|---|---|
| 110431 | David Ho MD | Documents 'under seal' do **not** provide any evidence of the 'isolation and purification' of HIV, did not treat for HIV, and performed *non FDA approved* testing that cannot be replicated. Plaintiff requested these documents to be open in front of this Court, and not under seal. |
| 110434 | Aaron Diamond Research Center | Did not treat, did not diagnose HIV; did not provide any evidence of HIV and did not provide the scientific metholodology of 'isolation and purification' of the human immunodeficiency virus. |
| 110430 | James Hutton MD | Did not provide physician's diagnosis of HIV, or evidence of treatment or medical records in response to subpoena. |
| 111123 | Dr.Jonas Moses (deposition) | Did not treat and did not diagnose HIV.  Moses is Plaintiff's Expert Rebuttal Witness in this case. |
| 111159 | TheMenninger Clinic | Did not treat and did not diagnose HIV.  Treated for drug and alcohol abuse. |
| 111161 | Patrick Nemecheck.DO | Did not provide physician's diagnosis of HIV, or evidence of treatment or medical records in response to subpoena. |
| 111157 | Paul R. Epp MD | Did not treat and did not diagnose HIV; and did not provide evidence of HIV. Prescribed and treated for ADHD only. |
| 111154 | AMG | Did not diagnose, did not treat for HIV, did not provide any |

| | | |
|---|---|---|
| | Specialty Hospital | evidence of HIV. Their position is that outside laboratories are separate from the hospital and therefore not responsible for the products the laboratories purchase, nor their testing protocols, and the interpretation on the reports are solely generated by the outside laboratory – not the hospital or any physician. |
| 111165 | Stormont Vail Hospital | Blood was drawn and sent to Boston Mass. General Hospital and a diagnosis was returned to Stormont Vail Hospital showing no viral particles in the blood of TOMMY. Did not diagnose and did not treat HIV. Their position is that outside laboratories are separate from the hospital and therefore not responsible for the products the laboratories purchase, nor their testing protocols, and the interpretation on the reports are solely generated by the outside laboratory – not the hospital or any physician. The diagnosis/report from Boston is in front of the Court. Defendants failed to provide the entirety of Stormont's file to the Court. |
| 111168 | Valley Hope-Booneville | Did not treat, did not diagnose HIV. Treated for drug and alcohol abuse. |
| 111412 | Richard Dubinsky MD | Did not treat, did not diagnose HIV, not an attending physician and did not have a patient-physician relationship. |
| 111377 | St. John's Medical Center | Did not diagnose and did not treat HIV and did not provide any evidence of HIV. Their position is that outside laboratories are separate from the hospital and therefore not |

| | | |
|---|---|---|
| | | responsible for the products the laboratories purchase, nor their testing protocols, and the interpretation on the reports are solely generated by the outside laboratory – not the hospital or any physician. |
| 111376 | Pigeon Forge Medical | Did not diagnose and did not treat HIV. Their position is that outside laboratories are separate from the medical center and therefore not responsible for the products the laboratories purchase, nor their testing protocols, and the interpretation on the reports are solely generated by the outside laboratory – not the medical center or any physician. |
| 111375 | Integris Grove Hospital | Did not diagnose, did not treat HIV, and did not provide any evidence of HIV. Their position is that outside laboratories are separate from the hospital and therefore not responsible for the products the laboratories purchase, nor their testing protocols, and the interpretation on the reports are solely generated by the outside laboratory – not the hospital or any physician. |

## VI.

The necessary subpoenas and depositions that QUEST and HIATT should be producing 'Bill of Costs' pertinent to this case, would be to defend claims that have been produced to this Court by Plaintiff such as the position taken by: test kit companies; laboratories, physicians, the FDA, the FTC, and the CDC. It was an absolute injustice not to

order QUEST and HIATT to fulfill the *motion to compel production of documents* filed by

Plaintiff on the test kit company packet inserts, disclaimers, *inter alia.*

### (a)
### POSITION TAKEN BY THE TEST KIT COMPANY-WESTERN BLOT
- DUE DILIGENCE – (not subpoenaed by defendants)

FROM MAXIM BIOMEDICAL, INC., MANUFACTURER OF THE WESTERN BLOT KIT (taken from a February 23, 2014, email from Joe Ma at Maxim Biomedical, Inc., to Plaintiff):
*"Maxim is the kit manufacturer but not clinical or reference lab."*

RESPONSE (taken from a February 23, 2014, email from Plaintiff to Joe Ma at Maxim Biomedical, Inc.):
*"So Maxim/Cambridge are not the one to make a final diagnosis on me when I take that test the westernblot?"*

FROM MAXIM BIOMEDICAL, INC. (taken from a February 24, 2014, email from Jo Ma at Maxim Biomedical, Inc., to Plaintiff):
*"Yes, that is correct."*

RESPONSE taken from a February 25, 2014, email from Plaintiff to Jo Ma at Maxim Biomedical, Inc.):
*"Bottom line is if that test paper says positive Maxim are confirming HIV infection and virus."*

FROM MAXIM BIOMEDICAL, INC. (taken from a February 24, 2014, email from Jo Ma at Maxim Biomedical, Inc., to Plaintiff):
*"No, we never see the test results from the hospital lab or reference lab. We just a test kit manufacturer not a testing lab."*

RESPONSE taken from a February 26, 2014, email from Plaintiff to Jo Ma at Maxim Biomedical, Inc.):
*"Of course-Maxim never see a positive westernblot test report back from the lab or the doctor so no way can Maxim make a diagnosis to the person taking the test! Plus Maxim don't write anywhere that your test even confirms a positive result even means that a person has HIV virus or HIV infection! You already wrote that to me."*

### (b)
### POSITION TAKEN BY THE TEST KIT COMPANY – ROCHE/PCR
- DUE DILIGENCE - (not subpoenaed by defendants)

FROM **ROCHE** DIAGNOSTICS CORPORATION, RE VIRAL LOAD (taken from an August 23, 2013, email from Sarah I. Moseley, PhD, Manager PAS, Medical and Scientific

1  Affairs at Roche Diagnostics Corporation to Plaintiff):  *"Thank you for your interest.*
2  *Because there have been several different emails over the past few days, we want to be*
   *clear regarding the intended use of the Roche FDA-approved COBAS AmpilPrep/COBAS*
3  *Taqman HIV-1 Test, v2.0. A copy of the package insert for this test is attached, and the*
   *'intended use' statement can be found on page 2. Please note that neither this test nor any*
4  *other Roche Diagnostics assay is intended for use as a diagnostic test to confirm the*
   *presence of HIV-1 infection."*
5
                                    **(c)**
6                **POSITION TAKEN BY THE NEVADA PHYSICIAN**

7  FROM DR. ROBERT VOY, LAS VEGAS PHYSICIAN (taken from a July 15, 2011, email from
   Dr. Robert Voy to TOMMY):
8  *"Hello Tommy, You are correct, I did not diagnose you as having AIDS. I did your*
   *required licensing exam and found you physically qualified and fit to box at the time. I*
9  *certainly approve your desire to get a boxing license."*

10                                   **(d)**
11                     **POSITION TAKEN BY THE FDA**
                -DUE DILIGENCE - (not subpoenaed by defendants)
12
13  FROM FDA (taken from a January 25, 2011, email from David Banks of the FDA Office of
    Special Health Issues to Susan Colard of the Washington State Athletic Commission as
14  provided by defendants:
    *"However, nobody at the FDA will be able to advise you regarding which test or tests to*
15  *employ....CDC-INFO is not able to recommend a brand name of a HIV test to you*
    *as CDC is not the regulatory agency for the approval of these tests."*
16
17  RESPONSE (taken from a March 16, 2014, email from Plaintiff to Walter Gardner, FDA):
    *"Did you know that the laboratories have informed me-such as Quest lab- quite rightly,*
18  *plainly and publicly state that they do not and are not responsible for diagnosing HIV*
    *infection in anyone and any paper/written reports supplied by them to the ordering*
19  *physician do not constitute a diagnosis?"*

20  FROM CENTER FOR BIOLOGICS EVALUATION AND RESEARCH (taken from a
21  March 16, 2014, email from Walter Garner, FDA to Plaintiff):
    *"That is correct. The patient's physician makes the diagnosis, taking into consideration the*
22  *results of the tests he has ordered, as well as his personal examination of the patient."*

23                                   **(e)**
24           **POSITION TAKEN BY QUEST ON LABORATORY DIAGNOSIS**
                - DUE DILIGENCE - (not subpoenaed by defendants)
25
26  TO QUEST DIAGNOSTICS (taken from a March 9, 2014, email from Plaintiff to Eva Gavin,
    Clinical Client Services at Quest Diagnostics):
27
                                   - 26 -
28        PLAINTIFF'S OPPOSITION TO DEFENDANT QUEST DIAGNOSTICS INCORPORATED
                 AND JOHN HIATT'S 'BILL OF COSTS' DKT#281

          Case No.:2:14-cv-01207-RFB-PAL / Case No.: 16-17050 Ninth Circuit Court of Appeals

"I am having a little problem and hope that you can help me. I have spoken to a doctor and he has said to me that the protocol when being tested for HIV in his state-Nevada is the following:

1. He sends his patient to have their blood drawn.

2. It's then Quest Labs in Nevada that select which tests that blood is tested against for HIV virus/infection.

3. Quest Labs is then responsible for retesting blood if it's 'reactive' on the first test because he says Quest labs are saying there is a problem with the patients blood as no one else is saying that because he doesn't get to see the blood tested.

4. Then the Quest Labs 'report' that is printed out is then sent direct to whoever is needing to find out whether that person has the HIV virus/infection.

5. The doctor said that whatever the 'Quest Labs report' comes back with he uses 'Quest Labs diagnosis' and not his own and nor does he issue another print out he just 'photocopies' whatever Quest sends him IF/when he gets a copy!"

RESPONSE (taken from a March 16, 2014, email from Eva Gavin, Clinical Client Services at Quest Diagnostics to Plaintiff):

"I am sorry, again, this is not Nevada or Quest Diagnostics specific. This is this particular doctor's policy. In particular, this looks like a policy put in place to deal with potential liability. In 19 years of working in labs, this is the first time I've ever encountered hearing this."

TO QUEST DIAGNOSTICS (taken from a February 20, 2014, email from Plaintiff to Quest Diagnostics, Patient Inquiry):

"I have read that the laboratories -such as Quest Labs- plainly and publicly state that they do not and are not responsible for diagnosing HIV infection in anyone and any paper/written reports generated and supplied by the Labs to the ordering physician do not constitute a diagnosis. Is that correct?"

RESPONSE (taken from a February 20, 2014, email from Eva Gavin, Clinical Client Services at Quest Diagnostics to Plaintiff):

"Yes, you are correct, not just HIV, all test.....Only physicians, with background clinical information, can diagnosis. Myself included. I might see my own lab result that is out of range and not know how to interpret it and be worried for no reason. For example, thyroid testing can be very difficult to read, takes multiple different tests along with clinical information in order for a Dr to get a clear view of what's going on. Or for example you might get back a certain positive hepatitis test and wrongly stress that you have hepatitis when it really just means you have immunity. However, HIPAA guidelines set up to ensure the privacy of your results also set a clear way to document and get access to your own records."

TO QUEST DIAGNOSTICS (taken from a February 24, 2014, email from Plaintiff to Eva Gavin, Clinical Client Services at Quest Diagnostics):

"So basically, bottom line, Quest Labs only run and report the test manufacturers tests and don't diagnose anyone with HIV infection/virus. If any test results come back from Quest

1  *labs with negative or positive reporting Quest are just indicating that further testing by*
2  *the doctor is required and the doctor cannot use a Quest Lab report as a diagnosis for HIV*
   *infection/virus in his patient, i.e. Here's the report back from Quest and THEY say you are*
3  *infected with HIV! Have I understood everything correctly now?"*

4  RESPONSE (taken from a February 24, 2014, email from Eva Gavin, Clinical Client Services
   at Quest Diagnostics to Plaintiff):
5  *"Yes, you are correct. We just don't have the clinical background to enable us to diagnose.*
   *For example, did you know the grand multips, women who have had a lot of children, have*
6  *a high rate for false positive HIVs? We would not be given that information."*

7
                                      **(f)**
8          **POSITION TAKEN BY LICENSED ATTORNEY AND PHYSICIAN IN NEVADA**
                  - DUE DILIGENCE - (not subpoenaed by defendants)
9

10 On Saturday, December 21, 2013 11:56 AM, David Mortensen <DMortensen@AlversonTaylor.com> wrote:
   Dear Mrs. Morrison,
11
   I have had the opportunity to review your e-mail requests, meet with Dr. Voy and analyze the
12 e-mail communications that have been exchanged for years between yourself, Mr. Morrison and
   Dr. Voy. Each of the questions you have asked most recently have been responded to by Dr. Voy,
13 in one way or the other, multiple times through the years. On behalf of Dr. Voy, I will respond to
   your most recent email questions this one last time.
14 It is important that you understand that Dr. Voy did not diagnose and never has diagnosed Mr.
   Morrison as "HIV positive". The 1996 blood draw required by the NSAC was ultimately carried out
15 by Associated Pathologists Laboratory (now Quest Diagnostics) personnel, not Dr. Voy. Mr.
   Morrison's blood sample was analyzed at APL, by APL personnel using equipment and methods
16 selected and controlled by APL, not by Dr. Voy. And the report which stated that the analysis of
   Mr. Morrison blood sample was "POSITIVE WESTERN BLOT (HIV-1)" was authored, prepared
17 and issued by APL personnel, not Dr. Voy. Simply stated, Dr. Voy has never diagnosed anyone,
   including Tommy Morrison, as "HIV positive". That is a qualitative, empirical analysis performed
18 by laboratories, not by physicians.
19 Please find below specific answers to the questions you have asked in your most recent e-mail:

20 1)    Since it was APL that tested Mr. Morrison's blood sample, Dr. Voy does not know the "brand
   names and manufacturers" of the test kits used, if any;
21 2)    Dr. Voy did not diagnose Mr. Morrison as "harboring the 'HIV virus'";
   3)    We are unable to provide any information from "test kit manufacturers" because only APL
22 personnel know what test kit(s) were used, if any;
   4)    Dr. Voy was not made aware of any "test kit disclaimers at the time of testing" because he did
23 not do the testing—APL did the testing; and
   5)    Again, Dr. Voy did not diagnose Mr. Morrison as HIV positive, had no part in the testing of the
24 blood sample and, therefore, would have no reason to consider or "rule out" a basis for a possible
25 "false positive."
   Mrs. Morrison, both I and Dr. Voy are very sympathetic to your loss. We understand the sense of
26 frustration you must feel. However, your questions are more appropriately directed to APL (now
   Quest Diagnostics). If anyone has the answers to the questions you are asking, they do.
27
                                    – 28 –
28          PLAINTIFF'S OPPOSITION TO DEFENDANT QUEST DIAGNOSTICS INCORPORATED
                    AND JOHN HIATT'S 'BILL OF COSTS' DKT#281

            Case No.:2:14-cv-01207-RFB-PAL / Case No.: 16-17050 Ninth Circuit Court of Appeals

Please understand that this will be the last response that you will receive from either me or Dr. Voy. We have already shared everything we know about Mr. Morrison's 1996 testing with you. Please allow Dr. Voy to now devote his full time, resources and energies to his patients and family. Thank you.

Dave.

**David J. Mortensen, Esq.**
**Alverson Taylor Mortensen & Sanders**
7401 W. Charleston Blvd.
Las Vegas, NV 89117-1401
Office: 702.384.7000
Fax: 702.385.7000
dmortensen@alversontaylor.com

## **CONCLUSION**

Defendants' 'Bill of Costs' should be denied in its entirety. In the alternative, this District Court, upon receipt by Plaintiff of the video footage of all depositions, and **missing** documents that were subpoenaed, could place a *lien* on the Estate of Tommy Morrison. The video footage shall be used in an upcoming documentary and the proceeds from the documentary would re-imburse defendants if this court so wished. And, as far as the 'statute of limitations' being a concern for this District Court and used, in part, to close this case:

Scenario 1: due diligence clearly began in this case on December 21, and December 23, 2013 from an authenticated email by a Nevada attorney for Dr.Voy.

Scenario 2: even if this District Court were to take the unauthenticated email dated July 15th, 2011, from Dr. Voy, the statute of limitations tolled when TOMMY was incarcerated for 23 days in August 2011 on a mysterious sealed fugitive warrant, from Kansas, for an $80 2001 unpaid fine in Dakota , (even though the sheriff in Dakota had not requested a warrant);  followed then immediately after being released from jail by a further two day incarceration  for 'loitering' at a Walmart store whilst trying on sunglasses before going to the airport to return home; after that release, was followed immediately by incarceration at Atlanta Airport and physically taken off the aircraft on DRUG charges, (after having spent now 25 days in jail) , then released again as drug tests came back

negative; **and then** the following morning in Tennessee, was once again incarcerated for 2 days *this time* on charges of DUI (at 8.30 in the morning in a mysterious hit and run car accident), only to be released again because the drug and alcohol tests came back negative. **And** , the seven times TOMMY was intubated from 2012 to 2013 for ten days at a time, and then finally, the one week of being placed in a MEDICALLY INDUCED COMA, which he never survived. All the defendants have provided proof to the court of records tolling the statute of limitations.

Scenario 3: Courts in several Circuits have held a continuing tort, as in this case, may serve ground for equitable tolling in civil cases. Continuing tort sufficient to toll the statute of limitations is characterized by *continual unlawful acts, not continuing ill effects from the original act.*

This District Court is well aware of the position that the FTC takes with regards to consumers must be made aware of whether a product actually does what it is *intended* to do, and that consumers must, by law, receive the risks, disclaimers, warnings of products. *See Federal Trade Commission v Health Formulas, Nevada, see 2:2014-cv-01649.*

Defendants' 'Bill of Costs' by a multi-billion-dollar corporation are opposed by this Plaintiff, and are a definitive sign of further harassment so that Plaintiff does not pursue this case in the Ninth Circuit Court of Appeals. Plaintiff's 'Costs' for $1930.72 are also attached.

Dated: November 14 th, 2016        Respectfully submitted by:

PATRICIA HARDING MORRISON
*Plaintiff/Appellate/ Administrator*
*For the Estate of TOMMY MORRISON*

1
2
3

## **CERTIFICATE OF MAILING**

4

    I hereby certify that on the 14th day of NOVEMBER, 2016, I placed a true and correct

5

copy of the foregoing document in the U.S. Mail in the State of Kansas, with first-class
postage pre-paid, addressed to the following party(ies):

6
7

Keith A. Weaver, Esq.
**Lewis Brisbois Bisgaard & Smith LLP**
6385 S Rainbow Blvd., Ste 600

8

Las Vegas, NV 89118 Tel: (702) 893.3383

9

*Co-Counsel for Quest Diagnostics Inc. & John Hiatt*
and

10

D. Faye Caldwell, Esq.

11

**Caldwell Everson, PLLC**
2777 Allen Pkwy, Ste 950

12

Houston, TX 77019 Tel: (713) 654.3000

13

*Co-Counsel for Quest Diagnostics Inc. and John Hiatt*
and

14

Vivienne Rakowsky, Esq., Deputy Attorney General
555 E. Washington Ave, Ste 3900

15

Las Vegas, NV 89101
*Counsel for Nevada Athletic Commission, Marc Ratner & Margaret Goodman*

16
17

COUNTY CLERK'S OFFICE (for filing)
U.S.DISTRICT COURT

18

Lloyd D. George Courthouse
 - 333 – South Las Vegas Boulevard,

19

Las Vegas, Nevada, 89101
And

20

COUNTY CLERK'S OFFICE (for filing)
Case No.: 16-17050 Ninth Circuit Court

21

U.S.DISTRICT COURT – NINTH CIRCUIT COURT OF APPEALS

22

Lloyd D. George Courthouse
 - 333 – South Las Vegas Boulevard,

23

Las Vegas, Nevada, 89101

24

Dated: November 14th, 2016

25

PATRICIA HARDING MORRISON

26

*Plaintiff/Appellate/ Administrator*
*For the Estate of TOMMY MORRISON*

27
28

- 31 -

PLAINTIFF'S OPPOSITION TO DEFENDANT QUEST DIAGNOSTICS INCORPORATED
AND JOHN HIATT'S 'BILL OF COSTS' DKT#281

Case No.:2:14-cv-01207-RFB-PAL / Case No.: 16-17050 Ninth Circuit Court of Appeals

# EXHIBIT

# A

## Veritext Corporate Services, Inc.

290 West Mt. Pleasant Ave, Suite 2260
Livingston NJ 07039
Tel. 973-410-4040 Fax. 973-410-1313
Fed. Tax ID: 20-3457913



**Bill To:**
Trisha Harding
PO Box 454
Rose Hill, KS, 67133

| | |
|---|---|
| **Invoice #:** | CS2628660 |
| **Invoice Date:** | 5/11/2016 |
| **Balance Due:** | $0.00 |

| | |
|---|---|
| **Case:** | Patricia Harding Morrision v. Quest Diagnostics Et Al |
| **Job #:** | 2294015 \| Job Date: 4/25/2016 \| Delivery: Normal |
| **Billing Atty:** | |
| **Location:** | P Brent Koprivica & Associates: Koprivica P B MD |
| | 10127 W. Leavenworth Rd \| Kansas City, KS 66109 |
| **Sched Atty:** | Faye Caldwell, Esq. \| Caldwell Everson, PLLC |

| Witness | Description | Amount |
|---|---|---|
| Dr. P. Brent Koprivica | Certified Transcript | $271.45 |

| Notes: | | |
|---|---|---|
| | **Invoice Total:** | $271.45 |
| | **Payment:** | ($279.72) |
| | **Credit:** | $0.00 |
| | **Interest:** | $8.27 |
| | **Balance Due:** | $0.00 |

TERMS: Payable upon receipt. Accounts 30 days past due will bear a finance charge of 1.5% per month. Accounts unpaid after 90 days agree to pay all collection costs, including reasonable attorney's fees. Contact us to correct payment errors. No adjustments will be made after 90 days. For more information on charges related to our services please consult http://www.veritext.com/services/all-services/services-information

**To pay online, go to**
**www.veritext.com**

138076    Veritext accepts all major credit cards
(American Express, Mastercard, Visa, Discover)

**Please remit payment to:**
**Veritext**
**P.O. Box 71303**
**Chicago IL 60694-1303**

| | |
|---|---|
| **Invoice #:** | CS2628660 |
| **Job #:** | 2294015 |
| **Invoice Date:** | 5/11/2016 |
| **Balance:** | $0.00 |

# Veritext Corporate Services, Inc.

290 West Mt. Pleasant Ave, Suite 2260
Livingston NJ 07039
Tel. 973-410-4040 Fax. 973-410-1313
Fed. Tax ID: 20-3457913

# VERITEXT
## LEGAL SOLUTIONS

| Bill To: | | | |
|---|---|---|---|
| | Trisha Harding | **Invoice #:** | CS2629779 |
| | PO Box 454 | **Invoice Date:** | 5/13/2016 |
| | Rose Hill, KS, 67133 | **Balance Due:** | $0.00 |

| | |
|---|---|
| **Case:** | Morrison, Patricia v. Quest Diagnostics |
| **Job #:** | 2275003 \| Job Date: 4/6/2016 \| Delivery: Normal |
| **Billing Atty:** | |
| **Location:** | Professional Court Reporting |
| | 601 S. Boulder Ave \| Suite 1003 \| Tulsa, OK 74119 |
| **Sched Atty:** | Faye Caldwell, Esq. \| Caldwell Everson, PLLC |

| Witness | Description | Amount |
|---|---|---|
| Dawn Freeman Hosterman | Certified Transcript | $523.25 |
| Tony Holden | Certified Transcript | $416.00 |

| Notes: | | |
|---|---|---|
| | **Invoice Total:** | $939.25 |
| | **Payment:** | ($939.25) |
| | **Credit:** | $0.00 |
| | **Interest:** | $0.00 |
| | **Balance Due:** | $0.00 |

TERMS: Payable upon receipt. Accounts 30 days past due will bear a finance charge of 1.5% per month. Accounts unpaid after 90 days agree to pay all collection costs, including reasonable attorney's fees. Contact us to correct payment errors. No adjustments will be made after 90 days. For more information on charges related to our services please consult http://www.veritext.com/services/all-services/services-information

**To pay online, go to
www.veritext.com**

138076  Veritext accepts all major credit cards
(American Express, Mastercard, Visa, Discover)

Please remit payment to:
**Veritext
P.O. Box 71303
Chicago IL 60694-1303**

| **Invoice #:** | CS2629779 |
|---|---|
| **Job #:** | 2275003 |
| **Invoice Date:** | 5/13/2016 |
| **Balance:** | $0.00 |

## Veritext Corporate Services, Inc.

290 West Mt. Pleasant Ave, Suite 2260
Livingston NJ 07039
Tel. 973-410-4040 Fax. 973-410-1313
Fed. Tax ID: 20-3457913

# VERITEX
## LEGAL SOLUTIONS

| Bill To: | | | |
|---|---|---|---|
| | Trisha Harding | **Invoice #:** | CS2629809 |
| | PO Box 454 | **Invoice Date:** | 5/13/2016 |
| | Rose Hill, KS, 67133 | **Balance Due:** | $0.00 |

| | |
|---|---|
| **Case:** | Morrison, Patricia v. Quest Diagnostics |
| **Job #:** | 2284635 \| Job Date: 4/21/2016 \| Delivery: Normal |
| **Billing Atty:** | |
| **Location:** | Alpha Reporting Corporation |
| | 162 Rosa L. Parks Boulevard \| Suite 103 \| Nashville, TN 37203 |
| **Sched Atty:** | Faye Caldwell, Esq. \| Caldwell Everson, PLLC |

| Witness | Description | Amount |
|---|---|---|
| Dawn Brady | Certified Transcript | $711.75 |

| Notes: | | |
|---|---|---|
| | **Invoice Total:** | $711.75 |
| | **Payment:** | ($711.75) |
| | **Credit:** | $0.00 |
| | **Interest:** | $0.00 |
| | **Balance Due:** | $0.00 |

TERMS: Payable upon receipt. Accounts 30 days past due will bear a finance charge of 1.5% per month. Accounts unpaid after 90 days agree to pay all collection costs, including reasonable attorney's fees. Contact us to correct payment errors. No adjustments will be made after 90 days. For more information on charges related to our services please consult http://www.veritext.com/services/all-services/services-information

**To pay online, go to**
**www.veritext.com**

Veritext accepts all major credit cards
(American Express, Mastercard, Visa, Discover)

**Please remit payment to:**
**Veritext**
**P.O. Box 71303**
**Chicago IL 60694-1303**

| | |
|---|---|
| **Invoice #:** | CS2629809 |
| **Job #:** | 2284635 |
| **Invoice Date:** | 5/13/2016 |
| **Balance:** | $0.00 |

138076

1  PATRICIA HARDING MORRISON
2  P.O. BOX 454
   ROSE HILL, KANSAS 67133
3  tommyandtrishamorrison@yahoo.com
   tommythedukemorrison@yahoo.com
4  Tel: (865) 296-9973
   *Plaintiff and Administrator for the Estate of:*
5  *Tommy Morrison*

```
 _____ FILED      _____ RECEIVED
 _____ ENTERED    _____ SERVED ON
                     COUNSEL/PARTIES OF RECORD

            NOV 1 5 2016

        CLERK US DISTRICT COURT
          DISTRICT OF NEVADA
BY: _____ DEPUTY
```

6

7

8  ## UNITED STATES FEDERAL COURT

9  ## IN AND FOR THE DISTRICT OF NEVADA – SOUTHERN DIVISION

10  Patricia Harding Morrison , an individual, )   Case No.: 2:14-cv-01207-RFB-PAL
11  *Personal Representative /Administrator* )   Case No.: 16-17050 Ninth Circuit Court
    *for the Estate of* TOMMY MORRISON,   )
12                                        )
13              Plaintiff,                )
                                          )
14  vs.                                   )   **PLAINTIFF'S NOTICE**
                                          )   **TO STAY JUDGMENT (DKT#278)**
15  Quest Diagnostics Incorporated, a Nevada )
    corporation; John Hiatt, an individual; Dr.)
16  Margaret Goodman, an individual; Nevada)
    State Athletic Commission, an unknown )
17  business entity; Marc Ratner, an          )
18  individual.                              )
                                          )
19              Defendants.               )
                                          )
20  _____ )

21      **PLEASE TAKE NOTICE** that, on a date and at a time to be set by the Court, or as

22  soon    thereafter    as    Plaintiff,    Patricia    Harding    Morrison,    *Personal*

23  *Representative/Administrator for the Estate of Tommy Morrison*, (hereinafter referred to

24  as "Plaintiff"), can be heard, in the courtroom of the Honorable Richard F. Boulware II,

25  Plaintiff    will    move    this    Honorable    Court,    pursuant    to    Fed.R.Civ.P.62(c)    and

26  Fed.R.App.8(a)(1)(A),(C), for an order staying the judgment of this Court entered on

27

28

October 25th, 2016 (Dkt#278), pending appeal to the United States Court of Appeals for the Ninth Circuit.

If the Court is not inclined to grant the motion for a stay pending appeal, the Plaintiff moves for a temporary administrative stay of the Court's Order and judgment pending resolution by the Court of Appeals of a stay motion to that court under FRAP 8(a)(2). Such administrative stay would allow both this Court and the Court of Appeals to consider a stay pending appeal on a non-emergency basis, with full briefing. If this Court enters a temporary administrative stay but denies a stay pending appeal, Plaintiff will promptly inform this Court of any Court of Appeals decision regarding a stay pending appeal. Plaintiff respectfully requests a ruling on the stay motion by the end of the day on Monday November 21, 2016, so that, if necessary, Plaintiff may seek an emergency stay from the Court of Appeals.

In support of the instant motion, Plaintiff respectfully relies on the Memorandum of Law and the Declaration of Patricia Harding Morrison, which are filed herewith, and copies of which have been served on counsel for the defendants in accordance with the certificate of service.

Dated: November 14 th, 2016        Respectfully submitted by:

PATRICIA HARDING MORRISON
*Plaintiff/Appellate/ Administrator*
*For the Estate of TOMMY MORRISON*

**CERTIFICATE OF MAILING**

I hereby certify that on the 14th day of NOVEMBER, 2016, I placed a true and correct copy of the foregoing document in the U.S. Mail in the State of Kansas, with first-class postage pre-paid, addressed to the following party(ies):

Keith A. Weaver, Esq.
**Lewis Brisbois Bisgaard & Smith LLP**
6385 S Rainbow Blvd., Ste 600
Las Vegas, NV 89118 Tel: (702) 893.3383
*Co-Counsel for Quest Diagnostics Inc. & John Hiatt*
and
D. Faye Caldwell, Esq.
**Caldwell Everson, PLLC**
2777 Allen Pkwy, Ste 950
Houston, TX 77019 Tel: (713) 654.3000
*Co-Counsel for Quest Diagnostics Inc. and John Hiatt*
and
Vivienne Rakowsky, Esq., Deputy Attorney General
555 E. Washington Ave, Ste 3900
Las Vegas, NV 89101
*Counsel for Nevada Athletic Commission, Marc Ratner & Margaret Goodman*

COUNTY CLERK'S OFFICE (for filing)
U.S.DISTRICT COURT
Lloyd D. George Courthouse
 - 333 – South Las Vegas Boulevard,
Las Vegas, Nevada, 89101
And
COUNTY CLERK'S OFFICE (for filing)
Case No.: 16-17050 Ninth Circuit Court
U.S.DISTRICT COURT – NINTH CIRCUIT COURT OF APPEALS
Lloyd D. George Courthouse
 - 333 – South Las Vegas Boulevard,
Las Vegas, Nevada, 89101

Dated: November 14th, 2016

PATRICIA HARDING MORRISON
*Plaintiff/Appellate/ Administrator*
*For the Estate of TOMMY MORRISON*

- 3 –
PLAINTIFF'S NOTICE TO STAY JUDGMENT DKT#278.

Case No.:2:14-cv-01207-RFB-PAL / Case No.: 16-17050 Ninth Circuit Court of Appeals



1   PATRICIA HARDING MORRISON
2   P.O. BOX 454
    ROSE HILL, KANSAS 67133
3   tommyandtrishamorrison@yahoo.com
    tommythedukemorrison@yahoo.com
4   Tel: (865) 296-9973
    *Plaintiff and Administrator for the Estate of:*
5   *Tommy Morrison*

6

7

8                    **UNITED STATES FEDERAL COURT**

9       **IN AND FOR THE DISTRICT OF NEVADA – SOUTHERN DIVISION**

10  Patricia Harding Morrison , an individual, )  Case No.: 2:14-cv-01207-RFB-PAL
11  *Personal Representative /Administrator* )  Case No.: 16-17050 Ninth Circuit Court
    *for the Estate of* TOMMY MORRISON,    )
12                                          )
13               Plaintiff,                 )
                                            )
14  vs.                                     )  **MEMORANDUM IN SUPPORT OF**
                                            )  **PLAINTIFF'S MOTION FOR STAY**
15  Quest Diagnostics Incorporated, a Nevada )  **ON JUDGMENT (DKT#278)**
    corporation; John Hiatt, an individual; Dr. )  **PENDING APPEAL**
16  Margaret Goodman, an individual; Nevada )
    State Athletic Commission, an unknown   )
17  business entity; Marc Ratner, an        )
    individual.                             )
18                                          )
19               Defendants.                )
20  _____)

21        __**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION**__

22      __**FOR STAY ON JUDGMENT (DKT#278)PENDING APPEAL**__

23        By its Order dated October 24th, 2016 (dkt#277), and judgment entered on October

24  25th, 2016 (dkt#278), this Court closed the *Morrison v Quest et al* case granting defendants'

25  motions for summary judgment. Plaintiff, Patricia Harding Morrison, *Personal*

26  *Representative/Administrator for the Estate of Tommy Morrison,* (hereinafter referred to

27  as "Plaintiff"), has filed a notice of appeal to the Ninth Circuit from the Order and judgment.

28  - 1 –
    MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR STAY ON JUDGMENT (DKT#278) PENDING APPEAL

    Case No.:2:14-cv-01207-RFB-PAL / Case No.: 16-17050 Ninth Circuit Court of Appeals

Pursuant to Fed.R.Civ.P.62(c) and Fed.R.App.P. 8(a)(1)(A),(C), Plaintiff respectfully moves the Court to stay its Order and judgment pending appeal.

If the Court is not inclined to grant this motion for stay pending appeal, Plaintiff moves for a temporary administrative stay of the Court's Order and judgment pending resolution by the Court of Appeals of a stay motion to that court under FRAP 8(a)(2). Such an administrative stay would allow both this Court and the Court of Appeals to consider a stay pending appeal on a non-emergency basis, with full briefing. If this Court enters a temporary administrative stay but denies a stay pending appeal, Plaintiff will promptly inform this Court of any Court of Appeals decision regarding a stay pending appeal. Plaintiff respectfully requests a ruling on the stay motion by the end of the day on Monday, November 21st, 2016, so that, if necessary, Plaintiff may seek an emergency stay from the Court of Appeals.

The judgment the Court ordered was erroneous, for numerous reasons.

# I

## STANDARD FOR A STAY PENDING APPEAL

Rule 62(c) of the Federal Rules of Civil Procedure provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction." In this Circuit, four factors are considered before granting a stay pending appeal: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer irreparable injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected." *Torres v. New York State Bd. Of Elections,* 462 F.3d 161,207 (2nd Cir.2006) (quoting *Hirschfield v. Board of Elections,* 984 F.2d 35,39 (2d Circ.1993)); *see also In re*

*World Trade Center Disaster Site Litig.,* 503 F.3d 167, 170-71 (2d Cir.2007). In *Mohammed v. Reno,* 309 F.3d 95 (2d circ.2002), the Second Circuit surveyed how different courts have analyzed the prospect of success necessary for issuing a stay, ultimately agreeing with the District of Columbia Circuit's approach, whereby "[t]he necessary 'level' or 'degree' of possibility of success will vary according to the Court's assessment of the other [stay] factors." *Id.* at 101 ( quoting *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.cir.1977)). The court observed: "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay. Simply stated, more of one excuses less of the other." *Mohammed,* 309 F.3d at 101 ( citing *Washington Metro. Area Transit Comm'n,* 559 F.2d at 843); *see also Citigroup Global Markets, Inc. v. FDA*, 884 F. Supp. 2d 108, 121-23 (S.D.N.Y.2012); *Safeco Ins. Co. of America v. M.E.S., Inc.,* No. 09-CV-3312 (ARR), 2010 WL 5437208, at *7 9E.D.N.Y. Dec.17,2010) (collecting cases indicating that the party seeking a stay does not need to demonstrate that it is more likely than not that it will succeed on the merits).

## II

## ARGUMENT

I.  **PLAINTIFF HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON APPEAL.**

   A.  **The Court Exceeded its Subject Matter Jurisdiction in Reviewing the Patient Standard of Care and Ordering 'Clinical Laboratory Reports' As A Definitive Diagnosis of the Human Immunodeficiency Virus.**

**B.** **The Court Exceeded Its Authority in Ordering A Change in How Patients Are Diagnosed With the Human Immunodeficiency Virus.**

**C.** **The Court's Order Did Not Consider All The Relevant Factors And Did Not Review Anything <u>Other</u> Than 'Clinical Laboratory Reports' Whether Subpoenaed, or Hacked From a Central Data Base.**

**D.** **The Court's Order Lacked The Proper Course of Action And Undermined The Regulatory Procedures Governing FDA's Test Approval Process And FTC Consumer Protection.**

**1.** the Court exceeded its authority by issuing an order concerning 'QUEST clinical laboratory reports' as being a definitive diagnosis of the human immunodeficiency virus, in TOMMY, without any scientific explanation and without any mandate to accept a 'clinical laboratory report' as a diagnosis of any disease, from CLIA (Clinical Laboratory Improvement Act), the AMA (American Medical Association), the FDA (Food and drug Administration), and the FTC (Federal Trade Commission).

**2.** the Court exceeded its authority, under principles of administrative law and the Federal Food, Drug, and Cosmetic Act (FDCA), by issuing an order essentially allowing physicians to accept a diagnosis of the human immunodeficiency virus (HIV), using *non - FDA approved testing* such as using FDA approved *screening tests* as non-approved FDA *diagnostic tests*.

**3.** the Court's order essentially directs the FDA to reverse its decision and allow the lawful marketing of any ROCHE test as a diagnosis for the 'presence of the human immunodeficiency virus, and diagnostic for HIV infection', something that the Court

concededly lacks the power to do. ROCHE have not received approval from the FDA for the *intended use* of a diagnosis of HIV-infection nor the presence of HIV, as outlined by ROCHE themselves, and within the mandated FDA packaging (packet inserts). QUEST and HIATT provided to this Court their own generated laboratory report of a test they purchased for the physician from ROCHE Pharmaceutical Co. that contains the FDA mandated disclaimers and *intended use* of their test: <u>ROCHE PCR: "The Amplicor HIV-1 Monitor test, is not</u> <u>intended to be used as a screening test for HIV or as a diagnostic test to confirm the</u> <u>presence of HIV infection."</u> . and further confirmation in front of this Court presented by plaintiff: taken from an <u>August 23, 2013</u>, (further tolling the statute of limitations) an email from Sarah I. Moseley, PhD, Manager PAS, Medical and Scientific Affairs at Roche Diagnostics Corporation to Plaintiff: *"Thank you for your interest. Because there have been several different emails over the past few days, we want to be clear regarding the intended use of the Roche FDA-approved COBAS AmpilPrep/COBAS Taqman HIV-1 Test, v2.0. A copy of the package insert for this test is attached, and the 'intended use' statement can be found on page 2. Please note that neither this test nor any other Roche Diagnostics assay is intended for use as a diagnostic test to confirm the presence of HIV-1 infection."* NO physician can make a diagnosis or confirm the presence of HIV infection in TOMMY in this case, or any other case, with a ROCHE test listed on a QUEST laboratory report.

   **4.** the Court does not have the authority over the CDC to enforce what is a *'recommended algorythm of testing'* as being unequivocally valid for each and every human being's blood, especially when in front of the Court, on the record, the CDC Recommended Guidelines so stipulate that the 'algorythm' does *not* work for everyone's blood, particularly on the blood of those that have *autoimmune disorders,* such as TOMMY, and such as in 'canines' (dogs) that will also trigger a reaction to the 'testing'.

**5.** the Court erred in disallowing Plaintiff's due diligence date of December 21/23, 2013, to fall within the statute of limitations, and erred in computing the statute of limitations to commence as of a July 15th, 2011, from an unauthenticated email, and not from an authenticated email dated December 21/23, 2013, from an attorney in Las Vegas, Nevada. Due to the uniqueness of this case, and the various incarcerations TOMMY was subjected to between July 30th and October 30th, 2011, including seven procedures of intubation between 2012 and 2013, and a medically induced coma in August 2013, Plaintiff is well within the statute of limitations and has a substantial likelihood of success on appeal.

**6.** the Court's order is construed to eliminate TOMMY's, and any member of the public's entitlement to warnings, disclaimers, side effects of the tests they are being subjected to, which is in direct violation of the Federal Trade Commission.

**7.** the Court's decision can be read to deprive TOMMY's entitlement to have his blood tested for non-HIV related ailments and autoimmune disorders to rule out, or rule in, the human immunodeficiency virus, before receiving the stigma of 'HIV' that shall remain for the rest of their lives.

**8.** the Court's order allows for Nevadans, in this case John Hiatt, to portray themselves as an MD and pathologist on government websites, and social media, without any recourse, and without retraction.

**9.** the Court's decision can be read to allow members of the NSAC, in this case Dr. Margaret Goodman, to retrieve personal health information on *non-applicants* in 2007, with an outdated medical release form, or no medical release form whatsoever, as a non-ordering physician of the testing ordered, and with no patient-physician relationship. It is one thing for individuals to violate the HIPAA laws, but for a 'state employee' to do so is now decidedly within the Courts approval.

**10.** the Court erred in ordering a circumvention of the administrative process, substituting its judgment for the FDA's. The order directed by the Court is essentially directing the outcome of how a physician makes a diagnosis of the human immunodeficiency virus, rather than upholding the physicians to exercise their diagnostic standard of care in conformance with FDA, CDC, AMA, and HHS (Health and Human Services), guidelines.

**11.** the Court neither considered, nor adhered to the FDA rule as specified in *Title 21 Code of Federal Regulations (CFR) Section 601.12.* but instead chose to ignore the FDA packet inserts, and the QUEST and HIATT's unlawful marketing of a test by ROCHE, against FDA's approval, and used on a 'discharge summary' , to confirm HIV infection in TOMMY, when truthfully the test used by UNMC (University of Nebraska Medical Center) – specifically the ROCHE/PCR test, has absolutely no approval from the FDA to be used as a diagnostic test for the presence of HIV, and nor does it have the approval to be used for 'discharge summaries' to confirm HIV infection.

**12.** the Court's order erred in not compelling Defendant QUEST and HIATT to provide appropriate scientific data demonstrating that the products (tests) they purchased, performed, and reported were approved to lawfully market as a definitive diagnosis of the human immunodeficiency virus, rather than lawfully approved as a 'screening test', and not 'diagnostic'.

**13.** the Court's order disregarded Plaintiff's request for the 'unsealing' of the documents from Dr. David Ho so that the methodology of the 'isolation and purification' of the human immunodeficiency virus could be validated and replicated by scientists in this case. The 'sealed documents' contained nothing more than an email thread between an *employee* at Aaron Diamond Research Center and Plaintiff, and some unauthenticated

written notes from Dr. David Ho's *brother*, and a graph (not on any formal letterhead) not supported by any scientific, or laboratory, methodology. HO provided no evidence of treatment or diagnosis of the human immunodeficiency virus, and could not and did not provide the 'isolation and purification' method to even detect the virus in anyone's blood, which is most disconcerting.

**14.** the Court's order did not undertake to read the postmortem blood results of September **18th**, 2013, that **superseded** the 'discharge summary' from Omaha, Nebraska issued on September **02nd**, 2013, whereby no viral particles, and no budding retroviruses were found. (the human immunodeficiency virus is a *retrovirus*).

**15.** the Court's order ignored the opinions of the physician and attorney in Nevada with regards to the *physicians standard of care* on testing using clinical laboratories. The physician did not diagnose and did not treat HIV and did not provide any evidence of HIV. Their position is that outside laboratories are separate from the physician's office and therefore not responsible for the products the laboratories purchase, nor their testing protocols, and the interpretation on the reports are solely generated by the outside laboratory – not the physician.

**16.** the Court's order ignored the opinions of the clinical laboratories from around the nation such as Mayo Clinic and other *non-QUEST* related laboratories, with regards to the *laboratory standard of care* on testing. They simply do not diagnose any disease, it is left up to the physician to use their report solely as an 'aid' together with physical and clinical examinations, patient history, and testing for other conditions that might react to the various tests on the market.

**17.** the Court's order ignored the opinions of hospitals, such as Bryan Hospital, in Lincoln, Nebraska, where a Dr. James Nora is located, with regards to the *hospital standard*

*of care* on testing. Their position is that outside laboratories are separate from the hospital and therefore not responsible for the products the laboratories purchase, nor their testing protocols, and the interpretation on the reports are solely generated by the outside laboratory – not the hospital or any physician. This is on the record provided by defendants.

**18.** the Court's order relied on the testimony of Brent Koprivica, MD, whom did not diagnose, did not treat HIV. Did not provide any evidence of HIV. Deposition states he drew blood and sent to CDC for testing, and 'some guy' called him with the results. Does not have any written confirmation, does not know what test was done, did not know that the ROCHE/PCR is not to be used for diagnosis, did not know that packet inserts existed with warnings and disclaimers, and did not know that autoimmune disorders trigger a false reaction to the tests on the market. Testimony is unreliable as he also states under oath that he did not receive payment for his services, but Plaintiff has evidence he did. CDC was never subpoenaed for the 'test' performed by defendants, and there is no evidence that the CDC, in 1996, performed tests for physicians and made a diagnosis for the physician.

**19.** the Court's order relied on 'clinical laboratory reports' that were attached to affidavits from QUEST employees which were noted as 'business records' and not a diagnosis for this Court.

As set forth below, in view of these errors, Plaintiff has a substantial likelihood of success on appeal, and the balance of *harms* tips decidedly in the Estate of Tommy Morrison's favor, _and_ that of the general public at large. Accordingly, entitlement to a stay pending appeal is warranted.

A stay will not harm the defendants and is overwhelmingly in the interest of the public, and TOMMY's legacy and Estate.

///

## II. A STAY WILL NOT HARM DEFENDANTS.

No defendant has a basis to assert harm from a stay of the Court's Order and judgment pending appeal.

This is, moreover, not a class action, so the extraordinary Court Order – basically directing the entire medical establishment and boxing commissions, and the FDA for that matter, to accept as 'final' an *original or certified copy* of a QUEST clinical laboratory report as a definitive diagnosis and presence of the human immunodeficiency virus, despite its lack of jurisdiction over the FDA's decision concerning the testing used on TOMMY, seemingly directs the FDA, CLIA, FTC to dispense with rulemaking , and this cannot be justified.  In the exercise of its equitable power in a lawsuit, a court must confine its remedy to redressing the injury asserted by the parties before the Court. *See Monsanto Co. v. Geertson Seed Farms, 130 S.Ct.2743, 2761 (2010).*

## III. THE ESTATE OF TOMMY MORRISON AND THE PUBLIC INTEREST WILL SUFFER IRREPARABLE HARM ABSENT A STAY.

In the Appeal of *Morrison v. Quest et al,* a clinical laboratory report is not a diagnosis and does not confirm the presence of the human immunodeficiency virus, and tests used by QUEST are for *screening* purposes and not for *diagnostic* purposes, and the ROCHE tests are not lawfully to be marketed as tests that diagnose HIV nor diagnose HIV infection, and that the testing 'algorythm' is not a 'one size fits'.

As set forth above, the standard is readily met and demonstrated beyond  a very substantial likelihood of success on appeal, absent a stay, the Court's decision will cause irreparable harm to TOMMY's legacy and Estate, and to the public it serves.

FDA and the public would be irreparably and immediately harmed if a 'test' or 'clinical laboratory report' or 'non-disclosure of packet inserts' that purported to be 'FDA approved' and 'CLIA approved' and 'FTC approved' were approved instead at the direction of a court. The public, and TOMMY, properly relies upon the FDA classification of tests as to whether they are intended for the use as a 'definitive diagnosis' or as an 'aid' to a diagnosis as a reflection of the agency's judgment regarding the safety and proper use of medical devices (tests), 'lab reports', and 'packet inserts'.

Thus, the public interest will not be served by reclassification of 'tests', 'clinical laboratory reports' as a definitive diagnosis and the non-disclosure of 'packet inserts' without respective agency approval. A stay of the Court's Order will prevent public uncertainty regarding the status of the tests, clinical laboratory reports, packet inserts, manufacturers' instructions, *who* makes the actual diagnosis and with *what*, and if a physical or clinical examination is even required anymore, and whether a physician should even rule out other non-HIV related disorders that react to the testing, and whether the public, and physicians, should be informed that the 'testing algorythm' does not work for everyone, and whether a member of the NSAC can deliver results to third parties without the physician and without TOMMY being present, **all at issue here pending Plaintiff's appeal to the Ninth Circuit.**

And, this Court should be concerned with why so many physicians, just in this case alone, have not been properly informed and educated, and why QUEST and HIATT continue to conceal the 'facts' from them, the public, and this Court.

Further, FDA has long interpreted *its* regulations to provide that the test kit companies cannot effect a change from 'screening' to 'diagnostic' by simply granting

1  defendants' motion for summary judgment. Changes to the product are required to be

2  reported to FDA as specified in *Title 21 Code of Federal Regulations (CFR) Section 601.12*.

3  All promotional claims must be consistent with and not contrary to approved labeling,

4  unless data to support such claims are submitted to and approved by the Center for

5  Biologics Evaluation and Research – <u>not in an order issued by the District Court.</u> The

6  Court's order cannot allow for ROCHE to be used as a test to diagnose HIV or HIV infection,

7  without FDA approval, which it does not have, and QUEST and HIATT cannot be allowed to

8  continue to deceive physicians, TOMMY, the public, and this Court, with this non-

9  disclosure.

10

11     Further, FTC has long interpreted *its* regulations to provide that TOMMY, and the

12  general public, are to be made aware of the warnings, side effects, the disclaimers, other

13  ailments that may trigger a false reaction to the testing purchased, performed, interpreted,

14  and reported by QUEST. Simply granting defendants' motion for summary judgment in the

15  absence of this crucial information, leads to situations in which physicians, and patients,

16  and TOMMY, and this Court, mistakenly believe that a 'definitive diagnosis' of the human

17  immunodeficiency virus has been confirmed by merely looking at an 8.5 x 11 piece of paper.

18

19

20                          **<u>CONCLUSION</u>**

21     Permitting a CORPORATION, (QUEST), and a member of the public, (HIATT), and a

22  boxing commission,(NSAC, RATNER, GOODMAN), to alter the indication of how a

23  diagnosis of a disease is made or perceived, to alter the intended use of an approved test, to

24  disregard important packet inserts, and to hold a 'QUEST clinical laboratory report' as

25  definitive proof of the presence of the human immunodeficiency virus to deny a license to

26  box, as the Court seems to do, would simply undermine the separate regulatory proceedings.

27

28
MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR STAY ON JUDGMENT (DKT#278) PENDING APPEAL

Case No.:2:14-cv-01207-RFB-PAL / Case No.: 16-17050 Ninth Circuit Court of Appeals

Because of such a ruling would harm the public and cause confusion, the public interest favors a stay.

For the foregoing reasons, Plaintiff respectfully requests a stay pending appeal. If this Court is not inclined to grant a stay pending appeal, Plaintiff respectfully requests that the Court enter a temporary administrative stay of the Court's Order and judgment pending resolution by the Court of Appeals of any motion plaintiff might make to that court under FRAP 8(a)(2).

Dated: November 14 th, 2016          Respectfully submitted by:

PATRICIA HARDING MORRISON
*Plaintiff/Appellate/ Administrator*
*For the Estate of TOMMY MORRISON*

## CERTIFICATE OF MAILING

I hereby certify that on the 14th day of NOVEMBER, 2016, I placed a true and correct copy of the foregoing document in the U.S. Mail in the State of Kansas, with first-class postage pre-paid, addressed to the following party(ies):

Keith A. Weaver, Esq.
**Lewis Brisbois Bisgaard & Smith LLP**
6385 S Rainbow Blvd., Ste 600
Las Vegas, NV 89118 Tel: (702) 893.3383
*Co-Counsel for Quest Diagnostics Inc. & John Hiatt*
and
D. Faye Caldwell, Esq.
**Caldwell Everson, PLLC**
2777 Allen Pkwy, Ste 950
Houston, TX 77019 Tel: (713) 654.3000
*Co-Counsel for Quest Diagnostics Inc. and John Hiatt*
and
Vivienne Rakowsky, Esq., Deputy Attorney General
555 E. Washington Ave, Ste 3900
Las Vegas, NV 89101
*Counsel for Nevada Athletic Commission, Marc Ratner & Margaret Goodman*

COUNTY CLERK'S OFFICE (for filing)
U.S. DISTRICT COURT
Lloyd D. George Courthouse
- 333 – South Las Vegas Boulevard,
Las Vegas, Nevada, 89101
And
COUNTY CLERK'S OFFICE (for filing)
Case No.: 16-17050 Ninth Circuit Court
U.S. DISTRICT COURT – NINTH CIRCUIT COURT OF APPEALS
Lloyd D. George Courthouse
- 333 – South Las Vegas Boulevard,
Las Vegas, Nevada, 89101

Dated: November 14th, 2016

PATRICIA HARDING MORRISON
*Plaintiff/Appellate/ Administrator*
*For the Estate of TOMMY MORRISON*

1   PATRICIA HARDING MORRISON
    P.O. BOX 454
2   ROSE HILL, KANSAS 67133
    tommyandtrishamorrison@yahoo.com
3   tommythedukemorrison@yahoo.com
    Tel: (865) 296-9973
4   *Plaintiff and Administrator for the Estate of:*
5   *Tommy Morrison*



6

7

8                   **UNITED STATES FEDERAL COURT**

9        **IN AND FOR THE DISTRICT OF NEVADA – SOUTHERN DIVISION**

10  Patricia Harding Morrison , an individual, )   Case No.: 2:14-cv-01207-RFB-PAL
11  *Personal Representative /Administrator*  )   Case No.: 16-17050 Ninth Circuit Court
    *for the Estate of* TOMMY MORRISON,       )
12                                            )
13                  Plaintiff,                )
                                              )
14  vs.                                       )   **PLAINTIFF'S DECLARATION IN**
                                              )   **SUPPORT TO STAY JUDGMENT**
15  Quest Diagnostics Incorporated, a Nevada  )   **(DKT#278)**
    corporation; John Hiatt, an individual; Dr.)
16  Margaret Goodman, an individual; Nevada   )
    State Athletic Commission, an unknown     )
17  business entity; Marc Ratner, an          )
    individual.                               )
18                                            )
19                  Defendants.               )
                                              )
20  ─────────────────────────────────────────)

21

22          **DECLARATION OF PATRICIA HARDING MORRISON**

23       On behalf of the Estate of Tommy Morrison, I declare pursuant to 28 U.S.C. 1746,

24  under penalty of perjury, that the following is true and correct, and on the record in front of

25  this Court:

26       1.  I am the surviving spouse and personal Representative and Administrator for the

27  Estate of Tommy Morrison.

28                                    - 1 –

2. In my capacity as personal Representative and Administrator, I am the Plaintiff in this action.

3. This case's commitment is to educate consumers, healthcare professionals, the public, and this Court, about the public's need to be informed of the warnings and disclaimers that exist in the tests TOMMY was subjected to, but was not informed of.

4. This case's commitment is to educate consumers, healthcare professionals, the public, and this Court, that the CDC (but not the public) is aware that blood from many individuals, such as in TOMMY, with autoimmune disorders, will react to the CDC 'recommended algorithm' of testing, but not actually harbor the human immunodeficiency virus.

5. This case's commitment is to educate consumers, healthcare professionals, the public, and this Court, that a 'clinical laboratory report' is not a definitive diagnosis of the presence, or infection, of the human immunodeficiency virus, and is not a definitive 'HIV status'.

6. This case's commitment is to educate consumers, healthcare professionals, the public, and this Court, that the tests within the 'recommended algorythm' are not to be marketed or sold as a 'diagnostic' test for the human immunodeficiency virus, but rather for 'screening' purposes. Diagnostic and screening tests undergo separate approval from the FDA.

7. This case's commitment is to educate consumers, healthcare professionals, the public, and this Court, that the ROCHE/PCR test, and any of the ROCHE products, have not been granted FDA approval for the diagnosis of HIV-1 and have not been granted FDA approval to be used as a diagnosis of HIV infection.

8. The public interest will not be served by reclassification of medical devices (tests)

by order of a court, without appropriate FDA decision-making procedures being followed.

9. A stay of the Court's order will prevent uncertainty regarding: the status of tests, packet inserts, testing for other nonHIV-related conditions triggering reactions to a 'recommended algorythm' that is known by the CDC, but not publicly, not to suit everyone's blood, that the 'clinical laboratory report' is not a definitive diagnosis, but used solely as an 'aid' for physicians to proceed with further testing, physical and clinical examinations and patient history to *rule out/rule in* the human immunodeficiency virus.

10. Moreover, the problem would be exacerbated because physicians assuming incorrect test labeling and incorrect patient-physician procedures, results in many innocent people mistakenly lead to believe that they harbor *a virus* for the rest of their lives, and prescribed medications, when in reality they do not harbor *the virus*, such as in the case of TOMMY.

11. The stigma is overwhelming and leads to drugs, violence, crime, and a life of despair and a stay of the Court's order will prevent consumers, healthcare professionals, the public, and this Court from destroying another life, *in and out of the ring.*

12. This case's commitment is to restore TOMMY's legacy and his estate in a position to where TOMMY was prior to February 10, 1996.

13. This Court has the jurisdiction to right a twenty (20) year, or more, wrong.

I pray that this Court will grant a stay to the Court Order and judgment for humanitarian reasons, as well as for TOMMY. *Pro se + Poor does not = stupid.*

Dated: November 14 th, 2016          Executed by:

_____
PATRICIA HARDING MORRISON
*Plaintiff/Appellate/ Administrator*
*For the Estate of TOMMY MORRISON*

- 3 -
PLAINTIFF'S DECLARATION.

1

2

3

## CERTIFICATE OF MAILING

4

5
     I hereby certify that on the 14th day of NOVEMBER, 2016, I placed a true and correct copy of the foregoing document in the U.S. Mail in the State of Kansas, with first-class postage pre-paid, addressed to the following party(ies):

6

7
     Keith A. Weaver, Esq.

8
     **Lewis Brisbois Bisgaard & Smith LLP**
     6385 S Rainbow Blvd., Ste 600

9
     Las Vegas, NV 89118 Tel: (702) 893.3383
     *Co-Counsel for Quest Diagnostics Inc. & John Hiatt*

10
     and
     D. Faye Caldwell, Esq.

11
     **Caldwell Everson, PLLC**
     2777 Allen Pkwy, Ste 950

12
     Houston, TX 77019 Tel: (713) 654.3000

13
     *Co-Counsel for Quest Diagnostics Inc. and John Hiatt*
     and

14
     Vivienne Rakowsky, Esq., Deputy Attorney General

15
     555 E. Washington Ave, Ste 3900
     Las Vegas, NV 89101

16
     *Counsel for Nevada Athletic Commission, Marc Ratner & Margaret Goodman*

17
     COUNTY CLERK'S OFFICE (for filing)

18
     U.S.DISTRICT COURT
     Lloyd D. George Courthouse

19
     - 333 – South Las Vegas Boulevard,
     Las Vegas, Nevada, 89101

20
     And
     COUNTY CLERK'S OFFICE (for filing)

21
     Case No.: 16-17050 Ninth Circuit Court

22
     U.S.DISTRICT COURT – NINTH CIRCUIT COURT OF APPEALS
     Lloyd D. George Courthouse

23
     - 333 – South Las Vegas Boulevard,
     Las Vegas, Nevada, 89101

24

25
     Dated: November 14th, 2016

     PATRICIA HARDING MORRISON

26
     *Plaintiff/Appellate/ Administrator*

27
     *For the Estate of TOMMY MORRISON*

28