No. 16-17050

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

PATRICIA HARDING MORRISON
For the Estate of Tommy Morrison,

*Pro Se Plaintiff-Appellant*,

v.

QUEST DIAGNOSTICS INCORPORATED [f/k/a
APL HEALTHCARE GROUP, INC.], JOHN HIATT, Ph.D., *et al.*,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the District of Nevada
No. 2:14-cv-01207-RFB-PAL
Hon. Richard F. Boulware II

_____

APPELLEES' ANSWERING BRIEF

_____

D. FAYE CALDWELL
CALDWELL EVERSON PLLC
2777 Allen Parkway, Suite 950
Houston, Texas 77019
Tel: 713-654-3000
Fax: 713-654-3002
fcaldwell@caldwelleverson.com

*Attorney for Defendants-Appellees*
*Quest Diagnostics Incorporated and*
*John Hiatt, Ph.D.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Defendants-Appellees Quest Diagnostics Incorporated [f/k/a APL Healthcare Group, Inc.], incorporated in Nevada, is a wholly-owned subsidiary of American Medical Laboratories, Incorporated, a Delaware corporation. American Medical Laboratories, Incorporated, is a wholly-owned subsidiary of Defendant Quest Diagnostics Incorporated, a Delaware corporation. Quest Diagnostics Incorporated, a Delaware corporation, is a publicly-traded company on the New York Stock Exchange.

Date: March 13, 2017                    Respectfully submitted,

                                        /s/ D. Faye Caldwell
                                        D. FAYE CALDWELL
                                        CALDWELL EVERSON PLLC
                                        2777 Allen Parkway, Suite 950
                                        Houston, Texas 77019
                                        Tel: 713-654-3000
                                        Fax: 713-654-3002
                                        Email: fcaldwell@caldwelleverson.com

                                        *Attorney for Defendants-Appellees*
                                        *Quest Diagnostics Incorporated and*
                                        *John Hiatt, Ph.D.*

i

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ...........................................i

TABLE OF CONTENTS........................................................ ii

TABLE OF AUTHORITIES ...................................................iv

INTRODUCTION ...........................................................1

JURISDICTIONAL STATEMENT ........................................3

ISSUES PRESENTED........................................................4

STATEMENT OF THE CASE.............................................5

    I.    PROCEDURAL HISTORY BELOW...................................5

    II.    FACTUAL BACKGROUND ...........................................10

SUMMARY OF THE ARGUMENT ....................................16

ARGUMENT ..................................................................18

I.    MORRISON FAILS TO PRESENT ANY APPEALABLE ISSUE TO THE COURT...................................................................18

    A. Morrison Does Not Address The Bases for the District Court's Grant Of Summary Judgment Or Explain How The District Court Erred ................................................................18

    B. Morrison's Passing References To Non-Final, Subordinate Orders Do Not Raise Reviewable Issues For Consideration By This Court ...............................................................21

    C. Morrison's Appendix Is Deficient And Includes Evidence Not In The Summary Judgment Record.................................23

    D. Morrison's Contention that She Was Prevented From Adducing Evidence In Support Of Her Claims By Quest Diagnostics And Counsel Is Specious..................................................24

II.    THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT ON EACH OF MORRISON'S CLAIMS IN HER FIRST AMENDED COMPLAINT ................................................26

    A. Standard of Review.................................................26

    B. The Undisputed Evidence Demonstrates That Tommy Morrison's Claims Are Barred By Limitations ...................................27

    C. The District Court Properly Granted Summary Judgment As To

EACH OF TOMMY MORRISON'S CLAIMS ..................................................32

    1.  MORRISON HAS ABANDONED HER CLAIM THAT QUEST DIAGNOSTICS'S HIV TESTING WAS NEGLIGENTLY PERFORMED ....................................32

    2.  MORRISON HAS NO EVIDENCE SUPPORTING HER DEFAMATION CLAIMS ............................................................................................35

    3.  MORRISON OFFERED NO EVIDENCE TO SUPPORT HER FRAUD AND MISREPRESENTATION CLAIMS ................................................................38

    4.  MORRISON HAS NO EVIDENCE SUPPORTING HER CLAIMS FOR IIED OR IIC ..........................................................................................40

    5.  MORRISON'S CLAIMS AGAINST HIATT ARE FACTUALLY AND LEGALLY BASELESS ...................................................................................42

III.  NEITHER THE MAGISTRATE JUDGE NOR THE DISTRICT COURT JUDGE ABUSED THEIR DISCRETION IN DENYING MORRISON LEAVE TO FILE HER PROPOSED SECOND AMENDED COMPLAINT .........................................................................................43

    A.  STANDARD OF REVIEW ..............................................................43

    B.  THE COURT BELOW DID NOT ABUSE ITS DISCRETION WHEN IT DENIED MORRISON LEAVE TO FILE HER SECOND AMENDED COMPLAINT .............44

CONCLUSION ......................................................................................48

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta-Huerta v. Estelle*, 7 F.3d 139 (9th Cir. 1992) ...................................21–22, 26

*AE v. County of Tulare*, 666 F.3d 631 (9th Cir. 2012) ...........................................43

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)...........................................34

*Balint v. Carson City*, 180 F.3d 1047 (9th Cir. 1999) ...........................................26

*Barmettler v. Reno Air, Inc.*, 956 P.2d 1382 (Nev. 1998) ......................................40

*Bias v. Moynihan*, 508 F.3d 1212 (9th Cir. 2007) .................................29, 32, 38, 41

*Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588 (Nev. 1992)......................................40

*Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047 (9th Cir. 2011)......................31

*Caswell v. Calderon*, 363 F.3d 832 (9th Cir. 2004) .............................................43

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......................................................41

*Chappel v. Lab. Corp. of Am.*, 232 F.3d 719 (9th Cir. 2000) .................................43

*Chodos v. W. Publ'g Co.*, 292 F.3d 992 (9th Cir. 2002) ........................................44

*Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu*,
626 F.3d 483 (9th Cir. 2010) ...................................................................................18

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000)................................22

*Fleischer Studios, Inc., v. A.V.E.L.A., Inc.*, 654 F.3d 958 (9th Cir. 2011) ..............22

*In re Gardner*, 563 F.3d 981 (9th Cir. 2009)...........................................................44

*In re O'Brien*, 312 F.3d 1135 (9th Cir. 2002)...........................................................18

*Indep. Towers of Wash. v. Washington*, 350 F.3d 925 (9th Cir. 2003) ..................33

*Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074 (9th Cir. 1988)...........................24

*Layton v. Yankee Caithness Joint Venture*, 774 F. Supp. 576 (D. Nev. 1991)........33

*Lukovsky v. City & County of San Francisco*, 535 F.3d 1044 (9th Cir. 2008)........26

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)...........................................36

*N/S Corp. v. Liberty Mut. Ins. Co.*, 127 F.3d 1145 (9th Cir. 1997)........................19

*Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916 (9th Cir. 2004) .....................26

*Orr v. Bank of Am.*, 285 F.3d 764 (9th Cir. 2002)...................................................28

iv

*Pacquiao v. Mayweather*, 803 F. Supp. 2d 1208 (D. Nev. 2011) ...........................36

*Padgett v. Wright*, 587 F.3d 983 (9th Cir. 2009) .....................................................32

*Pegasus v. Reno Newspapers, Inc.,* 57 P.3d 82 (Nev. 2002)..............................36, 37

*Peri & Sons Farms, Inc. v. Jain Irrigation, Inc.*,
933 F. Supp. 2d 1279 (D. Nev. 2013).......................................................................34

*Petersen v. Bruen*, 792 P.2d 18, 20 (Nev. 1990) ......................................................28

*Rivera v. Philip Morris*, 209 P.3d 271 (Nev. 2009) ................................................32

*Sekiya v. Gates*, 508 F.3d 1198 (9th Cir. 2007)...................................................18, 21

*Schwartz v. Wasserburger*, 30 P.3d 1114 (Nev. 2001).............................................31

*Suzuki Motor Corp. v. Consumers Union, Inc.*, 330 F.3d 1110 (9th Cir. 2003) .....26

*Szajer v. City of Los Angeles*, 632 F.3d 607 (9th Cir. 2011) ...................................26

*Terracon Consultants W., Inc., v. Mandalay Resort Grp.*,
206 P.3d 81 (Nev. 2009) ..........................................................................................34

*United States v. Kimble*, 107 F.3d 712 (9th Cir. 1997) ...........................................26

*United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325 (9th Cir. 2017) ................23

*Ventress v. Japan Airlines*, 747 F.3d 716 (9th Cir. 2014) .................................20, 43

*Video Software Dealers Ass'n v. Schwarzenegger*,
556 F.3d 950 (9th Cir. 2009) ...................................................................................27

*Winn v. Sunrise Hosp. & Med. Ctr.*, 277 P.3d 458, 462 (Nev. 2012) ....................28

## Statutes

18 U.S.C. § 1347 .......................................................................................................27

21 U.S.C. § 360(c) .....................................................................................................45

21 U.S.C. § 360c(a)(1)(C)...........................................................................................46

28 U.S.C. § 1291 .........................................................................................................3

28 U.S.C. § 1332 .........................................................................................................3

## Regulations

21 C.F.R. § 814.20(b) .................................................................................................46

21 C.F.R. §§ 814.44–.45 .............................................................................................46

v

42 C.F.R. § 493.1241(c)(1) & (4) .......................................................45

42 C.F.R. § 493.1291 ........................................................................47

NEV. ADMIN. CODE § 467.027(3)(b) ................................................28

NEV. ADMIN. CODE § 652.300(4)(b) & (d) ......................................45

NEV. ADMIN. CODE § 652.340...........................................................47

## Rules

FED. R. APP. P. 4(a)(1)(A) ...................................................................3

FED. R. APP. P. 10(a) ........................................................................24

FED. R. APP. P. 28........................................................................18, 19, 21

9th Cir. R. 10-2 ...............................................................................24

9th Cir. R. 28-2.8 .............................................................................18

9th Cir. R. 30-1.4 ........................................................................22, 23

## INTRODUCTION

This matter, which started in 2014 as a case about an allegedly negligently performed human immunodeficiency virus ("HIV") test performed in 1996, has morphed into a request by Plaintiff-Appellant *pro se* Patricia Harding Morrison ("Morrison") that the Court issue an order directing clinical laboratories in the United States to replace the clinical laboratory HIV testing criteria recommended by the U.S. Centers for Disease Control and Prevention ("CDC"), using U.S. Food and Drug Administration ("FDA") approved tests, with an unrecognized and scientifically unsupported HIV testing methodology utilizing electron microscopy. (Appellant's Opening Brief ("Br."), pp. 26–27).

Tommy Morrison was a professional boxer. In 1989, he tested positive for HIV, but that HIV positive test result never became known to the public. In the meantime, he became a prominent heavyweight boxer. In 1996, he was required by the Nevada State Athletic Commission ("NSAC") to submit a negative HIV laboratory test report as part of its licensing requirements to obtain a license to box in a fight scheduled in February 1996. Quest Diagnostics Incorporated's [f/k/a APL Healthcare Group, Inc.] ("Quest Diagnostics") predecessor-in-interest tested Tommy Morrison's blood sample for HIV as ordered, which test complied with the clinical laboratory standard of care for HIV-1 antibody testing. Tommy Morrison's blood sample was positive for HIV-1 antibodies. Because Morrison

was unable to provide a negative HIV laboratory test report, his license application was denied and his pending boxing match was cancelled. Immediately after the cancellation of his February 10, 1996 fight, Tommy Morrison submitted to additional HIV testing by other laboratories, all of which confirmed that Tommy Morrison was infected with HIV. Over the course of the rest of his life, Tommy Morrison tested positive for HIV on more than a hundred occasions.

Morrison did not meet Tommy Morrison until 2009, long after the testing at issue and well after Tommy Morrison attempted to resume his boxing career in 2007. In 2006 and 2007, Tommy Morrison began publically opining that he was not actually infected with HIV, repeatedly alleged that Quest Diagnostics's February 1996 HIV-1 antibody test result was inaccurate, and ceased treatment for HIV.

Morrison has no personal knowledge of any of the factual events forming the basis of this lawsuit. She filed this action alleging that electron microscopy examinations of Tommy Morrison's blood performed after his death showed he did not have HIV and seeking an injunction prohibiting any HIV antibody testing in the United States in favor of electron microscopy testing for HIV. The undisputed, competent summary judgment evidence confirms that Morrison's allegations were unfounded at the time she filed this lawsuit and, more specifically, that Quest Diagnostics's test result was accurate and performed in accordance with the

standard for HIV antibody testing in 1996. The district court's grant of summary judgment is correct in all respects.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction pursuant to 28 U.S.C. § 1332 because all parties are diverse and the amount in controversy exceeded $75,000, exclusive of interest and costs. This Court has appellate jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. The district court issued its order granting Defendants-Appellees Quest Diagnostics and John Hiatt, Ph.D.'s ("Hiatt") motion for summary judgment and ordered entry of judgment on October 24, 2016 (SER pp. 8–12),[1] and entered judgment on October 25, 2016. (SER p. 23). Morrison timely filed her Notice of Appeal under FED. R. APP. P. 4(a)(1)(A) on November 3, 2016. (SER pp. 231–234). The decision being appealed from is a final judgment from the United States District Court for the District of Nevada that disposes of all of Morrison's claims in this action against Quest Diagnostics and Hiatt.

---

[1] Quest Diagnostics and Hiatt's Supplemental Excerpts of Record will be referred to as "SER" followed by the applicable page reference.

## ISSUES PRESENTED

**I.**     **Has Morrison presented any appealable issue for review?**

**II.**    **Did the district court err in granting summary judgment on each of Morrison's claims in her First Amended Complaint?**

**III.**   **Did the either the magistrate judge or district court judge abuse their discretion in denying Morrison leave to file her proposed Second Amended Complaint?**

## STATEMENT OF THE CASE

### I.   PROCEDURAL HISTORY BELOW.

On July 24, 2014, Morrison, as the surviving spouse of Tommy Morrison, filed her Original Complaint, alleging various claims against Quest Diagnostics, Hiatt, and co-defendants the NSAC, Dr. Margaret Goodman ("Goodman"), and Marc Ratner ("Ratner") on behalf of Tommy Morrison arising from the February 1996 HIV laboratory test result.  All defendants moved to dismiss.

On October 1, 2015, the district court dismissed Morrison's Original Complaint, but gave her thirty (30) days to amend her pleadings.  (ECF No. 75).[2] On October 16, 2015, Morrison filed her First Amended Complaint ("FAC"), in which she re-asserted her original claims for negligence, defamation, fraud/misrepresentation, and added claims for intentional infliction of emotional distress ("IIED") and intentional interference with a contract ("IIC") against Quest Diagnostics and Hiatt.  In an effort to avoid limitations and various other legal bars to her claims, Morrison doubled down on her factual allegations and specifically claimed:  (1) Tommy Morrison never had HIV; (2) Quest Diagnostics and Hiatt told Tommy Morrison in person that they had diagnosed him as having HIV; (3) Tommy Morrison was never subsequently tested for HIV after Quest

_____

[2] Cites to the district court's record will be referenced as "ECF" followed by the applicable docket entry number.

5

Diagnostics's February 1996 test; (4) Tommy Morrison was never diagnosed with, or treated for, HIV after Quest Diagnostics's February 1996 test; and (5) Tommy Morrison died of health issues unrelated to HIV. (FAC, ¶¶ 16, 24–25, 31–32, 65, 71, 76–77, 81; SER pp. 27–30, 35–38).

On October 30, 2015, Quest Diagnostics and Hiatt moved to dismiss the claims in her FAC since Morrison had not cured the deficiencies that existed in her Original Complaint. While those motions were pending, the parties engaged in discovery. Quest Diagnostics sought Tommy Morrison's medical records from 1996 until his death to demonstrate he had been repeatedly tested, diagnosed, and treated for HIV. After a number of discovery disputes, the trial court rejected Morrison's contention that discovery should be restricted to Quest Diagnostics's February 10, 1996 laboratory report and allowed discovery regarding Tommy Morrison's subsequent medical history. (ECF Nos. 101, 102).

Just days after the magistrate judge issued its discovery Orders, Morrison sought leave to file a Second Amended Complaint ("SAC"), seeking to materially change her claims by abandoning her claim that Tommy Morrison had never been tested or diagnosed with HIV after Quest Diagnostics's February 1996 test, and, for the first time, alleging that clinical laboratory HIV antibody tests in general were not capable or useful for identifying HIV infection in humans. (*See*, *e.g*., SAC, ¶¶ 80, 82, 108; SER pp. 62, 67). As pretext for her proposed amendment,

6

Morrison claimed she was adding "new" claims for "failure to warn" and "fraudulent concealment"—which were not in fact new claims at all—based on unidentified evidence she had allegedly uncovered in discovery. (ECF No. 105). Quest Diagnostics opposed Morrison's request on the grounds that, *inter alia*, it was an overt attempt to avoid the trial court's discovery orders.

While Morrison's motion for leave to file her second amendment to her pleadings was pending, the parties were required to designate case-in-chief experts pursuant to the court's Scheduling Order. Quest Diagnostics timely designated Bernard Branson, M.D., who is an expert in both clinical laboratory testing for HIV and HIV treatment. Morrison designated a case-in-chief expert and a late-designated handwriting expert, who were both subsequently stricken by the court due to numerous procedural and substantive deficiencies. (ECF Nos. 188 & 189). Morrison also designated an expert at the rebuttal expert deadline, nominally on the subject of HIV testing. The trial court limited this witness to testifying on matters on which Morrison did not bear the burden of proof at trial and reserved its ruling on Quest Diagnostics's challenges to his qualifications and the reliability of the proffered evidence. (ECF No. 190). Morrison has not attacked these orders on appeal.

On June 8, 2016, Quest Diagnostics and Hiatt filed their motion for summary judgment on each of Morrison's claims in her FAC, supported by

competent summary judgment evidence, including expert evidence, that demonstrated Quest Diagnostics's February 10, 1996 HIV-1 antibody test result was accurate, met the standard of care for HIV testing in 1996, and was immediately confirmed by independent testing. (ECF Nos. 175-2 through -26).

On June 21, 2016, the magistrate judge denied Morrison leave to file her SAC, explicitly finding that:

> Plaintiff's claims have always been premised on allegations her late husband never had HIV, was not diagnosed with HIV, and was never treated for HIV. Throughout the case she has attempted to limit discovery to a single laboratory test and the events of February 10, 1996 despite her broad complaint allegations. Judge Boulware's order granting leave to amend clearly understood Plaintiff's claim was that her late husband never had HIV, and that she first discovered this after his death and autopsy. He allowed her to amend her complaint to allege facts establishing the statute of limitations was tolled until she learned he did not have HIV after his autopsy. Now that Defendants have obtained Mr. Morrison's medical records and Social Security records Plaintiff seeks to avoid Judge Boulware's order and this court's discovery orders to reframe her case.
>
> . . . .
>
> In summary, the court concludes that Plaintiff's attempt to file a second amended complaint is an effort to avoid the district judge's direction to attempt to cure noted deficiencies in the complaint, and this court's discovery orders.

(SAC Order, p. 5, lines 18–27; p. 7, lines 18–27; SER pp. 5, 7). The FAC is therefore the operative pleading for the district court's grant of summary judgment and for this appeal.[3]

In her opposition to their motion for summary judgment, Morrison did not respond to or controvert Quest Diagnostics and Hiatt's evidence, and failed to adduce any probative, competent evidence, expert or otherwise, in support of her own claims. Morrison also filed separate statements of disputed facts and conclusions of law that violated the district court's local rules, and "exhibits" that were created by Morrison and which consisted of excerpted testimony, portions of documents, and legal argument and contentions. Morrison also subsequently filed an affidavit of Dr. Antonio Osio, who was allegedly Tommy Morrison's physician for a period of time. All of these items were stricken by the district court due to numerous procedural and substantive deficiencies, which Morrison has also not attacked on appeal. (SJ Order, pp. 4–6; SER pp. 11–13).

On September 8, 2016, the district court held a hearing on Quest Diagnostics and Hiatt's motion for summary judgment, and addressed the numerous pending motions and Morrison's lack of expert or scientific evidence in support of her

---

[3] Morrison misleads this Court by claiming that her SAC is the operative pleading for appeal. (Br., pp. 2, 24, 25, 57, 63, 67, 73).

claims. (Dkt. Entry 5-4).[4] On October 24, 2016, the district court entered summary judgment finding that the undisputed evidence showed that all of Morrison's claims were time-barred and that all of her claims failed on the merits. (SJ Order, pp. 9, 11–14; SER pp. 16, 18–21).

Morrison timely filed her Notice of Appeal from the district court's summary judgment order, and filed her Brief on February 10, 2017.

## II.    FACTUAL BACKGROUND.

On Wednesday February 7, 1996, Tommy Morrison applied to box in Nevada for a fight on Saturday February 10, 1996, despite having previously tested positive for HIV in 1989. (TM, 0084; SER p. 90); (Brady Depo., pp. 75:22–76:6; 80:3–11; 81:3–82:6; SER pp. 101–103); (Epp, 16, 43; SER pp. 124–125). Tommy Morrison was required to provide co-defendant NSAC with an HIV-negative laboratory test report in order to obtain a license to participate in a boxing match scheduled for Saturday February 10, 1996 in Las Vegas, Nevada. (Ratner Aff., ¶ 10; SER p. 127); (Patchin Aff., ¶ 16; SER p. 132). He initially refused to have blood drawn for an HIV test, citing religious objections. (Ratner Aff., ¶ 16; SER p. 128); (Holden Depo., p. 24:1–15 SER p. 134); (TM, 0079–0080; SER pp. 88–89). Tommy Morrison's advisor, Tony Holden, explained to him that he could not

---

[4] Cites to the Ninth Circuit's record will be referenced as "Dkt. Entry" followed by the applicable docket entry number.

fight unless he was tested and told him to take the test. (Holden Depo., pp. 23:23–24:15; SER p. 134); (Ratner Aff., ¶¶ 16–17; SER p. 128).

The next day, Thursday, February 8, 1996, Dr. Robert Voy ordered HIV-1 antibody testing on a blood specimen for Tommy Morrison. (QDI 1; SER p. 147). Following the standard testing protocol, Quest Diagnostics performed repeat ELISA screening on the specimen using FDA-approved test kits. (Williams Aff., ¶¶ 7–8; SER pp. 150); (QDI 1; SER p. 147). Both ELISA screens were reactive for HIV-1 antibodies. (Williams Aff., ¶¶ 7–8; SER p. 150). To confirm the result, Quest Diagnostics then performed a Western blot on a separate aliquot of the same blood specimen using an FDA-approved test kit. *Id.* at ¶ 9; SER p. 150. On Saturday, February 10, 1996, the Western blot was read by a Board-certified pathologist, Dr. Elizabeth Iole. (Iole Aff., ¶¶ 3, 11; SER pp. 153–154); (Williams Aff., ¶¶ 5 & 9; SER p. 150). The results of Tommy Morrison's Western blot met the CDC interpretive criteria for a positive Western blot. (Iole Aff., ¶ 11; SER p. 154). After review, Dr. Iole reported[5] Tommy Morrison's test results—positive Western blot—by telephone to Dr. Edwin Homansky, a fight doctor for the NSAC, pursuant to a release form signed by Tommy Morrison for that purpose, without

_____

[5] The report was sent to the ordering physician on February 12, 1996. (Williams Aff., ¶ 11; SER p. 151); (QDI 1; SER p. 147).

11

which he could not obtain a Nevada license to box.[6] *Id*. at ¶ 12; SER p. 154; (TM, 0112; SER p. 92).

Tommy Morrison's personal attorney, Stuart Campbell, his personal physician, Dr. Brent Koprivica, and Holden were with him in Las Vegas on the day of the fight. (Brady Depo., p. 28:10–19; SER p. 94); (Holden Depo., p. 31:3–12; SER p. 135); (Koprivica Depo., p. 19:4–7; SER p. 157); (TM, 111; SER p. 91). After Dr. Iole spoke to Dr. Homansky, Ratner—the executive director of the NSAC—met with Holden and Campbell to inform them that Tommy Morrison had failed his HIV test and that night's fight would be cancelled. (Ratner Aff., ¶¶ 2, 23; SER pp. 126, 129); (Holden Depo., pp. 32:1–21; 34:7–11; 41:6–16; 84:20–25; SER pp. 135–137, 143). Holden and Dr. Koprivica told Tommy Morrison about the positive HIV test result. (Holden Depo., pp. 36:1–7; 102:24–103:2; 103:7–25; SER pp. 136, 146); (Koprivica Depo., p. 20:4–23; SER p. 157–158).

Out of a concern for Tommy Morrison's health, and also to confirm the accuracy of the previous test result, both Holden and Dr. Koprivica independently arranged for Tommy Morrison to be immediately re-tested. (Holden Depo., pp. 40:8–42:23; 46:6–23; 48:11–15; 52:4–5; 71:9–11; 82:23–83:2; 96:14–22; 97:20–98:1; SER pp. 137, 139–140, 142–145); (Koprivica Depo., pp. 23:3–24:8;

---

[6] Dr. Iole understood that the result was for a boxer, and understood that the test result needed to be communicated to the NSAC to provide Tommy Morrison the possibility of fighting that same evening. (Iole Aff., ¶ 10; SER p. 154).

40:15–41:7; SER pp. 158–159); (Hosterman Depo., pp. 49:2–4; 57:4–14; SER pp. 162, 164); (Brady Depo., pp. 59:21–60:1; 67:18–68:3; 197:23–198:4; SER pp. 97, 99, 113–114). Holden took him to a doctor in Tulsa and had him re-tested. (Holden Depo., pp. 40:8–42:23; SER pp. 137–138). The results were positive for HIV. *Id*. at p. 45:15–22; SER p. 138; (Hosterman Depo., pp. 52:9–11; 57:4–14; 58:1–4; 58:17–25; SER pp. 163–165); (Brady Depo., p. 65:7–17; SER p. 98). Dr. Koprivica personally drew Tommy Morrison's blood sample, and sent two different samples to the CDC for HIV testing. (Koprivica Depo., pp. 23:15–24:8; 40:15–41:7; SER pp. 158–159). Both tested positive for HIV. *Id*. at pp. 24:4–8; 44:20–45:6; SER pp. 158, 160. Within two weeks of Quest Diagnostics's test, Tommy Morrison also saw Dr. David Ho, an HIV specialist in New York, who also had HIV tests conducted on Tommy Morrison's blood. (Holden Depo., pp. 46:6–11; 48:11–18; 52:21–54:2; SER pp. 139–141). The results were positive for HIV. *Id*. at pp. 53:20–54:2; SER pp. 140–141.

From 1996 until his death in 2013, Tommy Morrison was repeatedly tested, diagnosed, and treated for HIV and/or AIDS by various physicians, including HIV specialists, using different HIV testing methods. (Branson Aff., ¶¶ 19, 20, 24, 44; SER pp. 180–182, 189); (Morrison Depo., pp. 186:18–187:19; 191:24–193:9; SER pp. 204–205); (Hosterman Depo., pp. 64:25–65:5; 75:18–25; SER pp. 166–167); (Brady Depo., pp. 84:3–17; 85:10–86:5; 90:23–92:7; 107:23–108:3; SER pp. 103–

106). All of the laboratory test results on specimens provided by Tommy Morrison confirmed his HIV infection and all were consistent with Quest Diagnostics's February 10, 1996 positive HIV-1 antibody test results. (Branson Aff., ¶¶ 19, 20, 24, 44; SER pp. 180–182, 189); (*see also* ECF Nos. 175-18 through -26). However, as early as 1996, Tommy Morrison began questioning the existence of HIV, claimed the 1996 test was a false positive, and frequently refused standard treatment for HIV.[7] (Holden Depo., pp. 53:16–55:24; 56:19–25; 70:12–24; SER pp. 140–142); (Hosterman Depo., pp. 64:25–65:5; 75:18–25; 87:6–13; 87:22–25; SER pp. 166-–168); (Hosterman Depo., Ex. 14; SER p. 169); (Brady Depo., pp. 84:3–17; 85:10–86:5; 90:23–91:16; 91:21–92:7; 107:23–108:3; 111:2–5; 124:24–125:1; 169:12–15; 171:1–6; SER pp. 103–108, 111–112); (Morrison Depo., pp. 86:10–19; 191:24–193:9; 255:7–11; SER pp. 196, 205, 212); (*see also* ECF Nos. 175-18 through -26). However, he continued to be tested for HIV,[8] and have positive HIV laboratory test results, until his death in 2013. (Brady Depo., pp. 90:25–91:16; SER p. 105); (Branson Aff., ¶¶ 6, 19, 20, 24, 44; SER pp. 175–176, 180–182, 189); *see also* (ECF Nos. 175-18 through -26). By 2002, Tommy Morrison was deemed totally disabled by the Social Security Administration due to

---

[7] Morrison also refused treatment on Tommy Morrison's behalf. (Morrison Depo., pp. 192:4–193:9; SER p. 205).

[8] Tommy Morrison was tested over 100 times for HIV from 1996 to 2013. (Morrison Depo., p. 363:5–12).

symptomatic HIV/AIDS. (Brady Depo., pp. 151:2–156:23; SER pp. 109–110); (Brady Depo., Ex. 2, pp. 89–94; SER pp. 118–123).

By 2006 or 2007, Tommy Morrison was routinely claiming that he did not have HIV and that the February 1996 Quest Diagnostics's test result was a "false positive." (Hosterman Depo., pp. 87:6–13; 87:22–88:12; SER p. 168); (Hosterman Depo., Ex. 14; SER p. 169); (Morrison Depo., p. 255:7–11; SER p. 212). In 2007, in response to an inquiry about Quest Diagnostics's HIV testing, Hiatt explained the HIV antibody testing protocol to Goodman—a representative of the NSAC—and explained its reliability. (Hiatt Aff., ¶¶ 8–9; SER p. 226); (Goodman Aff., ¶¶ 9–12; SER pp. 227–228). Tommy Morrison died on September 1, 2013. His hospital discharge summary included, among other items, diagnoses of HIV disease and cytomegaloviral disease, an infection indicative of AIDS. (Branson Aff., ¶ 46; SER p. 190); (NMC, 002–003; SER pp. 229–230). The uncontroverted summary judgment evidence shows the district court properly entered summary judgment as to each of Morrison's claims against Quest Diagnostics and Hiatt in her FAC.

## SUMMARY OF THE ARGUMENT

Morrison's Brief and arguments on appeal fail to comply with the rules of this Court and the Federal Rules of Appellate Procedure and her appeal should be dismissed. More importantly, the district court correctly granted summary judgment on each of Morrison's claims contained in her FAC. On appeal, Morrison has abandoned her claim that Quest Diagnostics's February 1996 test of a blood sample provided by Tommy Morrison was performed inaccurately and instead rests her claims on the allegation that all clinical laboratory HIV antibody testing in the United States is unreliable and deceptive. The uncontroverted summary judgment demonstrates that:

- Quest Diagnostics tested Tommy Morrison's blood sample for HIV antibodies in accordance with the standard of care for HIV testing in 1996;

- Tommy Morrison's personal physician immediately sought confirmation of Quest Diagnostics's test result by separate, subsequent testing, all of which confirmed that result;

- Tommy Morrison repeatedly and publically acknowledged his HIV status in 1996 and afterwards;

- Tommy Morrison was repeatedly tested and treated for HIV from 1996 through the date of his death and Tommy Morrison's medical condition at the time of his death was consistent with HIV-related illnesses;

16

- Despite this, in 2006, Tommy Morrison began to publicly challenge his HIV test results, his HIV positive status, and the accuracy of Quest Diagnostics's February 1996 HIV antibody test;

- Tommy Morrison never filed any lawsuit arising from that claim, until Morrison, who he met for the first time in 2009, filed this lawsuit on behalf of his estate in July 2014, well after his death and the expiration of any statute of limitation on any conceivable claim Tommy Morrison might have had.

Summary judgment was therefore properly granted.

It was not an abuse of discretion for the court below to deny Morrison leave to file yet another amended pleading. Morrison was given leave to re-plead her claims after her Original Complaint was dismissed. In her FAC, Morrison, repeatedly, and in bad faith, alleged that Tommy Morrison was never diagnosed nor treated for HIV prior to his death. After Quest Diagnostics successfully obtained discovery that revealed that Morrison's allegations were patently false, Morrison sought leave to amend her claims to remove those allegations and alter her allegation from one of negligent testing to an allegation that all commercially-available, FDA-approved clinical laboratory HIV antibody testing is fraudulent and deceptive. Leave to amend was properly denied.

17

## ARGUMENT

## I. MORRISON FAILS TO PRESENT ANY APPEALABLE ISSUE TO THE COURT.

### A. Morrison Does Not Address The Bases For The District Court's Grant Of Summary Judgment Or Explain How The District Court Erred.

Morrison's opening brief is procedurally and substantively deficient. *Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 485 (9th Cir. 2010) (within an opening brief, claims must be clearly articulated in: (1) a statement of the issues presented for review; (2) a summary of the argument; and (3) the argument section itself) (citing FED. R. APP. P. 28). Morrison does not support any of her claims on appeal with legal analysis, citation to relevant legal authority, or cites to evidence in the record as required. FED. R. APP. P. 28(a)(6) & (8); 9th Cir. R. 28-2.8 ("Every assertion in briefs regarding matters in the record shall be supported by a reference to the location in the excerpts of record where the matter is to be found."). Instead, Morrison's appeal consists of innumerable conclusory arguments—none of which are supported by cogent argument or evidence in the record. *In re O'Brien*, 312 F.3d 1135, 1136 (9th Cir. 2002) ("[F]ailure to comply with Rule 28, by itself, is sufficient ground to justify dismissal of an appeal."); *Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir. 2007) ("In order to give fair consideration to those who call upon us for justice, we must insist that parties not clog the system by presenting us with a slubby mass of words

rather than a true brief.") (quoting *N/S Corp. v. Liberty Mut. Ins. Co.*, 127 F.3d 1145, 1146 (9th Cir. 1997)).  Morrison's incomprehensible appeal simply reflects her scattershot attempts before the trial court to avoid the evidence and her burdens under the law, and should be dismissed.

Morrison also does not address the uncontroverted evidence submitted by Quest Diagnostics and Hiatt in support of summary judgment or attempt to explain how that uncontroverted evidence fails to establish that no genuine issue of material fact exists as to the claims and allegations in her FAC.  Morrison further does not identify any relevant issues for review, or any statement of the standard of review applicable to the issues she has presented for review.  FED. R. APP. P. 28(a)(6), (7) & (8).  For example, in her "Questions Presented for Review," Morrison posits thirteen "questions" that largely reflect of her unsupported view of clinical laboratory HIV antibody testing.  (Br., pp. 27–30).  These "questions" fail to conform to the trial court's holdings.  Instead, these "questions" reference alleged errors in judgment by parties or physicians, (*see*, *e.g., id*. at p. 30) ("Whether the physicians and 'State Defendants' erred . . . ."), or misstate the district court's decision below.  (*See*, *e.g., id.* at p. 29) ("Whether the court erred in siding with Quest concluding HIV has never been discovered, photo imaged, measured or seen under an electron microscope?").  Indeed, many of Morrison's arguments simply rely upon vague, unexplained references to alleged statutory and

regulatory violations—most of which, on their face, have never been pleaded and were not presented to the district court. (*See*, *e.g.,* Br., pp. 58, 61, 63) (asserting, *inter alia*, claims of health care fraud, false claims, forgery, unauthorized practice of law). Morrison also raises new issues that were not before the district court. (*E.g.*, *id.* at p. 28) ("Whether the . . . representations . . . also constitutes a deceptive act or practice and the making of false advertisements, in or affecting commerce, in violation of Section 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) & 52").

On its face, Morrison's Brief presents no appealable issue. Instead of attacking the summary judgment evidence or the district court's review of her claims in her FAC, Morrison abandons her negligent testing allegations and asserts claims she sought to make in her proposed SAC, which she was denied leave to file. Morrison's personal belief that long-accepted and FDA-approved methods for clinical laboratory HIV testing are fraudulent is not reviewable, and even if it were, it is simply wrong. Morrison has not properly preserved her claims that the district court improperly granted summary judgment and her appeal should be dismissed.[9]

---

[9] Although this Court liberally construes *pro se* appellate briefs, Morrison's *pro se* status should not save her appeal from dismissal. *See Ventress v. Japan Airlines*, 747 F.3d 716, 723 n.8 (9th Cir. 2014) (declining to address *pro se* appellant's undeveloped argument made in passing that was not supported by citations to the record, argument, or any legal authority, noting that although this Court is "sensitive to [Appellant's] *pro se* status on appeal and construe his arguments

*See Sekiya*, 508 F.3d at 1200 (dismissing appeal where brief failed to provide applicable standard of review, made virtually no legal argument, and lacked citations to authority, and accurate citations to the record).

### B. Morrison's Passing References To Non-Final, Subordinate Orders Do Not Raise Reviewable Issues For Consideration By This Court.

Morrison's Brief is replete with vague references to, or complaints about, seemingly every decision and order issued by the district court and magistrate judge below—on subjects including discovery, pre-trial procedure and evidence, and the rulings on the ultimate merits of each of her factually and legally unsupported claims. (*See, e.g.,* Br., pp. 56, 73) (citing Dkt. Entry 5-2, p. 49) (citing 25 various docket entries below, including, *inter alia*, Morrison's motion to quash subpoenas to third-party physicians and two motions asking the court to take judicial notice of her "evidence" and a motion for contempt). Contrary to Morrison's contention that the district court "overlooked" these "fact-based exhibits" and filings, (Br., p. 73), each of these motions was considered and ruled upon. For any of these orders that she sought to appeal, Morrison was required to identify her "contentions and the reasons for them, with citations to the authorities and parts of the record on which [Morrison] relies." Fed. R. App. P. 28(a)(8)(A). Morrison fails to do so, and has abandoned those arguments. *Acosta-Huerta v.*

---

liberally," its "leniency is not without limit and does not excuse [Appellant's] utter failure to provide any legal support or argument for this contention.").

*Estelle*, 7 F.3d 139, 144 (9th Cir. 1992) (applying requirements of Rule 28 to *pro se* appellant and holding that claims not supported by argument as well as issues and arguments incorporated by reference on appeal are deemed abandoned unless failure to consider the claims would result in manifest injustice).

For example, Morrison attempts to rely upon an affidavit of a Dr. Antonio Osio, (Br., p. 45), which was stricken by the district court. (SJ Order, p. 5; SER p. 12). Since Morrison does not challenge the district court's decision to strike the affidavit, she waived any appeal from that exclusion.[10] *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1288–89 (9th Cir. 2000) (evidentiary issue waived where appellant cited evidence on appeal but never challenged order striking the evidence). Similarly, Morrison's Brief is devoid of any argument or legal authority regarding any of the trial court's discovery or procedural orders and she does not include any such orders in her Appendix as required by this Court's Rules. 9th Cir. R. 30-1.4. Generally, the Court "will not 'consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief,' are argued only in passing, or that constitute bare assertions without supporting

---

[10] Notwithstanding Morrison's waiver of this issue, the district court did not abuse its discretion in excluding Dr. Osio's proffered affidavit because Morrison failed to file a motion seeking leave and establishing good cause or excusable neglect. *See Fleischer Studios, Inc., v. A.V.E.L.A., Inc.*, 654 F.3d 958, 966 (9th Cir. 2011) ("it is never an abuse of discretion for a district court to exclude untimely evidence when a party fails to submit that evidence . . . as Rule 6(b) requires").

argument." *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 335 (9th Cir. 2017) (citation omitted).   Morrison does identify any specific non-final, subordinate order by the trial court for review, and offers no basis for any challenge of those decisions, and has therefore waived any appeal of those orders.

## C.   Morrison's Appendix Is Deficient And Includes Evidence Not In The Summary Judgment Record.

Rather than cite to evidence in the record to support of her contentions on appeal, Morrison cites to her attached Appendix—which does not contain documents required by this Court's Rules, 9th Cir. R. 30-1.4, (*i.e.,* the entire trial docket sheet or the portions of the evidence in the record upon which she relies), but rather contains, *inter alia*:

- An unsupported fourteen page glossary, (Dkt. Entry 5-2, pp. 2–14);
- A blank "physician questionnaire" she created that purportedly relates to HIV infection and requirements for clinical HIV evaluation, (Dkt. Entry 5-2, pp. 14–27);
- A list of supposedly "peer-reviewed articles" she claims support contentions regarding HIV and clinical laboratory HIV testing, (Dkt. Entry 5-2, pp. 27–48); and
- A list referencing various motions she filed, unrelated to the motion for summary judgment, (Dkt. Entry 5-2, p. 49).

Morrison relies upon these Appendix documents despite the fact none were before the district court when it entered summary judgment on her claims.   Since these documents are not part of the record below, they cannot be considered part of the

record on appeal.[11]  FED. R. APP. P. 10(a); 9th Cir. R. 10-2; *Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077 (9th Cir. 1988).  Morrison's "Appendix" is defective and should be struck.

### D.   Morrison's Contention That She Was Prevented From Adducing Evidence In Support Her Claims By Quest Diagnostics And Counsel Is Specious.

Morrison contends, again without any authority or support, that Quest Diagnostics and its counsel withheld documents necessary to support her claims, committed "fraud" upon the district court, and engaged in other alleged misconduct that warrants reversal of the district court's grant of summary judgment.  (Br., pp. 52–54).  Below, Morrison made several claims regarding alleged misconduct by counsel.  (ECF Nos. 130, 154, 197, 201).  At the summary judgment hearing, the district explicitly denied Morrison's motions, finding no basis for those claims.  (Dkt. Entry 5-4, pp. 41–42); (*see also* ECF Nos. 181, 187).

---

[11] Morrison also attempts to rebut Tommy Morrison's HIV testing and treatment records on appeal by citing to her opposition to Quest Diagnostics's Bill of Costs and her own motion for a stay of judgment, both filed after the grant of summary judgment.  (*See*, *e.g.,* Br., pp. 8, 18, 39, 44) (citing Dkt. Entry 5-3, Tab B).  This is also improper.  *Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077 (9th Cir. 1988) ("Papers submitted to the district court *after* the ruling that is challenged on appeal should be stricken from the record on appeal.").

Morrison does not appeal those orders, and even if she had, her contentions are legally nonsensical and wholly devoid of any factual basis.[12]

Morrison makes the inexplicable contention that Quest Diagnostics withheld or prevented her from accessing medical records of Tommy Morrison that were in the possession of third parties and not in the possession of Quest Diagnostics—records that she is legally entitled to obtain herself. (Br., pp. 51–53, 57–58). This contention is baseless. Morrison also contends Quest Diagnostics withheld FDA-approved commercial HIV antibody packet inserts from third parties for testing performed in 1996—even though Quest Diagnostics no longer possessed those records. *Id*. at p. 48. She further contends that Quest Diagnostics withheld from her the electron microscopy reports upon which she bases this lawsuit, (*id*. at pp. 9–10, 20, 47, 49, 51), despite the fact that Quest Diagnostics was not successful in obtaining those records in discovery from the third parties who allegedly prepared the reports. On their face, Morrison's contentions are frivolous. Morrison does not explain or demonstrate how any conduct by Quest Diagnostics

---

[12] Morrison also asserts unsupported allegations of discovery misconduct, which are not only false and irrelevant, have also been waived on appeal. Morrison contend that neither Quest Diagnostics nor counsel should have reviewed Quest Diagnostics's own laboratory records regarding the long history of HIV testing performed on Tommy Morrison upon receipt of notice of Morrison's claims. The record below demonstrates that these arguments are baseless, disingenuous, and even contradict the disclosure requirements of Rule 26. (ECF No. 226). Morrison's contentions were the subject of at least two motions, including a request to hold counsel in contempt, each of which was explicitly denied.

or counsel prevented from establishing her claims or providing expert evidence in support of her allegations and her claims, frivolous as they are, are therefore are waived. *Acosta-Huerta*, 7 F.3d at 144 (issues raised but unsupported by argument deemed waived); *United States v. Kimble*, 107 F.3d 712, 715 n.2 (9th Cir. 1997) (finding arguments "not coherently developed" in brief abandoned).

## II. THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT ON EACH OF MORRISON'S CLAIMS IN HER FIRST AMENDED COMPLAINT.

### A. Standard Of Review.

A district court's decision to grant summary judgment is reviewed *de novo*, using the same standard used by the district court under Rule 56(c). *Szajer v. City of Los Angeles*, 632 F.3d 607, 610 (9th Cir. 2011); *see also Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1047 (9th Cir. 2008) (statute of limitations); *Suzuki Motor Corp. v. Consumers Union, Inc.*, 330 F.3d 1110, 1131 (9th Cir. 2003). On review, the Court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). The Court does not weigh the evidence or determine the truth of the matter but only determines whether there is a genuine issue for trial. *See Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999). Summary judgment may be affirmed

on any ground supported by the record. *See Video Software Dealers Ass'n v. Schwarzenegger*, 556 F.3d 950, 956 (9th Cir. 2009). The district court correctly entered summary judgment as to each of Morrison's claims.

## B. The Undisputed Evidence Demonstrates That Tommy Morrison's Claims Are Barred By Limitations.

Morrison alleges that the district erred in finding each of her claims was barred by limitations. (Br., p. 66). Specifically, Morrison argues, for the first time, and without analysis or support,[13] that Tommy Morrison's claims are health care fraud subject to 18 U.S.C. §1347 and thus not time barred,[14] or that the limitations period on those claims were tolled because Quest Diagnostics's HIV antibody testing purportedly was fraudulent and, thus, her claims were indefinitely tolled under common law and Nevada statutory provisions. *Id.* at pp. 66–67. The district court found each of Tommy Morrison's claims accrued, as a matter of law, on February 10, 1996. (SJ Order, p. 9; SER p. 16). Even if Morrison has presented a reviewable issue on appeal, her claims fail.

---

[13] In her FAC, Morrison alleged that limitations did not bar Tommy Morrison's claims because Quest Diagnostics and Hiatt fraudulently misrepresented that Quest Diagnostics "diagnosed" him with HIV and Tommy Morrison reasonably relied on this misrepresentation and had no reason to believe otherwise "for years." (FAC, ¶ 81; SER p. 38).

[14] 18 U.S.C. § 1347 is the health care fraud statute—which makes it a criminal offense to knowingly and willfully execute a scheme to defraud a health care benefit program—and is inapplicable to the claims in this matter.

The statute of limitations on Tommy Morrison's putative claims began to run "when the wrong occur[ed] and [Tommy Morrison] sustain[ed] injuries for which relief could be sought." *Orr v. Bank of Am.*, 285 F.3d 764, 780 (9th Cir. 2002) (quoting *Petersen v. Bruen*, 792 P.2d 18, 20 (Nev. 1990)). On February 10, 1996, Tommy Morrison knew that the NSAC rejected his application for a boxing license and cancelled his scheduled fight because Quest Diagnostics's laboratory report indicated that he had a positive HIV-1 Western blot. (Ratner Aff., ¶¶ 17–18, 23; SER p. 128); (Holden Depo., pp. 31:20–36:18; 102:24–104:12; SER pp. 135–136, 146); (Koprivica Depo., pp. 19:4–23:2; SER pp. 157–158); (Morrison Depo., pp. 168:8–169:11; 174:3–14; SER pp. 199, 201); (Brady Depo., pp. 43:25–45:10; SER p. 95); *see also* NEV. ADMIN. CODE § 467.027(3)(b). At that point, Tommy Morrison knew or "should have known of facts that 'would lead an ordinarily prudent person to investigate the matter further.'" *Winn v. Sunrise Hosp. & Med. Ctr.*, 277 P.3d 458, 462 (Nev. 2012).

Despite this overwhelming and uncontroverted evidence, Morrison baldly contends Tommy Morrison was not put on notice of his claims until 15 years later—on October 24, 2011.[15] (Br., p. 67). In arguing that Tommy Morrison could

---

[15] On appeal Morrison argues, without evidence, that October 24, 2011 is the date Tommy Morrison's claims accrued and limitations began to run because the district court had not included periods of time that Tommy Morrison was unconscious, hospitalized, or incarcerated in calculating limitations. (Br., p. 67).

not have discovered his newly-articulated "claims" that Quest Diagnostics did not exclude other "conditions" causing an HIV reactive test result, Morrison ignores over sixteen (16) years of HIV testing, diagnoses, and treatment–all of which confirmed his HIV diagnosis. In fact, with full knowledge of these HIV tests and treatment,[16] Morrison filed her FAC alleging that none of this testing had ever occurred and that Tommy Morrison simply accepted the accuracy of Quest Diagnostics's February 1996 HIV laboratory test report and never sought to confirm the result, (FAC, ¶¶ 71, 81; SER pp. 36, 38), and only after his death did electron microscopy testing purportedly "reveal" that he never had HIV, thus

---

This contention was never pleaded or presented to the district court and is therefore waived. *See Bias v. Moynihan*, 508 F.3d 1212, 1223 (9th Cir. 2007) (*pro se* appellant waived right to present issue for first time on appeal when failed to argue to district court). Most importantly, however, the district court found that Tommy Morrison's claims accrued "at the very latest, in 2007." (SJ Order, p. 9; SER p. 16).

[16] Under oath, Morrison admitted that: neither Quest Diagnostics nor Hiatt had any communications with Tommy Morrison in February 1996, (Morrison Depo., pp. 293:14–296:11; SER pp. 217–218); that Tommy Morrison immediately submitted to additional HIV testing to confirm Quest Diagnostics's February 10, 1996 laboratory report, *id.* at pp. 180:21–182:12, 310:2–11; SER pp. 202–203, 222; that Tommy Morrison relied on the subsequent testing for his HIV status, *id.* at pp. 309:20–311:18; SER pp. 221–222; that she has no idea what Tommy Morrison's medical providers told him about his HIV status in 1996, *id.* at p. 184:13–21; SER p. 203; that after February 10, 1996, Tommy Morrison was repeatedly tested for and/or diagnosed with HIV and/or AIDS by numerous physicians, including infectious diseases doctors and HIV specialists, *id.* at pp. 191:5–192:25, 202:24–204:2, 228:10–231:15; SER pp. 205, 207–209; and that Tommy Morrison was probably tested for HIV more than 100 times during the following 10 or 15 years. *Id.* at p. 363:5–12; SER p. 223.

29

beginning the running of the limitations period.[17]  *Id*. at ¶¶ 18, 19–21; SER pp. 27–28; (Morrison Depo., pp. 253:2–254:15; SER pp. 211–212).  In reality, as early as 1996, Tommy Morrison publicly questioned whether he actually had HIV and whether Quest Diagnostics's test result was accurate.  (Morrison Depo., pp. 46:13–48:16; 86:10–19; 254:23–255:11; SER pp. 193, 196, 212).  In 1997, and again in 2001–2002, Tommy Morrison discussed suing the NSAC for its failure to issue him a Nevada boxing license in February 1996.  (Brady Depo., pp. 86:22–89:4; SER p. 104).  On July 19, 2006, Tommy Morrison sent a message to his previous wife stating that he was "right all along," and that he never had HIV.  (Hosterman Depo., pp. 87:8–88:12; Ex. 14; SER pp. 168–169).  In 2007, Tommy Morrison again publicly alleged that Quest Diagnostics's February 1996 test result was a false positive.  (Goodman Aff., ¶ 9; SER p. 227).

In fact, from the time Morrison first met Tommy Morrison in 2009, he repeatedly expressed his belief to her that Quest Diagnostic's HIV-1 antibody test result test was a false positive, and that he was not infected with HIV.  (Morrison Depo., pp. 46:16–48:16; 251:23–252:11; SER pp. 193, 211).  The fundamental underpinning of Morrison's limitations argument is that she—*rather than Tommy*

---

[17]  Electron microscopy is not recognized by the FDA or CDC for testing or diagnosing HIV in humans.  (Branson Aff., ¶¶ 34–35; SER pp. 185–186).  Morrison's gross mischaracterization of this type of testing as "accepted, peer-reviewed technology," (Br., p. 29), is not supported by any evidence.

*Morrison*—did not "discover" Quest Diagnostics's alleged wrongful conduct until she received an email from an attorney representing the physician who ordered the HIV test in February 1996, indicating that the physician purportedly had not "diagnosed" Tommy Morrison as HIV-positive. (*See*, *e.g.,* Br., pp. 51, 67). However, a survival action is a derivative action, and limitations are applicable to such claims as applied to the decedent, not the decedent's representative. *Schwartz v. Wasserburger*, 30 P.3d 1114, 1117 (Nev. 2001) (in survival actions the personal representative "inherits the benefits and burdens connected with the running of any applicable statute of limitations, measured from when the cause of action first accrued in favor of the decedent").

Morrison did not meet Tommy Morrison until thirteen (13) years after the testing at issue in this matter and her knowledge or lack of knowledge is irrelevant. On appeal, Morrison simply asks the Court to agree with her unsupported view of HIV testing and enter a decision that discredits all accepted scientifically methods of testing for HIV and instead accept her lay contention that HIV must be diagnosed only by electron microscopy—all without a shred of expert testimony or scientifically acceptable evidence. *See Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations."). Morrison's "tolling" argument, like her claims, is baseless.

**C.    The District Court Properly Granted Summary Judgment As To Each Of Tommy Morrison's Claims.**

**1.    Morrison has abandoned her claim that Quest Diagnostics's HIV testing was negligently performed.**

The negligence claim considered by the district court on summary judgment was that Quest Diagnostics's HIV-1 antibody test result was inaccurate, as evidenced by Morrison's unsupported contention that Tommy Morrison was HIV-negative upon his death.  (FAC, ¶¶ 17–18; SER p. 27).  On appeal, however, Morrison argues that, as of February 1996 and continuing until Tommy Morrison's death in 2013, all clinical laboratories in the United States—and the CDC which recommended the use of the HIV-1 antibody testing algorithm—were using HIV tests that were not appropriate for identifying HIV infection in humans.[18]  (Br., pp. 2–4, 11).  Since these claims were not before the district court, Morrison cannot seek appellate review of this claim and her appeal is meritless.[19]  *See Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009); *Bias v. Moynihan*, 508

---

[18] Morrison ignores the fact that Tommy Morrison was also tested for the virus directly, and that the results of those tests were also positive for HIV.  (Branson Aff., ¶¶ 19, 20; SER pp. 180–181).

[19] Even if that claim were properly before this Court (which it is not), Morrison has both the burden of production and persuasion.  *Rivera v. Philip Morris*, 209 P.3d 271, 275 (Nev. 2009).  Morrison does not support any of her statements on HIV testing with any evidence—expert or otherwise—nor does she provide evidence to rebut the undisputed evidence demonstrating that, in 1996, the standard of care for HIV testing was HIV antibody testing using the ELISA-Western blot algorithm.  (Branson Aff., ¶¶ 17, 25, 26; SER pp. 179, 182–183); (Williams Aff., ¶ 4; SER pp. 150–151); (Iole Aff., ¶ 6; SER p. 153).

F.3d 1212, 1223 (9th Cir. 2007) (*pro se* appellant waiver). More importantly, however, by failing to appeal her claims that were before the district court on summary judgment, Morrison has waived her appeal of those claims. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[W]e will not consider any claims that were not actually argued in appellant's opening brief.").

Even if Morrison has not waived her appeal of the district court's decision, the undisputed evidence is that Quest Diagnostics's HIV antibody testing algorithm of repeatedly reactive ELISA screening tests followed by a confirmatory Western blot met the standard of care for performing and reporting HIV testing in 1996.[20] (Branson Aff., ¶¶ 17, 25, 26; SER pp. 179, 182–183); (Williams Aff., ¶ 4; SER pp. 150–151); (Iole Aff., ¶ 6; SER p. 153). Although Morrison presents a different theory of HIV testing negligence on appeal than was considered by the district court, Morrison also fails adduce expert evidence to support this new allegation. *Layton v. Yankee Caithness Joint Venture*, 774 F. Supp. 576, 580 (D. Nev. 1991) (noting legal commentators have recognized that "expert testimony is

---

[20] Morrison has repeatedly stated that she would present evidence of her claims at trial, which is insufficient to survive summary judgment. Morrison's only "evidence" in support of her appeal is either untimely and irrelevant evidence struck by the district court, (Br., pp. 5, 45) (discussing Osio affidavit); unsponsored and unauthenticated documents that purport to be electron microscopy reports, *id.* at p. 5; unauthenticated excerpts of packet inserts from FDA-approved HIV antibody screening tests, *id.* at p. 9; or unsponsored scientific journal references. *Id.* at p. 10. None of this "evidence" supports her meritless negligence claims.

required where the question involves medical factors beyond the common knowledge of the layman such that a jury could only indulge in speculation"). Since Morrison does not proffer any expert witness testimony or evidence supporting any claim posited by her, they fail.[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.").

In addition to its own expert evidence regarding its testing, Quest Diagnostics also demonstrated that Tommy Morrison's personal physician, among others, confirmed Quest Diagnostics's HIV-1 antibody test result within days of Quest Diagnostics's reporting of its test results by sending separate blood samples drawn from Tommy Morrison to the CDC for testing. (Holden Depo., pp. 42:13–16; 45:15–22; 48:11–18; SER pp. 138–139); (Koprivica Depo., pp. 23:3–24:8; 40:15–41:7; SER pp. 158–159). The undisputed evidence presented to the district court further showed that Tommy Morrison was repeatedly and regularly tested, diagnosed, and treated for HIV by numerous physicians, including HIV specialists, between the February 1996 Quest Diagnostics test and his death in 2013. (Branson

---

[21] The economic loss doctrine also bars Morrison's negligence claims. *See Peri & Sons Farms, Inc. v. Jain Irrigation, Inc.*, 933 F. Supp. 2d 1279, 1283–85 (D. Nev. 2013) (strict liability and negligence claims barred by economic loss rule); *Terracon Consultants W., Inc., v. Mandalay Resort Grp.*, 206 P.3d 81, 86 (Nev. 2009).

Aff., ¶¶ 19–20, 24, 44; SER pp. 180–182, 189).  To rebut the accuracy of the more than "one hundred" HIV tests of Tommy Morrison from 1996 to his death in 2013, Morrison relies upon two unauthenticated, unsponsored hearsay reports for electron microscope tests performed at her request in 2012 and 2013 on blood specimens allegedly taken from Tommy Morrison that she alleges shows he was not infected with HIV.  (*See*, *e.g.,* Br., pp. 5, 9–11, 20, 29).  Throughout this lawsuit, the only evidence offered regarding any interpretation of these test reports has been her own unsupported assertions, and she is neither a physician nor an expert on electron microscope testing.  (Morrison Depo., p. 237:2–5; SER p. 210).  However, even if the reports were admissible, it is undisputed that electron microscopy is not a recognized or reliable test for diagnosing HIV or for ruling out HIV infection.  (Branson Aff., ¶¶ 34–35; SER pp. 185–186); (Iole Aff., ¶¶ 13–14; SER p. 154).  Morrison has not produced any expert testimony or opinion to the contrary.  The district court's entry of summary judgment therefore was correct in all respects.

## 2.      Morrison has no evidence supporting her defamation claims.

Morrison argues that the district court incorrectly granted summary judgment on her defamation claim because Quest Diagnostics's laboratory report was a "statement of fact of diagnosis of a loathsome disease damages Tommy [Morrison's] career, reputation, legacy, and people's trust to this day." (Br.,

p. 69).[22]  As a world heavy-weight boxing champion and professional athlete, Tommy Morrison was a general public figure, *Pacquiao v. Mayweather*, 803 F. Supp. 2d 1208, 1213 (D. Nev. 2011), and must prove by clear and convincing evidence that Quest Diagnostics and Hiatt made a false statement about Tommy Morrison with "actual malice—that is, with knowledge that the statement was false or with reckless disregard" of its truth.  *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); *see also Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 90 (Nev. 2002).  The undisputed evidence, however, establishes that Morrison cannot even identify—let alone provide evidence of—any alleged statements or defamatory publications made by Quest Diagnostics or Hiatt.  (Morrison Depo., pp. 271:15–272:17; 298:7–12; 300:11–23; 303:9–19; SER pp. 216, 219–220).

On February 10, 1996, after Tommy Morrison consented to the release of information to NSAC, Quest Diagnostics reported his laboratory test results—a positive HIV-1 Western blot test result—to the NSAC.  (Iole Aff., ¶¶ 11, 12; SER

---

[22] Morrison also contends that Quest Diagnostics owed Tommy Morrison a duty of care that it breached when it reported the results of his HIV-1 antibody test to someone other than the "ordering physician" and that Hiatt also breached this duty by discussing those test results with the NSAC in 2007.  (Br., p. 67).  The undisputed evidence is that Tommy Morrison submitted to the HIV test in February 1996 as an NSAC licensing requirement and consented to the disclosure of the test results to the NSAC.

p. 154).[23]  Quest Diagnostics's laboratory test result was accurate,[24] which was confirmed by subsequent HIV testing of Tommy Morrison.  *See* Argument *supra* § II.C.1.  After submitting to additional HIV testing, Tommy Morrison held press conferences and multiple media interviews where he announced that he was HIV positive.  (Hosterman Depo., pp. 56:15–25; 57:4–58:25; 59:11–13; SER pp. 164–165); (Brady Depo., pp. 67:15–68:10; 70:22–25; SER pp. 99–100); (Holden Depo., pp. 49:15–17; 50:5–51:8; 52:6–12; 52:17–20; SER pp. 139–140); (Morrison Depo., pp. 180:1–9; 185:8–10; SER pp. 202–203).

Additionally, Morrison does not provide any evidence:  (1) that in 1996, Quest Diagnostics or Hiatt made any statements about Tommy Morrison or his HIV status to any other party (including the media)  other than the NSAC and the ordering physician—both of whom were authorized to receive the results of the HIV testing, (Morrison Depo., p. 179:4–25; SER p. 202); (2) that Hiatt went to the media in 2007 to report the results of Tommy Morrison's February 1996 HIV-1

---

[23] Although Morrison argues, without evidence, Tommy Morrison's consent was invalid, the undisputed evidence demonstrates that Tommy Morrison consented to the release of the result to the NSAC.  Even if he had not consented, that "claim" would have accrued immediately because he was aware of the release at the time.

[24] The uncontroverted summary judgment evidence shows that Quest Diagnostics's laboratory test result was subsequently confirmed on dozens of occasions, and that Tommy Morrison was repeatedly diagnosed with HIV until his death in 2013.  Truth is an absolute defense, and Morrison's defamation claims therefore fail as a matter of law.  *See Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 88 (Nev. 2002) (noting statement is not defamatory if it is absolutely true, or substantially true).

antibody test, *id*. at pp. 271:1–273:2; SER p. 216; or (3) that Quest Diagnostics or Hiatt made any statements to the media any time after 2007 regarding Tommy Morrison's February 1996 HIV-1 antibody test. *Id*. at pp. 301:1–303:23; SER pp. 219–220. There is no evidence that either Quest Diagnostics or Hiatt ever—in 1996, 2007, or through the present—made any statements or communications about Tommy Morrison or his HIV status to any third persons, including the media. Morrison did not, and cannot, adduce any evidence controverting this fact or raising any issue of fact on this claim. The district court's decision was correct in all respects.

### 3. Morrison offered no evidence to support her fraud and misrepresentation claims.

On appeal, Morrison contends that she presented evidence of a triable fraud claim because Quest Diagnostics concealed the fact that it did not "rule out other antibodies" before it reported its February 10, 1996 HIV antibody test result for Tommy Morrison. (Br., p 70). Since these claims were not before the district court, Morrison cannot seek appellate review of this claim and her appeal is meritless. *Bias*, 508 F.3d at 1223. The district court granted summary judgment on Morrison's claims for fraud and misrepresentation because there was no evidence Appellees made any false statements. (SJ Order, pp. 12–13; SER pp. 19–20). More importantly, there is no evidence supporting any allegation that Quest Diagnostics's February 10, 1996 HIV antibody test result was inaccurate or that

Hiatt or Quest Diagnostics made any false representation to Tommy Morrison upon which he relied to his detriment.

No evidence exists to support Morrison's allegations that: (1) Quest Diagnostics or Hiatt spoke to or made representations to Tommy Morrison either before or after the test was performed; (2) that Tommy Morrison had knowledge of any of these alleged misrepresentations or reasonably relied upon such representations; or (3) that Tommy Morrison suffered any injury resulting from such reliance. (Hiatt Aff., ¶ 5; SER p. 225); (Morrison Depo., pp. 165:16–19; 168:8–169:11; 173:4–15; 173:20–25; 260:2–265:4; SER pp. 198–200, 213–214).[25] The uncontroverted summary judgment evidence demonstrates that Tony Holden, along with Dr. Koprivica, told Tommy Morrison he failed his blood test and would not be able to fight on February 10, 1996. (Holden Depo., pp. 36:1–7; 102:24–103:2; 103:7–25; SER pp. 136, 146); (Koprivica Depo., p. 20:4–23; SER pp. 157–158); (Morrison Depo., pp. 168:25–169:5; 174:11–14; 296:12–298:12; SER pp. 199, 201, 218–219). Additionally, Tommy Morrison did not reasonably rely upon Quest Diagnostics's test result because he immediately submitted to additional HIV testing to confirm its accuracy. (Koprivica Depo., pp. 23:3–24:8; SER p. 158). Since there is no evidence of representations made to Tommy

_____

[25] Morrison never had any factual basis for her allegation that Tommy Morrison was told by Quest Diagnostics that he was contagious in and out of the ring. (Morrison Depo., pp. 264:8–266:8; SER pp. 214–215).

Morrison, there is no genuine issue of triable fact regarding Morrison's fraud and negligent misrepresentation claims against Quest Diagnostics and Hiatt. *See, e.g.*, *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992) (plaintiff has burden of proving each element of fraud claim by clear and convincing evidence); *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998) (negligent misrepresentation claim).

### 4. Morrison has no evidence supporting her claims for IIED or IIC.

On appeal, Morrison now contends that a triable issue of fact exists as to her IIED and IIC claims because HIV antibody "tests do not detect the virus and will result positive for autoimmune antibodies and other conditions" and Quest Diagnostics knew that its test did not test for the virus but HIV antibodies—a completely different theory than stated in her FAC. (*Compare* Br., p. 71–72 *with* FAC, ¶¶ 84, 92; SER pp. 39–40). The district court granted summary judgment on Morrison's claims because the uncontroverted summary judgment evidence and legal authority demonstrated that: (1) Quest Diagnostics test result was accurate; (2) even an inaccurate HIV-positive test result (which was not the case here) is not "extreme and outrageous" conduct to support an IIED claim; (3) that Morrison adduced no evidence of a valid and existing $110 million contract in February 1996; and (4) there is no evidence Quest Diagnostics was aware of the existence of such a contract or, if they were, had a motive to improperly interfere with any

contract of Tommy Morrison or his boxing career. (SJ Order, pp. 13–14; SER pp. 20–21). Since Morrison's newly alleged claims were not before the district court, Morrison cannot seek appellate review of this claim and her appeal is meritless. *Bias*, 508 F.3d at 1223.

Morrison also fails to even mention—let alone less address or provide evidence to support—the essential elements of her claims. (Br., pp. 71–72). Although Morrison appears to argue that Quest Diagnostics's report of a clinical laboratory test result for HIV antibodies, rather than for the HIV virus itself is "extreme" and "intentional" conduct, it is undisputed that Quest Diagnostics complied with the standard of care and therefore its conduct could not be "extreme and outrageous." (Branson Aff., ¶¶ 17, 25, 26; SER pp. 179, 182–183); (Williams Aff., ¶ 4; SER pp. 149–150); (Iole Aff., ¶ 6; SER pp. 153). It is also undisputed that she did not produce the contract upon which she based her IIC claim. Nor does Morrison attempt to address the lack of evidence on each of the other essential elements of her claims on appeal. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law). The district court's decision was correct in all respects and should be affirmed.

**5. Morrison's claims against Hiatt are factually and legally baseless.**

On appeal, Morrison contends that the district court erred in granting summary judgment on her claims against Hiatt because Hiatt discussed "reports [that Quest Diagnostics] had on filing regarding the 1996 testing of [Tommy] Morrison's blood" with the NSAC and that Hiatt held himself out as a "licensed physician" and pathologist. (Br., pp. 59–60). The district court granted summary judgment on her claims against Hiatt because Morrison failed to adduce any evidence "implicating [Hiatt] in the events underlying each of her claims." (SJ Order, p. 10; SER p. 17). Furthermore, the Court dismissed Morrison's claim for unauthorized practice of medicine with prejudice on September 30, 2015, and Morrison has not appealed from that dismissal. (ECF No. 75) (Order dismissing Original Complaint). More importantly, Morrison—yet again—fails to provide any evidence supporting her meritless contentions.

The evidence shows that by 2006 or 2007, Tommy Morrison was routinely claiming that he did not have HIV and that Quest Diagnostics's February 1996 test result was a "false positive." (Hosterman Depo., pp. 87:6–13; 87:22–88:12; SER p. 168); (Hosterman Depo., Ex. 14; SER p. 169); (Morrison Depo., p. 255:7–11; SER p. 212). In 2007, in response to an inquiry about HIV testing, Hiatt explained the HIV antibody testing protocol generally to Goodman and explained its reliability. (Hiatt Aff., ¶¶ 8–9; SER p. 226); (Goodman Aff., ¶¶ 9–12; SER

pp. 227–228). The undisputed evidence demonstrates that Hiatt: (1) was not involved in the testing of Tommy Morrison's blood specimen or the reporting of the results; (2) never met, examined, or spoke to Tommy Morrison; and (3) never held himself out as a licensed physician to any person, and specifically not to Tommy Morrison. (Hiatt Aff., ¶¶ 5–6, 11–12; SER pp. 225–226). Morrison's unsupported allegations are not evidence and the district court's decision was correct in all respects.

## III. NEITHER THE MAGISTRATE JUDGE NOR THE DISTRICT COURT JUDGE ABUSED THEIR DISCRETION IN DENYING MORRISON LEAVE TO FILE HER PROPOSED SECOND AMENDED COMPLAINT.

### A. Standard Of Review.

Although Morrison does not explicitly appeal the district court's denial of her motion for leave to file her proposed SAC, her appeal is directed to the factual allegations she would have made had she been permitted to do so. The district court's denial of a motion to amend a complaint is reviewed for an abuse of discretion. *See AE v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012); *Ventress v. Japan Airlines*, 603 F.3d 676, 680 (9th Cir. 2010); *Caswell v. Calderon*, 363 F.3d 832, 836 (9th Cir. 2004) (habeas). "A district court acts within its discretion to deny leave to amend when amendment would be futile, when it would cause undue prejudice to the defendant, or when amendment is sought in bad faith." *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 725–26 (9th Cir. 2000)

(finding abuse of discretion). The discretion is particularly broad where a plaintiff has previously been permitted leave to amend. *See Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).

### B. The Court Below Did Not Abuse Its Discretion When It Denied Morrison Leave To File Her Second Amended Complaint.

Morrison appears to appeal the district court's denial of leave for her to file her proposed SAC, on which allegations she has based the substance of her arguments in this appeal.[26] (Br., p. 73). The gravamen of Morrison's proposed SAC was that the FDA-approved, commercial HIV-1 antibody test kits used by Quest Diagnostics are incapable of demonstrating whether a person is, or is not, infected with HIV and that such testing should not be used or ordered by physicians for any purpose.[27] A motion to amend a complaint is futile where the motion offers no new set of facts or legal theory, or fails to state a cognizable claim. *In re Gardner*, 563 F.3d 981, 991–92 (9th Cir. 2009). Morrison's proposed

---

[26] Morrison relies upon a misstatement by the district court that Morrison had not filed a prior motion for leave to amend to argue leave should have been granted. (Br., p. 73). This misstatement appears to be attributable to Morrison's voluminous and often frivolous motion practice. It is undisputed, however, that the magistrate considered, and denied, Morrison's request for leave to file her SAC.

[27] Morrison made a number of contentions throughout her proposed SAC that she continues to make on appeal, which demonstrate she does not believe in the existence of HIV and/or that it causes AIDS. (Br., pp. 3, 8, 28, 69); (SAC, ¶ 82; SER p. 62). Additionally, she does not limit her contentions to the HIV antibody testing that Quest Diagnostics performed, but includes all clinical laboratory HIV antibody testing throughout the United States, if not the world. (Br., pp. 6–7, 20–21, 58–59); (SAC, Remedies Sought, ¶ H; SER p. 81).

SAC failed to set forth any claim for relief that was plausible on its face and it was not an abuse of discretion for the magistrate judge and district court to have denied her leave to file the proposed amendment.

With her proposed SAC, Morrison sought to completely change her previous factual allegations and to plead claims against Quest Diagnostics alleging that FDA-approved HIV-1 antibody test kits, and the protocol recommended in 1996 by the CDC, are not useful or effective for HIV testing. As a clinical laboratory, Quest Diagnostics is regulated by federal law under the Clinical Laboratory Improvement Act of 1988 ("CLIA") and state laboratory licensing laws. Under CLIA and Nevada's laboratory licensing statute and regulations, the type of testing to be performed by a clinical laboratory on a specimen is designated on a test requisition provided by the authorized ordering physician and clinical laboratories, like Quest Diagnostics, have no ability to determine or change the type of testing ordered. 42 C.F.R. § 493.1241(c)(1) & (4); NEV. ADMIN. CODE § 652.300(4)(b) & (d). Quest Diagnostics therefore had no duty, or even the legal right, to change the HIV-1 antibody test ordered in this matter. Since the ordering physician ordered an HIV-1 antibody test, Quest Diagnostics was only required—and indeed authorized—to perform that specific test.

Similarly, commercially-available HIV test kits are regulated as class III medical devices by the 1976 Medical Device Amendments, (21 U.S.C. § 360(c)),

to the Federal Food, Drug & Cosmetics Act of 1938. To market a Class III device, the manufacturer of the device (who is not Quest Diagnostics) must submit its product to the FDA for a rigorous safety and efficacy review process known as premarket approval ("PMA").[28] The FDA reviews the manufacturer's submissions and either approves or disapproves the device. 21 C.F.R. §§ 814.44–.45. The FDA only approves devices after it reaches the conclusion that it has received from the manufacturer "reasonable assurances of [the device's] safety and effectiveness." 21 U.S.C. § 360c(a)(1)(C). Morrison's proposed claims against Quest Diagnostics arising out of the efficacy of FDA-approved HIV-1 antibody screening and confirmation tests are therefore preempted and leave was properly denied as futile.

Morrison's "failure to warn" claim also failed to state a claim for relief against Quest Diagnostics. The alleged "test kit warnings" upon which Morrison relies appear to be package inserts that manufacturers are required to provide to the FDA for approval as part of the PMA.[29] Contrary to Morrison's assertions that

---

[28] Under the PMA process, manufacturers of the test kits must provide the FDA with samples of the device, an outline of the device's components, a description of the manufacturing process, copies of proposed labels, and other items required by law. 21 C.F.R. § 814.20(b).

[29] The basis for Morrison's "disclaimer" claims was her research on the Internet. (Morrison Depo., pp. 156:12–157:16; SER p. 197). In this litigation, Morrison herself never actually produced the product labels (referred to by Morrison as "package inserts") upon which she relies, and instead merely produced excerpts of

these warnings are "mandated by the FDA," neither FDA nor CLIA requirements mandate that a clinical laboratory using an FDA-approved test manufactured by another company provide these package inserts to any physician or patient. The content of clinical laboratory test reports is governed by both CLIA and Nevada regulations. Those regulations specifically state the required elements of a laboratory test report, which do not include the inclusion of PMA information. 42 C.F.R. § 493.1291; NEV. ADMIN. CODE § 652.340.

In its decision denying Morrison leave to file her SAC, the magistrate specifically concluded that the proposed amendment was intended to circumvent and flout the district court's prior order allowing Morrison to re-plead her claims to cure defects regarding her contentions regarding the tolling of limitations as to Tommy Morrison's putative claims against Quest Diagnostics. (SAC Order, pp. 5, 7; SER pp. 5, 7). Not only was Morrison previously allowed to amend her pleadings, the record below demonstrates that she was seeking to "reframe" her claims to actively avoid discovery regarding Tommy Morrison's long history of HIV testing and treatment. Neither the district court nor the magistrate judge abused its discretion in denying Morrison leave to file another amended pleading—which on its face, stated futile claims and sought to avoid prior discovery orders.

---

"disclaimer" language apparently obtained from an organization that denies the existence of HIV. (ECF No. 108-12) (citing ALBERTA REAPPRAISING AIDS SOCIETY, http://aras.ab.ca/ (last visited March 13, 2017)).

## CONCLUSION

For the foregoing reasons, the grant of summary judgment on each of Morrison's claims and entry of judgment by the district court is correct in all respects and should be affirmed.

Date: March 13, 2017    Respectfully submitted,

          /s/ D. Faye Caldwell
          D. FAYE CALDWELL
          CALDWELL EVERSON PLLC
          2777 Allen Parkway, Suite 950
          Houston, Texas 77019
          Tel: 713-654-3000
          Fax: 713-654-3002
          Email: fcaldwell@caldwelleverson.com

          *Attorney for Defendants-Appellees*
          *Quest Diagnostics Incorporated and*
          *John Hiatt, Ph.D.*

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28.2-6, Appellees, Quest Diagnostics Incorporated [f/k/a APL Healthcare Group, Inc.] and John Hiatt, Ph.D. are unaware of any related cases pending before this Court.

Date: March 13, 2017   Respectfully submitted,

      /s/ D. Faye Caldwell
      D. FAYE CALDWELL
      CALDWELL EVERSON PLLC
      2777 Allen Parkway, Suite 950
      Houston, Texas 77019
      Tel: 713-654-3000
      Fax: 713-654-3002
      Email: fcaldwell@caldwelleverson.com

      *Attorney for Defendants-Appellees*
      *Quest Diagnostics Incorporated and*
      *John Hiatt, Ph.D.*

**Form 8.** **Certificate of Compliance Pursuant to 9th Circuit Rules 28-1.1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case Number** 16-17050

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (*check appropriate option*):

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 28-1.1.
The brief is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-1.
The brief is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b).
The brief is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable, and is filed by (1) ☐ separately represented parties; (2) ☐ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the longer length limit authorized by court order dated _____
The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 32-2 (a) and is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32 (f), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 29-2 (c)(2) or (3) and is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☒ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4.
The brief is 13.463 words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Signature of Attorney or Unrepresented Litigant    s/ D. Faye Caldwell    Date    Mar 13, 2017

("s/" plus typed name is acceptable for electronically-filed documents)

*(Rev.12/1/16)*

9th Circuit Case Number(s) | 16-17050

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)               .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)     .

Mar 13, 2017

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Patricia Harding Morrison
P.O. Box 454
Rose Hill, KS  67133

Signature (use "s/" format) | s/ D. Faye Caldwell