NO. 16-17050

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

\* \* \*

| | |
|---|---|
| PATRICIA HARDING MORRISON, For the Estate of Tommy Morrison, Pro Se Plaintiff-Appellant, | D.C. No.: 2:12-cv-00952-APG-VCF |
| v. | Nevada (Las Vegas) |
| QUEST DIAGNOSTICS, et al. Defendants-Appellees. | |

*Appeal from the United States District Court
for the District of Nevada*

### APPELLEES' ANSWERING BRIEF

ADAM PAUL LAXALT
Attorney General
VIVIENNE RAKOWSKY
Deputy Attorney General
VRakowsky@ag.nv.gov
Office of the Attorney General
555 East Washington Avenue #3900
Las Vegas, Nevada 89101
(702) 486-3103
Attorneys for Defendants-Appellees
Nevada State Athletic Commission,
Dr. Margaret Goodman, and Marc Ratner

i

## **TABLE OF CONTENTS**

Table of Authorities ..................................................................................iii-v

I.     CORPORATE DISCLOSURE......................................................1

II.    JURISDICTIONAL STATEMENT ............................................1

III.   CONCISE STATEMENT OF THE CASE ...................................2

IV.    SUMMARY OF THE ARGUMENTS.........................................10

V.     ARGUMENT................................................................................17

VI.    CONCLUSION.............................................................................55

CERTIFICATE OF COMPLIANCE..................................................56

STATEMENT OF RELATED CASES ...............................................57

CERTIFICATE OF SERVICE ...........................................................58

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES:**

*Acosta–Huerta v. Estelle,* 7 F.3d 139, 144 (9th Cir. 1992) .....................................25

*Alexopulos by Alexopulos v. Riles,* 784 F.2d 1408, 1411 (9th Cir.1986) ..............25

*Aloe Vera of America v. U.S.* 580 F.3d 867, 870-871 (9th Cir. 2009) ...................28

ii

*Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) .............................................29

*Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 237-41, 105 S.Ct. 3142, 3145-6(1985) ......................................................................................................16

*Centaur Classic Convertible Arbitrage Fund Ltd. V. Countrywide* ..................12, 24

*Cepeda v. Cowles Magazines & Broad., Inc.*, 392 F.2d 417, 419 (9th Cir. 1968) .40

*Coalition of Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1133 (9th Cir. 2012) ........................................................................................................................51

*CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2182 (2014) ......................................19

*Financial Corp*, 878 F. Supp. 2d, 1009, 1015 (C.D. Cal. 2011) .....................12, 24

*Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347,1361 (1974) .....................52

*Ellis v. City of San Diego, Cal*, 176 F.3d 1183, 1188 (9th Cir. 1999). ...................18

*Evans v. Alliance Funding*, 637 Fed. Appx. 418 (9th Cir. 2016) ....................12, 25

*Henry A. v. Willden,* 2014 WL 1809634 (2014) ...............................................53, 54

*Jablon v. Dean Wittier & Co.,* 614 F2d 677, 682 (9th Cir 1980) ...........................24

*Jesinger v. Nevada Federal Credit Union* 24 F.3d 1127, 1131 (1994) .................18

*John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 133 (2008) ..............19

*K.S. ex rel D.W. v. Armstrong*, 789 F.3d 962, 969 (2015) ......................................32

*Kirshner v. Uniden Corp of America*, 842 F.2d 1074, 1077 (9th Cir. 1988) .........15

*Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375 (1994) .........................29

*McCoy v. San Francisco*, 14 F.3d 28, 29 (9th Cir. 1994) ................................10, 19

*McDougal v. County of Imperial*, 942 F.2d 668, 674-75 (9th Cir. 1991) ..............19

*Meadow Valley Contractors, Inc. v. Johnson*, 89 F.Supp.2d at 1183.................16

*Missouri v. Fiske,* 290 U.S. 18, 27, 54 S.Ct. 18, 21 (1933) ....................................52

*Moreland v. Las Vegas Metropolitan Police Department,* 159 F.3d 365,369 (9th Cir. 1998) .................................................................................................................28

*Morgal v. Maricopa County Board of Supervisors, 284 F.R.D. 453, 458 (D. Ariz. 2012)*) ....................................................................................................................13

*Nevada Power Company v. Monsanto Co*. 955F.2d 1304, 1306 (1992) ..........17, 18

*New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S. Ct. 710, 726 (1964) 40

*Order of Railroad Telegraphers v. Railway Express Agency, Inc*., 321 U.S. 342, 348-349 (1944) ....................................................................................................19

*Pacquiao v. Mayweather*, 803 F. Supp. 2d 1208, 1213 (D. Nev. 2011) ...............40

*Peri & Sons Farms, Inc. v. Jain Irrigation, Inc.,* 933 F. Supp. 2d 1279, 1283–85 (D. Nev. 2013) ........................................................39

*Presidio Adventures Dev. I v. Countrywide Fin. Corp.*, No. 2:12-cv-01369, 2014 U.S. Dist. LEXIS 41737, at *20–22 (D. Nev. Mar. 26, 2014) ..............................39

*Seto v. Thielen*, 2013 WL 680973 *2, 519 Fed. Appx. 966, 969 (2013) ...............14

*Shafer v. City of Boulder*, 596 F.Supp.2d 915, 938 (2012) ............................17, 53

*Simpson v. Lear Astronics, Corp.,* 77 F.3d 1170, 1174 (1996) ...................….14, 31

*Telegraphers v. Ry. Express Agency, Inc*., 321 U.S. 342, 349 (1944) ...................20

*Terracon Consultants Western, Inc. v. Mandalay Resort Group*, 125 Nev. 66, 74, 206 P.3d 81, 86 (Nev. 2009) .......................................................39

*Walker v. Armco Steel Corp, 466 U.S. 740* (1978) ...........................................12, 19

*Wallace v. Kato*, 549 U.S. 384, 388 (2007) ......................................................10, 19

*Westlands Water Dist. V. Firebaugh Canal*, 10 F.3d 667, 673 (1993) .................27

**STATE CASES:**

*Barmettler v. Reno Air, Inc*. 114 Nev. 441,449, 956 p.2d 1382, 1387(199845, 47-48

*City of N. Las Vegas v. State Local Gov't Employee-Management Relations Bd*, 127 Nev. 631, 261 P.3d 1071,  (2011) ...................................................26

*J.J. Indus., LLC v. Bennett,* 119 Nev. 269, 273, 71 P.3d 1264, 1267 (2003) .........49

*Lubbe v. Barba,* 91 Nev. 596, 540 P.2d 115 (1975) ................................................45

*Nelson v. City of Las Vegas,* 99 Nev. 548, 556, 665 P.2d 1141, 1146 (1983) .....39

*Pacific Maxon, Inc. v. Wilson,* 96 Nev. 867, 870, 619 P.2d 816, 818 (1980) ........45

*Scott v. Corizon Health, Inc.*, 2014 Westlaw 1877431*4 (D.Nev. May 9, 2014) ..48

*State v. Second Judicial Dist. Court ex rel. County of Washoe*, 118 Nev. 609, 614,

55 P.3d 420 (2002) ................................................................................................53

## ADMINISTRATIVE CODE:

NAC 467.027(1) .......................................................................................................3

NAC 467.027(3) .......................................................................................................4

NAC 467.027(3)(b) ..................................................................................................4

NAC 467.077 ............................................................................................................3

## STATUES:

NRS 11.010.........................................................................................................27, 28

NRS 11.190(4)(e) ............................................................................................passim

NRS 11.250 .......................................................................................................19, 24

NRS 11.310 ................................................................2, 13, 27, 28, 29, 30

NRS 41.031(3) ...................................................................16, 52

NRS 41.100 ....................................................................13, 27, 28

NRS 41.100(1) ...................................................................28

NRS 132.130 ....................................................................27

NRS 190(3)(c) .................................................................11, 21, 23

NRS 190(4)(e) ...............................................................passim

NRS 467.012 ..................................................................3

NRS 467.022 ..................................................................35

NRS 467.040 ..................................................................3

NRS 467.070(1) ) ...............................................................3

NRS 467.100 ................................................................passim

NRS 467.100(3) ............................................................passim

NRS 467.100(8) ............................................................passim

NRS 467.1005 ..............................................................34, 36, 37, 42, 54

vii

NRS 622A.150(2)(a) ....................................................................16, 52

## **OTHER AUTHORITIES**

(94 F.R.D. 631, 637 (D.Kans. 1982) ......................................................28

28 U.S.C §636(b)(1)(A) 3 .................................................................13, 31

FRAP 10(a) .................................................................................15

Fed. R. Civ. P. 15(c)(1)B .................................................................51

Fed. R. Civ. P. 72(a) .................................................................13, 31, 41

# I.

## CORPORATE DISCLOSURE

FRAP 26.1 is not required for governmental entities.

# II.

## STATEMENT OF JURISDICTION

This is Patricia Harding Morrison's ("Morrison") appeal from the Judgment of the District Court granting summary judgment to the Nevada State Athletic Commission, Dr. Margaret Goodman and Executive Director Marc Ratner ("State Defendants"). 2016 WL 6246306, 101 Fed. R. Evid. Serv. 1071, SEOR 1 – 15. This Court has jurisdiction for this appeal pursuant to FRCP Rule 3(a).

# III.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Are all of the claims in the Amended Complaint time barred?

   a. Ms. Morrison's claims for negligence, defamation, fraud, negligent misrepresentation intentional infliction of emotional distress, and intentional interference with a contract were brought outside of the governing statutes of limitations and correctly dismissed by the Court below.

   b. Ms. Morrison claim to toll the statutes of limitations is irrelevant because tolling was not raised in the court below.

1

    c. Ms. Morrison was not the administrator or executor within the one

       year jurisdictional limitation to bring a survivorship action, pursuant

       to NRS 41,100 and NRS 11.310.

2. Does the failure of Ms. Morrison to timely appeal the Magistrate's

   Orders preclude appeal of non-dispositive motions?

3. Did the District Court below correctly find that there is no genuine

   dispute as to any material fact and that the State Defendants are entitled

   to summary judgment as a matter of law?

4. Should the NSAC, its Executive Director, and Chairman of the Medical

   Advisory Board been dismissed because they are immune from suit?

## III.

## <u>CONCISE STATEMENT OF THE CASE</u>

      This matter concerns events that took place in February 1996. Tommy

Morrison ("Boxer") was an applicant for a license to take part in unarmed combat in

Nevada. In Nevada, unarmed combat is governed by Chapter 467 of the Nevada

Revised Statutes ("NRS") and Nevada Administrative Code ("NAC"). The Nevada

Legislature vested the Nevada State Athletic Commission ("NSAC") "with the sole

direction, management, control and jurisdiction over all contests or exhibitions of

unarmed combat to be conducted, held or given within the State of Nevada, and no

contest or exhibition may be conducted, held or given within this state except in

accordance with the provisions of this chapter." NRS 467.070(1). The NSAC

2

employs an Executive Director who acts at the will of the Commission. NRS 467.040.

In order to take part in professional bout of unarmed combat (Boxing, MMA or Kickboxing) in the State of Nevada, a person must obtain a license from the NSAC. NRS 467.070(1), NRS 467.100, NAC 467.012. A professional license to fight is a privilege license. The applicant has the burden to show "general suitability, character, integrity, and ability to participate or engage in, or be associated with contests or exhibitions of unarmed combat."[1] NRS 467.100(3), NAC 467.027(1). To compete, the applicant must comply with all the medical requirements found in the NRS and NAC, including, but not limited to: NRS 467.100, NAC 467.012, NAC 467.022, NAC 467.027, and NAC 467.077. SEOR 200 – 202. One of the requirements is to provide a laboratory test that shows that the applicant is not infected with the human immunodeficiency virus ("negative test").[2] NAC 467.027(3)

---

[1] It is the responsibility of the applicant to provide all the medicals and requirements to be licensed. NAC 467. 022; SEOR 509: 341:14-18; SEOR 510: 343:18-25; SEOR 511: 352,10-17; SEOR 194-197; SEOR 200 – 202.

[2] Contrary to Ms. Morrison's argument, a "diagnosis" is not required. Only that the applicant show that he (or she) is not carrying the HIV virus which is a negative HIV test NAC 467.027(3).

3

On or about February 7, 1996, the Boxer applied for a license to compete on February 10, 1996 in Nevada. The Boxer arrived in Las Vegas three days before the scheduled bout with an incomplete application. He was missing his required medical examinations and tests. SEOR 150-151, SEOR 194-197, SEOR 200-202. Specifically, the Boxer had not submitted a negative test to show that he was not infected with the human immunodeficiency virus ("HIV"), although he could have had the test performed at any accredited laboratory within 30 days of submitting his application. NAC 467.027(3)(b). The Boxer told his examining physician, Dr. Voy, that he refused to take the test for religious reasons. SEOR 150-151.

The executive director, Marc Ratner, let the Boxer know that he did not have to take the test, but without it, he could not be licensed and the fight would be cancelled. SEOR 196:8-16. Dr. Voy ordered the test on February 8, 1996, and the HIV test was performed. SEOR 1065. The weigh-in was on February 9, 1996, and the Boxer was allowed to take part in the weigh-in but was not issued a license because his medicals were incomplete. SEOR 196:16-19

In the early afternoon of February 10, 1996, Executive Director Ratner was informed by the Commission Chairman that the Boxer had not provided a negative HIV test, and that the bout would be cancelled. SEOR 196:24-27. Director Ratner was also informed by the Chairman of the Commission not to provide any specific reason, and only explain that the Boxer did not have medical clearance. SEOR 197:

4

1-3.

Director Ratner met with the Boxer's personal representative, Tony Holden, as well as the Boxer's personal friend and attorney Stuart Campbell, and explained that the bout was to be cancelled because the Boxer did not have medical clearance. SEOR 197:4-7. On February 10, 1996, the Boxer was not issued a license because he did not submit a negative HIV test. SEOR 200-202.

The Boxer immediately left Las Vegas and returned to his home in Oklahoma. Upon return to Oklahoma, in Mr. Holden presence, the doctor drew blood from the Boxer and sent it to a laboratory for HIV testing. The laboratory confirmed the positive results within a week of returning from Las Vegas. SEOR 331, p. 45:18-25, SEOR 332, p. 48:11-18; SEOR 334, p. 57:1-10, 56:22-25; SEOR 345, p. 101:20-23, *see also* SEOR 148.

The Boxer's first wife ("Dawn I"), was also with the Boxer for the blood tests performed when he returned to Oklahoma from Las Vegas in February 1996. She also witnessed the blood draw and testified that the results of the tests confirmed that the Boxer was positive for HIV. SEOR 380-381. The Boxer told Dawn I that the reason that he was retested several times was to make sure that the HIV test results were positive. SEOR 380, SEOR 382. Thus, the Boxer did not rely on the 1996 Las Vegas test.

After receiving the additional results from tests performed after the Boxer's

5

return to Oklahoma, Tony Holden held a press conference in Tulsa where Mr. Holden announced, for the first time, in the presence of the Boxer, that the Boxer had tested positive for HIV. SEOR 148; SEOR 332, p. 47:3-6, 8-21. Later that same day, the Boxer was interviewed by Larry King and later by Maria Shriver. During both interviews, the Boxer personally announced to the world that he had tested positive for HIV, and that he had been retested to confirm the results. SEOR 332, p. 49:15-21, SEOR 333, p. 52:6-16, SEOR 251, p. 70:18-25, SEOR 381, p. 52:17-25, 53:1-2, SEOR 382, 57:21-25,

SEOR 383, p. 58:1-25.

Additionally, around the same time, the Boxer's friend and personal physician, Dr. Koprivica, personally drew 2 vials of blood from the Boxer and sent the vials of blood to the CDC, to perform two separate HIV tests. SEOR 160, SEOR 212, p. 23:5-25, 24,1-9; SEOR 346, pp. 103-104. The HIV tests came back from the CDC as positive showing a very high viral load. Doctor Koprivica suggested that the Boxer see an infectious disease specialist. SEOR 212, p. 25:8-23.

Within a few weeks, Mr. Holden accompanied the Boxer to see HIV specialist, Dr. Ho in New York. Dr. Ho is the same HIV specialist who treated Magic Johnson. SEOR 332, p. 46:6-11, SEOR 333, p. 52:10-20. Dr. Ho tested the Boxer and confirmed that he was positive for HIV. SEOR 333, p. 53:7-25. The evidence in the record shows that Morrison consistently tested positive for HIV. SEOR 399,

6

pp. 124:24-25, 125:1-7. ("I was there when the doctors told him that he was HIV positive" they looked at his "lab results with T-Cell- - T-Cell counts).

By the late 1990's the Boxer's positive HIV status progressed into AIDS. One of his physicians, Dr. Nemachek, told the Boxer, in the presence of Dawn I, that his HIV was progressing into AIDS. SEOR 387, p. 76:14-25. In 1999, another of the Boxer's physicians, Dr. Hennigan, noted that the Boxer's T-Cell count was only 4 and his viral load was greater than 75,000 and the Boxer was suffering from HIV associated encephalopathy. SEOR, pp. 1023-1027, 1001-1010.

Mr. Holden testified that he was present when Morrison was told that he actually had AIDS in 1996 or 1997. SEOR 334, p. 57:3-11.

The medical records, which reflect the Boxer's medical condition from 1996 until his death in 2013 conclusively show that the 1996 test was not a false positive, and that the Boxer tested positive for HIV more than a hundred times until his death in 2013. SEOR 744-922. From the time that Ms. Morrison met the Boxer in the spring of 2009, they were both in denial of the Boxer's HIV. SEOR 649-650. ("We have provided her on numerous occasions with documentation from our institution which does show, without a doubt, the patient Is HIV positive, in fact, basically is at end-stage AIDS"), SEOR 651-653. ("Nursing staff do tell me that the patient's wife has informed them that the patient does not have HIV").

7

Ms. Morrison, the Boxer's third wife, initiated this case after the Boxer's death claiming that the Boxer was falsely diagnosed with HIV in 1996, and that the alleged false diagnosis ruined his life. The case started as a claim for negligence and other state law claims, but it appears from her list of issues in this Appeal that she is trying to raise issues that were not part of the Amended Complaint. SEOR 624-646. *see also* Ms Morrison's list of Issues for Review.

It is extremely relevant that Ms. Morrison testified that she has no personal knowledge of any event prior to the spring of 2009 when she met the Boxer.[3]

---

[3] SEOR 443, pp. 74:1-25, 75:1-25, 76:1-25, 77:1-16 (No first-hand knowledge of the agreement with Don King, who drafted it, if it was signed, where the rest of the document is, if there were further negotiations after Morrison lost to Lennox Lewis); SEOR 448, pp. 97:3-11, 22-23, SEOR 449, p. 98:1-4 (no firsthand knowledge about the arrangements and who was present in Las Vegas with Morrison in February 1996); SEOR 454, p. 121:5-16 (no knowledge as to how Morrison found Dr. Voy or if anyone was with him when he went to see Dr. Voy); SEOR 455, p. 124:1-4 (no firsthand knowledge of what transpired during Morrison's physical examination by Dr. Voy); SEOR 455, p. 125:16-23, SEOR 465, p. 165:10-15 (no knowledge of any circumstances surrounding the blood draw including who drew the blood or where the blood was drawn for the HIV test in February 1996); SEOR 457, p. 130:14-18 (no knowledge whether it was standard

8

On September 24, 2016, the District Court granted the Defendants summary judgment on all causes of action. Not only were the claims barred by the applicable statutes of limitation, but Ms. Morrison failed to provide any evidence to support any of her state law claims. SEOR 001-015.

/ / /

/ / /

/ / /

## IV.

## **SUMMARY OF ARGUMENT**

### 1. *The Claims are time barred*

at the weigh in to sign a consent form); SEOR 463-464 (no knowledge of the specific brands of the tests used by Quest in February 1996 to test Morrison's blood); SEOR 467, p. 173:16-17, SEOR 490, p. 265:5-12 (no specific knowledge of what Marc Ratner told Tony Holden), SEOR 486, p. 176:13-18 (no knowledge of who announced that the fight was cancelled); SEOR 469,178:21-24 (does not know if anyone from the NSAC announced the reason for the cancellation of the bout), SEOR 471, p. 186:3-10 (Does not know if the Boxer ever had HIV antibody testing performed after he left Las Vegas in 1996).

**a. <u>All causes of action are barred by the governing Statutes of Limitations</u>**

All of the claims in the Amended Complaint (SEOR 624-646) are barred under the applicable statutes of limitation. Claims accrue when the plaintiff has a complete and present cause of action and can file suit to obtain relief. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). This occurs when the plaintiff knows, or has reason to know, of the alleged events that form the basis of the cause of action. *McCoy v. San Francisco*, 14 F.3d 28, 29 (9th Cir. 1994).

As will be shown below, the evidence in the record shows that starting in 1996, and continuing throughout the rest of his live, the Boxer began to dispute the fact that he was HIV positive. As late as July 15, 2011, an email produced by Ms. Morrison between the Boxer and his 1996 attending physician in Las Vegas, Dr. Voy, confirms that Dr. Voy did not diagnose the Boxer with HIV:

> "Hello Tommy, I certainly support your desire to get a boxing license. You are correct; I did not diagnose you as having AIDS. I did your required licensing exam and found you physically qualified and fit to box at the time."

SEOR 743.

Thus, contrary to the assertion of Ms. Morrison that she first realized in December 2013 that Dr. Voy had not diagnosed the Boxer with HIV, the Boxer and

10

Ms. Morrison[4] were well aware of Dr. Voy's position back in July 2011.[5]  If the Boxer believed that there was some legal basis for an action, the Boxer could have brought the claims prior to his 2013 death, but never did.

Even using the July 15, 2011 email from Dr. Voy as the latest possible date that confirmed to the Boxer that the attending physician did not diagnose him with HIV prior to the cancelled bout in February 1996, the 2 year statute of limitations on the negligence claim would have run on July 14, 2013 (NRS 11.190(4)(e)), the 2 year statute of limitations for Defamation (including libel and slander) would have also run on July 14, 2013 (NRS 11.190(4)(e)), the 3 year statute of limitations for the fraud claim would have run on July 14, 2014 (NRS 190(3)(c)), the 2 year statute of limitations on the negligent        misrepresentation claim would have run on July 14, 2013 (NRS 11.190(4)(e)), the 2 year statute of limitations on the intentional infliction of emotional distress claim would have run on July 14, 2013 (NRS 11.190(4)(e)), and the  3 year statute of limitations for the intentional interference with a contract would have run on July 14, 2014 (NRS 190(3)(c)). Thus, although the claims probably accrued as early as 1996, and even giving Ms. Morrison the benefit of the most recent date that the claims accrued, the statute

---

[4] The July 15, 2011 email was part of Ms. Morrison's disclosures.

[5]  More than 3-1/2 years before the December 13, 2014 date as alleged by Ms. Morrison in the Amended Complaint.

of limitations had run for all of the state law claims prior to the time that the Complaint was filed.

### a. Tolling cannot be considered because it was raised for the first time in this appeal.

Ms. Morrison never raised tolling in the Court below, and cannot raise it now for the first time on appeal. *Evans v. Alliance Funding*, 637 Fed. Appx. 418 (9th Cir. 2016). The Federal Court applies state law to state law claims and also uses the state law tolling rules. See generally *Walker v. Armco Steel Corp, 466 U.S. 740* (1978), *Centaur Classic Convertible Arbitrage Fund Ltd. V. Countrywide Financial Corp*, 878 F. Supp. 2d, 1009, 1015 (C.D. Cal. 2011). Accordingly, the arguments made by Ms. Morrison with respect to tolling the statute of limitations based on alleged, but undocumented incarceration is irrelevant and does not apply.[6]

### b. The District Court did not have jurisdiction because the Survivor Claim was not brought until more than a year after the Boxer died.

In Nevada, a survivor action can only be brought by an executor or administrator, and must be brought within one year of the death. NRS 41.100, NRS 11.310. That did not happen in this case because Ms. Morrison was not

---

[6] Ms. Morrison refused to answer questions or provide documentation of the Boxer's criminal history when asked during her deposition. SEOR 441, pp. 67-68.

appointed the administrator until 15 months after the Boxer's death. As a result, the District Court did not have subject matter jurisdiction over this matter when the Complaint was filed in July 2014. Although Ms. Morrison claimed to be the "surviving spouse," that designation does not provide standing in a survivor action in Nevada.

### 2. Ms. Morrison failed to timely appeal the magistrate's Orders on non-dispositive motions pursuant to Fed. R. Civ. P. 72(a).

During the course of the litigation, several non-dispositive motions were properly heard by the Magistrate. 28 U.S.C §636(b)(1)(A). Fed. R. Civ. P. 72(a). The Magistrate issued Orders, including denying leave to file a second amended complaint and excluding certain evidence (Leave to file a Second Amended Complaint SEOR 571-623, SEOR 53-59, Motions to Exclude Evidence, SEOR 50-52, SEOR 43-49, SEOR 36-42, SEOR 24-35, and SEOR 16-24). Once the Magistrate issued the Orders, the Rules allow 14 days to object to the District Court Judge. Fed. R. Civ. P. 72(a). Ms. Morrison failed to object to the Order denying the motion for leave or any of the other Orders, and as a result, Ms. Morrison forfeited her right to appellate review of the Magistrate's Orders. See generally, *Morgal v. Maricopa County Board of Supervisors, 284 F.R.D. 453, 458 (D. Ariz. 2012); Seto v. Thielen*, 2013 WL 680973 *2, 519 Fed. Appx. 966, 969 (2013).

Ms. Morrison failure to timely appeal the magistrate's decision to the district judge forecloses consideration of these issues on appeal. *Simpson v. Lear Astronics, Corp.,* 77 F.3d 1170, 1174 (1996).

***3. The District Court below correctly found that there is no genuine dispute as to any material fact and that the State Defendants are entitled to summary judgment as a matter of law.***

The burden of proof is on the Ms. Morrison to show that the NSAC or its executive director cannot legally rely on the test results from an accredited laboratory. Ms. Morrison's attack on the process used to test for HIV in 1996 is of no concern to the State Defendants. The State Defendants are not medical providers and were not involved with the testing process. The State Defendants were not involved with the Boxer's choice of provider to perform the HIV testing, or what specific tests were performed. The Boxer could have gone to any accredited lab to provide the necessary medicals to show that the Boxer was not carrying the HIV virus (NAC 467.027(3)), instead the Boxer arrived in Las Vegas a few days prior to the fight with an incomplete application and incomplete medicals.

The Boxer's attending physician in Las Vegas, Dr. Voy, ordered the HIV test, and after initially refusing to take the test, the Boxer had the test performed. SEOR 150-151. The testing process was performed by an accredited laboratory which

14

involved an algorithm of tests, and showed that the Boxer was positive for the HIV virus. SEOR 1065. The algorithm of tests performed by the laboratory was the standard of care for HIV testing in 1996. SEOR 103-123.

Ms. Morrison did not designate an expert or disclose any admissible evidence to dispute the standard of care in 1996. She did not provide any evidence to challenge any of the other undisputed facts contained in the State Defendant's Motion For Summary Judgment. Ms. Morrison did not present any admissible evidence to show that the Boxer was not HIV positive. As a result, the District Court considered the pleadings, the arguments, and the record[7] and correctly found that there is no genuine dispute as to any material fact, and properly granted the State Defendant's summary judgment.

**4.** ***The State Defendants are immune from suit and should have been dismissed from this case.***

---

[7] Documents that were "not filed with the district court or admitted into evidence by that court are not part of the clerk's record and cannot be part of the record on appeal." *Kirshner v. Uniden Corp of America*, 842 F.2d 1074, 1077 (9th Cir. 1988). *See also,* FRAP 10(a). Accordingly, this Court should exclude the "Glossary" found in Ms. Morrison's Appendix A, pp. 1-27 because it was not part of the record before the Court below.

The Eleventh Amendment prohibits actions against a state in Federal Court in circumstances in which the state has not waived such immunity or such immunity has not been abrogated by law under Section Five of the Fourteenth Amendment to the United States Constitution. *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 237-41, 105 S.Ct. 3142, 3145-6(1985) (superseded by statute on other grounds), *Meadow Valley Contractors, Inc. v. Johnson*, 89 F.Supp.2d at 1183. The State of Nevada specifically retained its Eleventh Amendment immunity by statute. NRS 41.031(3) ("The State of Nevada does not waive its immunity from suit conferred by Amendment XI of the Constitution of the United States"). Accordingly, the NSAC should have been dismissed. In addition, NRS 622A.150(2)(a) provides immunity from civil liability to a government entity, officer or employee for " any decision or action taken in good faith and without malicious intent in carrying out the provisions of this chapter or any law or regulation governing occupational licensing.

Discretionary function immunity applies to discretionary functions performed by an official. Under discretionary function immunity, a government official is immune from suit when the actions taken involve an element of individual judgment or choice and are based on considerations of social, economic, or political policy. *Shafer v. City of Boulder*, 596 F.Supp.2d 915, 938 (2012).

In 1996, after receiving notification of the Boxer's positive HIV results,

16

Director Ratner did not publically announce to the media the reason for the cancellation of the fight. He made a policy decision in good faith that it would be up to the Boxer to as to what to tell the media and when to make the announcement.

In 2007, when Dr. Margaret Goodman was informed that the Boxer was planning to apply for a license to fight in Nevada, as head of the Medical Advisory Board, she used her discretion to ask the laboratory if the test used in 1996 was an accurate test. Accordingly, Dr. Goodman and Director Ratner should have been granted immunity because it is without question the actions of both Dr. Goodman and Director Ratner in carrying out their functions were taken in good faith, and the decisions they made were made for policy reasons.

## V.

## <u>ARGUMENT</u>

### A. Standard of Review

The granting of summary judgment is reviewed de novo. *Nevada Power Company v. Monsanto Co*. 955F.2d 1304, 1306 (1992). When a matter, such as this, is before the federal district court on diversity jurisdiction, the court uses state substantive law and state statutes of limitations. *Nevada Power Company v. Monsanto Co*. 955F.2d 1304, 1306 (1992).

17

A district court's interpretation of state law is reviewed de novo. *Nevada Power Company v. Monsanto Co*. 955 F.2d 1304, 1306 (1992). The de novo review is governed by the same standards used by the district court under Fed. R. Civ. P. 56—"viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Jesinger v. Nevada Federal Credit Union* 24 F.3d 1127, 1131 (1994). In doing so, the court does not reweigh the evidence or determine the truth of the matters asserted, only determine if there is a genuine issue for trial. *Id*.

Here, the District Court properly found that Ms. Morrison's claims were all outside of the governing statutes of limitations and moreover, even if the statutes were not applicable, Ms. Morrison did not present any evidence to prove any of her State law claims or refute the defense expert. SEOR 001-015.

## 1.   <u>All Claims are Barred by the Applicable Statutes of Limitations.</u>

### a.   **Standard of review**

Dismissal of action on statute of limitations grounds is reviewed de novo. *Ellis v. City of San Diego, Cal*, 176 F.3d 1183, 1188 (9th Cir. 1999).

### b.   **The governing Statutes of Limitations Foreclose Every Cause of Action.**

18

Limiting a time to bring an action "promotes justice by preventing surprises through [the] revival of claims that have been allowed to slumber until evidence has been lost, memories have faded and witnesses have disappeared." *Order of Railroad Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348-349 (1944). Unless some tolling statute applies,[8] "most statutes of limitations seek primarily to protect defendants against stale or unduly delayed claims." *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008).

A statute of limitations "creates a time limit for suing in a civil case, based on the date when the claim accrued." *CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2182 (2014). The Statutes of Limitations on state law claims in a diversity action is governed by state law. *Walker v. Armco Steel Corp*, 466 U.S. 740, 751 (1980).

Claims accrue when the plaintiff has a complete and present cause of action and can file suit to obtain relief. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). This occurs when the plaintiff knows or has reason to know of the alleged events that form the basis of the cause of action. *McCoy v. San Francisco,* 14 F.3d 28, 29 (9th Cir. 1994). Continuing impact from past violations does not extend the statute of limitations. *McDougal v. County of Imperial*, 942 F.2d 668, 674-75 (9th Cir. 1991).

---

[8] Which, pursuant to NRS 11.250, does not apply here.

19

Even when a plaintiff "has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 349 (1944)).

In Nevada, the applicable statutes of limitations for state law claims at issue here is found is found at Nev. Rev. Stat. Chapter 11 which provides:

> 11.190  Periods of Limitations.  Actions other than those for the recovery of real property, unless further limited by specific statute, can only be commenced as follows: . . .
> *          *          *
> 3.   Within 3 years:
> *          *          *
> (c) An action for taking, detaining or injuring personal property, including actions for specific recovery thereof, but in all cases where the subject of the action is a domestic animal usually included in the term "livestock," which has a recorded mark or brand upon it at the time of its loss, and which strays or is stolen from the true owner without the owner's fault, the statute does not begin to run against an action for the recovery of the animal until the owner has actual knowledge of such facts as would put a reasonable person upon inquiry as to the possession thereof by the defendant.
> *          *          *
> 4.  Within 2 years: . . .
> *          *          *
> (e)  An action to recover damages for injuries to a person or for the death of a person caused by the wrongful act or neglect of another.

Therefore, pursuant to the applicable Nevada law,  there is a 2 year statute of limitations on the negligence, defamation( including libel and slander), negligent

20

misrepresentation claim, and intentional infliction of emotional distress claim (NRS 11.190(4)(e)), and a 3 year statute of limitations on the fraud claim and intentional interference with a contract claims (NRS 190(3)(c). The question then becomes when the claims accrued.

The evidence in the record shows that the Boxer's claims accrued when he began to doubt his HIV status. In 1996, the Boxer's HIV status became public. However, information in the record provides that the Boxer may have first tested positive for HIV as early as 1989. SEOR 929-932, SEOR 253, p. 80:1-11, SEOR 935-937, SEOR 938-940.

In 1996, even after receiving a number of confirming tests[9] from various sources, the Boxer doubted his HIV positive status. SEOR 436 p. 48:1-16, SEOR 332, p. 48:11-15. The Boxer thought that HIV was a government conspiracy. SEOR 334, pp. 54:15-25, 55:1-20.

On July 19, 2006, the Boxer emailed his first ex-wife, to tell her that he did not have HIV. SEOR 390, pp. 87:6-25, 89:10-13; SEOR 923. ("I was right all along Dawn, I never had hiv to start with…").

In 2007, the Boxer attempted to re-enter professional boxing, prompting inquiries to the NSAC about the events of 1996. The Chairman of the Medical

---

[9] SEOR 331, pp. 45:15-22, 48:11-18, SEOR 174-13, pp. 23:21-15, 24:1-8.

21

Advisory Board checked with the laboratory that performed the test in 1996 about the efficacy of the testing process used in 1996. SEOR 198 – 199.

In the spring of 2009, Ms. Morrison met the Boxer. He told her at that time, that he believed that the 1996 HIV test was a false positive. SEOR 436, p. 48:1-16.

On October 21, 2009, Morrison requested a copy of his file from the NSAC. SEOR 126, SEOR 124. Director Kizer, sent a copy of his file on October 22, 2009. SEOR 126, SEOR 124. If the Boxer had planned to protest the fact that the fight was cancelled, he could have done so.

In 2010, the Boxer again attempted to get a license to box in Nevada, but did not complete the application when the Commission doctor required a Western Blot test. SEOR 167.

In 2011, the Boxer communicated directly with Dr. Voy to see if he had diagnosed him in 1996. On July 15, 2011, the Boxer received an email from Dr. Voy where Dr. Voy clearly and unambiguously states:

> "Hello Tommy, I certainly support your desire to get a boxing license. You are correct; I did not diagnose you as having AIDS. I did your required licensing exam and found you physically qualified and fit to box at the time."

SEOR 743.

22

Thus, for statute of limitations purposes, the Boxer's claims accrued at the earliest, according to Ms. Morrison's testimony, in February 1996 and at the latest in July 15, 2011. There is no question that the claims had accrued by the time that the Boxer sent his ex-wife the 2006 email stating that he never had HIV. Nevertheless, even using the latest possible date for the claims to accrue, the 2 year statute of limitations on the negligence claim (NRS 11.190(4)(e)) would have run on July 14, 2013, the 2 year statute of limitations on the Defamation claims (including libel and slander) (NRS 11.190(4)(e)) would have run on July 14, 2013, a 3 year statute of limitations on the fraud claim (NRS 190(3)(c)) would have run on July 14, 2014, a 2 year statute of limitations on the negligent misrepresentation claim (NRS 11.190(4)(e)) would have run on July 14, 2013, a 2 year statute of limitations on the intentional infliction of emotional distress claim (NRS 11.190(4)(e)) would have run on July 14, 2013, and a 3 year statute of limitations on the intentional interference with a contract claim (NRS 190(3)(c)) would have run on July 14, 2014. The original complaint was not filed until July 29, 2014, and there is no question that Ms. Morrison did not have standing when the Complaint was filed.

Accordingly, all Ms. Morrison's claims are outside of the applicable statute of limitations and were properly dismissed by the District Court. SEOR 1 – 15.

### c.    There is No Legal Basis to Toll the Statutes of Limitations

23

### i. Morrison raises the question of tolling against the State Defendants for the first time on appeal

When a motion to dismiss is based on the running of the period of the statute of limitations, dismissal may be granted if the assertions in the complaint would not permit the plaintiff to prove that the statute of limitations was tolled. *Jablon v. Dean Wittier & Co.*, 614 F2d 677, 682 (9th Cir 1980). The question of tolling is governed by state law. *Centaur Classic Convertible Arbitrage Fund Ltd.v. Countrywide Financial Corp*, 878 F.Supp.2d 1009, 1014 (C.D. Cal. 2011).

Nevada's tolling statute applies in very limited situations, and does not toll the statute for any claims against the State Defendants. NRS 11.250. The Boxer was not under 18, and there is no evidence in the record that he was disabled or incarcerated at the time when the cause of action accrued. NRS 11.250, CD #147-7, p. 19, 67-68. Moreover, contrary to the assertion of Ms. Morrison, the Magistrate did not toll the statute of limitations in December 2014 when she stayed discovery (SEOR 62) and the District Court did not toll the statute when it dismissed the Complaint in 2015. SEOR 60 – 61I), Appeal Docket Entry ("DE") # 5-1, p.83.

An argument for tolling cannot be made for the first time on appeal. *Alexopulos by Alexopulos v. Riles,* 784 F.2d 1408, 1411 (9th Cir.1986) (tolling argument waived when raised for the first time on appeal). In *Alexopulos*, the

24

court found that the party invoked tolling for the first time on appeal and did not support the claim with any evidence of how the tolling should apply. As a result, the court found that the tolling argument was waived. *See Alexopulos by Alexopulos v. Riles,* 784 F.2d 1408, 1411 (9th Cir.1986); *Evans v. Alliance Funding*, 637 Fed Appx 418 (9th Cir 2011) (unreported) (made no argument for tolling before the district court); see also *Acosta–Huerta v. Estelle,* 7 F.3d 139, 144 (9th Cir. 1992) (claims unsupported by argument on appeal are waived). Here, there is no evidence in the record to support Ms. Morrison's claim for tolling.

Ms. Morrison did not make any argument for tolling at the District Court below prior to the dismissal of the Amended Complaint. SEOR 1 – 15. On appeal, Ms. Morrison alleges that tolling should apply because the Boxer was incarcerated, but never provided any evidence of the Boxer's criminal record. During her deposition, Ms. Morrison refused to provide any information. SEOR 441, pp. 67-68. Ms. Morrison should not benefit from facts that she refused to supply when directly questioned on this subject at her deposition. As a result, tolling cannot apply to any claims against the State Defendants.

Equitable tolling only applies when there is excusable delay because a reasonable Plaintiff would not have known of the existence of a possible claim. *City of N. Las Vegas v. State Local Gov't Employee-Management Relations Bd*, 127 Nev. 631, 261 P.3d 1071, (2011). Equitable tolling does not apply because

the testimony in the record shows that the Boxer, during his lifetime, explored his legal rights and discussed the possibility suing the NSAC because he wanted to fight again. SEOR 255, pp. 86:22-25, 87:1-25, 88:1-25, 89:1-4.

Furthermore, between February 10, 1996 until the time that the Boxer died, the Boxer never objected to the results of the test being telephoned to the NSAC, nor did the Boxer ever object to Marc Ratner notifying Tony Holden that he was not medically cleared to fight. SEOR 335, pp. 59:24-25, 60:1-3, 60:10-13, 60:18-23; SEOR 274, pp. 162:21-25; 163:1-8; SEOR 392, pp. 96:15-25, 97:1-3.

In 2009, after receiving copies of the file, the Boxer still did not object to the consent form that he signed in 1996 or the prefight questionnaire that he filled out on the opposite side of the consent form. SEOR 160-161; SEOR 242, p. 37:2-25, SEOR 243, p. 38:1-25; SEOR 268-269; SEOR 203; SEOR 274, pp. 162:21-25, 163:1-8; SEOR 327, pp. 26:24-25, 27:1-3, SEOR 335, p. 60:10-22; SEOR 392, p. 96:19-21.

Moreover, the people who were close to the Boxer around 1996, testified that Morrison never planned to contest the cancellation of the fight and did not contest the positive HIV test results from 1996.

> Q: Did he ever tell you that he wished to contest the finding of the Nevada State Athletic Commission's findings that he was unable to box?
> A: No, because he took his own test and it had the same result, so I never heard that from him at that time.

SEOR 338, p. 71:5-11.

26

Thus, if the boxer planned to institute a lawsuit, he had the opportunity to do so when he was still alive and there is absolutely no reason to toll any statute of limitations.

### d. The Survival Action was Not Timely

#### i. NRS 11.310 Provides a Jurisdictional Bar to this Survival Action.

The lack of subject matter jurisdiction can be raised at any time, including on appeal. *Westlands Water Dist. V. Firebaugh Canal*, 10 F.3d 667, 673 (1993). In Nevada, a cause of action which has accrued is generally not lost due to the death of the person, but it can only be maintained by the decedent's executor or administrator. NRS 11.310, NRS 41.100. An "administrator" is "a person not designated in a will who is appointed by the court to administer an estate." NRS 132.040. An "executor" is "a person nominated in a will and appointed by the court to execute the provisions of the will and administer the estate of the decedent." NRS 132.130.

Chapter 11 of the Nevada Revised Statutes governs "Limitations of Actions." Pursuant to NRS 11.010, "[c]ivil actions can only be commenced within the periods prescribed in Chapter 11, after the cause of action shall have accrued, except where a different limitation is prescribed by statute." NRS 11.010.

27

NRS 11.310 provides for a one-year statute of limitations to bring a survival action.[10]

The party bringing a survival action has the burden of demonstrating that it meets the specific requirements. *Moreland v. Las Vegas Metropolitan Police Department,* 159 F.3d 365,369 (9th Cir. 1998) In Nevada, survival actions are governed by NRS 41.100. A survival action must be brought by the decedent's executor or administrator. NRS 41.100(1); *see also generally Moreland v. Las Vegas Metropolitan Police Department,* 159 F.3d 365, (9th Cir. 1998) (Claims dismissed because Mother and son failed to claim that they had been formally appointed as representatives of the decedent's estate.).

Furthermore, pursuant to Chapter 11, it is clear that the Nevada Legislature intended to limit the time that an executor or administrator can bring a survival action to one year from the date of death. *See generally Aloe Vera of America v.*

---

[10] Ms. Morrison's citation to a district of Kansas case (94 F.R.D. 631, 637 (D.Kans. 1982) is misplaced. Survivorship is a state action and the laws in Kansas do not apply in Nevada. The Nevada statutes allow the executor or administrator one year from the date of death to file a survivor action and do not provide for tolling or relation back. So what may be OK in Kansas, is not OK in Nevada.

28

*U.S.* 580 F.3d 867, 870-871 (9th Cir. 2009). As a result, the one-year statute of limitations in NRS 11.310 is jurisdictional.

A federal district court may not expand a grant of jurisdiction by judicial decree. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375 (1994). When a federal court determines that it does not have subject matter jurisdiction, the entire case must be dismissed. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

On July 24, 2014, Ms. Morrison filed a Complaint claiming to be the Boxer's "surviving spouse." A surviving spouse is not necessarily an executor or an administrator, and the Court dismissed the Complaint and Ordered Ms. Morrison to show that she had standing. SEOR 60-61I.

The Amended Complaint provides that Ms. Morrison brought this action as a survival action. SEOR 624-646. The Amended Complaint alleges that Morrison died on September 1, 2013. SEOR 627:¶15. According to the Amended Complaint, Plaintiff was not appointed administrator of the estate until December 29, 2014, over a year and three months after the Boxer died. SEOR 626:¶10.

Thus, Ms. Morrison did not have standing on July 24, 2014 when she filed the original Complaint because she was neither the administrator nor executor of the Boxer's estate as required pursuant to NRS 41.310. Ms. Morrison did not have standing to file the suit until December 29, 2014 which was more than fifteen months after the Boxer's death.

29

As a result, the Court below did not have subject matter jurisdiction to hear the Complaint. On December 2, 2014, the Magistrate only stayed discovery, and did not toll any statues. SEOR 62. Likewise, on September 30, 2015, when the District Court dismissed the Complaint and Ordered Ms. Morrison to show that she has standing and that she cure a number of pleading deficiencies, the District Court did not toll any statues. SEOR 60-61I.

Furthermore, the untimely appointment as administrator does not relate back to the date of the original Complaint. The Federal Rules of Civil Procedure 15(c) provides that the only time an amended pleading relates back to the original complaint is when "the law that provides the applicable statute of limitations allows relation back." Fed. R.Civ. P. 15(c). The jurisdictional limitation in NRS11.310 does not provide for relation back.

Because subject matter jurisdiction did not exist when the Complaint was filed on July 24, 2014 and because Ms. Morrison admits that she was neither the executor nor administrator of Morrison's estate until more than one year after the Boxer's death, Ms. Morrison failed to comply with the jurisdictional limitations of a survivor claim. As a result, this case must be dismissed for failure to comply with NRS 11.310 and NRS 41.010.

/ / /

/ / /

30

**2.    Ms. Morrison failed to timely object to the Magistrate's Orders**

When a party fails to file a timely objection to a non-dispositive magistrate's order with the District Judge, the party is barred from pursuing appellate review of that order.    *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1174-175(1996). Magistrates have the jurisdiction to determine non-dispositive motions. 28 U.S.C §636(b)(1)(A).    Fed. R. Civ. P. 72(a).    If a party objects to the magistrate's decision, they must file an objection within 14 days of the Order or they forfeit their chance to argue their objection on appeal.

Ms. Morrison incorrectly argues that the Court erred because the Defendant's Motion for Summary Judgment and the Court's Order granting the Motion for Summary  Judgment did not address the Second Amended Complaint .Appeal Brief  DE#5-1  at 25, 57.   Ms. Morrison's Motion for Leave to Amend the Amended Complaint  (CD #   105) was denied by the Magistrate (SEOR 53-59). Ms. Morrison's failure to file an objection to the Magistrate's Order denying the Second Amended Complaint precludes this Court from considering the denial of the Second Amended in this appeal.

In denying the second amended complaint, the Magistrate noted that the District Judge dismissed the Complaint gave Morrison 30 days to fix the deficiencies, specifically with respect to negligence, defamation and fraud. CD #182.  The Magistrate properly denied Ms. Morrison's Motion for Leave because

the new claims were not related to the old claims and discovery was nearly completed. *See generally. Nelson v. City of Las Vegas,* 99 Nev. 548, 556, 665 P.2d 1141, 1146 (1983) (when amended claims state new causes of action with a different source of damages, they do not relate back to the original claims). Ms. Morrison's attempt to add entirely new causes of action with new sources of damages was the result of the evidence in the record that would preclude the claims in the Amended Complaint, which included evidence showing that the Boxer tested positive for HIV more than a hundred times, and that the Boxer had also been on anti-retroviral medication for HIV.

### 3. The District Court's Factual Findings are Correct.

A. Standard of Review

The standard of review for the district Court's factual findings is whether the findings are clearly erroneous. *K.S. ex rel D.W. v. Armstrong*, 789 F.3d 962, 969 (2015). Fed.Rules Civ.Proc.Rule 52(a)(6) (Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility).

The State Defendant's Motion for Summary Judgement provides factual information that was either not disputed by Ms. Morrison, or that Ms. Morrison failed to present any evidence, expert or otherwise to refute the undisputed facts.

32

a. **Negligence**

i. **Plaintiff has failed to show any facts that support a claim for Negligence against any State Defendant.**

To prove negligence, a plaintiff must show a duty or obligation that is recognized by the law that requires a defendant to conform to a certain standard of conduct. Here, Ms. Morrison did not show that any State Defendant owed the Boxer a duty to issue a license or allow him to fight in Nevada.

ii. *Morrison failed to show that any of the State Defendants Owed Morrison a duty recognized by law.*

It is undisputed that Ms. Morrison agrees that the Boxer owed a duty to the NSAC and its Executive Director to comply with the licensing requirements if he wanted to take part in professional unarmed combat in Nevada.[11] The requirements include providing the completed license application and medicals in

---

[11] Ms. Morrison testified that she is aware that it is the applicant's responsibility to comply with the requirements contained in chapter 467 of the NRS and NAC. SEOR 339, p. 75:4-19. This fact is not in dispute.

Q: …Whose responsibility was it to provide that test to the Athletic Commission?
A: The licensee.
Q: Okay. The person applying for the license, correct?
A: Correct
SEOR 510, p. 343:18-25.

33

a timely manner. SEOR 194-197, SEOR 200-202. Pursuant to NRS and NAC 467, neither the NSAC, it's Executive Director nor Medical Advisory Board owe an applicant a legal duty to issue a license if the applicant does not meet the requirements. SEOR 194-197. These facts are undisputed.

NRS 467.100(3) provides that an applicant has the burden to show "general suitability, character, integrity, and ability to participate or engage in, or be associated with contests or exhibitions of unarmed combat." Because the Boxer was unable to make this showing, he was properly denied a license.

Moreover, any medical record considered when deciding whether to grant his license is public information. NRS 467.1005. Nevada law additionally incorporates a waiver to any confidentiality by statutorily providing that when "filing an application with the Commission, an applicant accepts the risk of adverse public notice, embarrassment, criticism, financial loss or other action with respect to the application, and expressly waives any claim for damages as a result thereof." NRS 467.100(3).

The Boxer had been licensed five times prior to 1996. The Boxer knew he must be medically cleared to obtain a license. NRS 467.100(8), NAC 467.022, and NAC 467.027; SEOR 339, p. 75:4-19, On February 7, 1996, Executive Director Ratner warned Morrison that he would not be issued a license until he met the medical requirements. SEOR 194-197. Mr. Ratner, on behalf of the NSAC, gave

the Boxer the opportunity to take part in the weigh-in although the NSAC was waiting for the HIV test results. SEOR 159. ("Needs" under HIV test column). Finally, several hours before bout, the NSAC was informed that the Boxer was not going to provide a negative test. As a result, the Boxer was not issued a license, and the bout was cancelled.[12]

After receiving the positive test results, Director Ratner properly and timely informed the Boxer's representative, Tony Holden, that the Boxer did not have medical clearance and the fight would be cancelled. SEOR 339, pp. 76:22-25, 77:1-9. There was no "secret" meeting. Mr. Holden testified that "[u]sually the athletic commissioner or who's – or someone with the athletic commission will notify you or a representative or your camp. And Tommy told the Commission I'm his representative before the fights, so that is why they called me." SEOR 339, p. 75:4-19, SEOR 334, p. 96:4-8. On February 9, 1996, the Boxer signed a consent form located on the back of the prefight questionnaire which allowed for disclosure. SEOR 160-161; SEOR 203-205. Director Ratner explained that the

---

[12] Ms. Morrison's claim that the Boxer "lost his boxing license" (SEOR 630:¶29) is unsupported and untrue. The Boxer was not issued a license in 1996, because he did comply with the requirements of NRS 467.100, NAC 467.022 and NAC 467.027. Thus, on February 10, 1996, the Boxer did not have an unarmed combatant's license to lose.

35

Boxer was not medically cleared, but did not discuss HIV.

> Q: So you understood that Mr. Ratner was not going to reveal
> the reason for the cancelation of the fight to the media, was
> going to leave it up to Tommy Morrison and his camp?"
> A:    Absolutely.
> Q:    And to your knowledge, was that the procedure that was
> followed?
> A:    Yes, I don't recall Marc ever saying anything to anybody,
> because it was - - if Marc would have said something it would
> have been all over the media, no.  And we took it back to Tulsa,
> they're wanting an official statement, so no, Marc never said
> anything.

SEOR 339, pp. 76:22-25, 77:1-9.

Additionally, the Boxer and Tony Holden remained friends for many years,
and the Boxer never stated to Mr. Holden that he objected to Director Ratner
informing Tony Holden instead of him directly.  SEOR 335, pp. 59:24-25, 60:1-3,

Director Ratner did not disclose the Boxer's positive HIV test result to the
media, and left it up to the Boxer and his representatives to disclose the reason for
the fight cancellation.  About a week after the cancelled fight, the Boxer and his
representative, Tony Holden, revealed that the Boxer was positive for HIV to the
media.  This was after returning to Oklahoma and confirming the results  through
additional testing.

Because Morrison's failure to provide a negative HIV test was relevant to
the Commission in the decision to deny Morrison's license in 1996, the medical
information contained in the test is not confidential by law. NRS 467.1005.
Nevertheless, although the NSAC could have, they did not publically announce the

36

reason that Morrison was not issued a license and simply said he was not medically cleared. SEOR 143-147, NRS 467.1005, SEOR 194-197.

Ms. Morrison did not name Dr. Goodman in the Negligence cause of action. SEOR 624-646.

### iii. *The State Defendants did not violate a standard of care.*

A defendant cannot breach a duty that they do not have. None of the State Defendants owed the Boxer a legal duty to only speak with the Boxer and not and not his representative, or to issue a license to the Boxer if he had not provided all the prerequisites necessary for a license, or to allow him to take part in unarmed combat without a license.

The duty of the NSAC is to protect the health and safety of the fighters and to comply with the requirements of NRS and NAC Chapter 467. The only information given publically after the cancellation of the bout in 1996 by the State Defendants was that the fight was cancelled because Morrison was not "medically cleared" to fight. SEOR 194-197.

### iv. *There is no causal connection between the lawful cancellation of a fight and Morrison's downward spiral.*

Although the Plaintiff is looking for someone to blame, there is no basis to blame any of the State Defendants for the Boxer's death. The Boxer never blamed the cancellation of the fight on the State Defendants. The Boxer had additional

37

testing for HIV performed when he returned to Oklahoma. The additional testing showing a high viral load and a low T-cell count confirmed that the Boxer was HIV positive. The more than 10,000 pages of medical records show that Morrison ultimately died of complications from untreated AIDS. The Boxer's AIDS was untreated because Ms. Morrison refused to allow the administration of anti-retroviral medication. SEOR 744-922. In fact, in May 2013, Ms. Morrison was ordered to appear before the ethics committee at Bryan Medical Center regarding medical futility. Ms. Morrison did not appear, but agreed to allow anti-retroviral medication for the Boxer's AIDS. SEOR 647-648.

The Boxer's history of HIV goes back many years. Testimony in the record from the Boxer's second ex-wife, Dawn II, as well as from the Boxer's psychiatrist, Dr. Epp, and a counselor, Mr. Wilkensen provide that that the Boxer had been positive for HIV since 1989, seven years prior to the 1996 cancelled bout. SEOR 253, p. 80:3-11; SEOR 929-932; SEOR 925-927.

There is no causal connection between the events of February 1996 and the Boxer's death. Plaintiff is disingenuously looking to shift the blame to others rather than take responsibility for her own actions denying the Boxer potentially life-saving anti-retroviral medication and not allowing the doctors to perform their job.

/ / /

### *v. __Plaintiff has not shown any actual loss or damages.__*

Ms. Morrison has failed to show any actual injury due to actions of the State Defendants. Instead Ms. Morrison alleges pure economic loss. In Nevada, a plaintiff may not recover for "purely economic loss" in tort actions. *Peri & Sons Farms, Inc. v. Jain Irrigation, Inc.,* 933 F. Supp. 2d 1279, 1283–85 (D. Nev. 2013) (strict liability and negligence claims barred by economic loss rule); *Presidio Adventures Dev. I v. Countrywide Fin. Corp.*, No. 2:12-cv-01369, 2014 U.S. Dist. LEXIS 41737, at *20–22 (D. Nev. Mar. 26, 2014) (dismissing negligence claims barred by economic loss doctrine). "Allowing the plaintiffs to sue under a negligence theory for purely economic losses, without accompanying personal injury or property damage, would have defeated the primary purpose of the economic loss doctrine [which is to] to shield a defendant from unlimited liability for all of the economic consequences of a negligent act." *Terracon Consultants Western, Inc. v. Mandalay Resort Group*, 125 Nev. 66, 74, 206 P.3d 81, 86 (Nev. 2009) (the doctrine "bars unintentional tort actions when the plaintiff seeks to recover purely economic loss"). Although there are exceptions to the economic loss theory, none of them apply here.

Plaintiff has not provided any proof that Morrison suffered any physical injury as a result of any actions by the State Defendants. Accordingly, since it is

undisputed that none of the State Defendants physically injured Morrison, Morrison's negligence claim is also barred by the economic loss doctrine.

### b. **Plaintiff has failed to show any facts that support a claim for Defamation, Slander, or Libel.**

As a professional athlete and former world champion, the Boxer was considered a public figure.[13] (SEOR 626:¶11). As a public figure, in addition to the elements of defamation which include: (1) a false and defamatory statement by the each State Defendant concerning Morrison; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages, Plaintiff has the added burden to prove by clear and convincing evidence that each of the State Defendants acted with "actual malice—that is, with knowledge that the statement was false or with reckless disregard of its truth." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S. Ct. 710, 726 (1964); *see also Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 90 118 Nev. 706 (Nev. 2002) (acted with knowingly or with reason to know that the test results were false). "Reckless disregard for the truth may be found when the defendant

---

[13] See generally. *Pacquiao v. Mayweather*, 803 F. Supp. 2d 1208, 1213 (D. Nev. 2011) ("Pacquiao is a world famous boxer. As such, he is a public figure for First Amendment purposes."); *see also Cepeda v. Cowles Magazines & Broad., Inc.*, 392 F.2d 417, 419 (9th Cir. 1968) (general public figures include athletes).

40

entertained serious doubts as to the truth of the statement, but published it anyway." *Pegasus,* 57P.3d at 92, 723 (internal quotations omitted).

The truth is a complete defense to an allegation of defamation. The evidence in this case shows that the truth is that Morrison tested positive for HIV in February 1996. CD# 174-25. The truth is that the algorithm which consists of a number of tests and confirming tests used in 1996 was the standard of care in 1996 and for many years afterwards to show whether a person is positive for HIV. CD# 174-25. The truth is that the Boxer had HIV. SEOR 1065. The truth is that in February 1996 the NSAC only announced that the Boxer was not medically cleared to fight and left it to the Boxer to announce the reason that the fight was cancelled. SEOR 194-197; SEOR 143-148; SEOR 339, pp. 76:8-25,77:1-9. The truth is that after a number of confirming tests performed by Morrison's own physicians in Kansas City and in Oklahoma, the Boxer went public that he was positive for HIV. SEOR 331, pp. 45:18-25, SEOR 332, p. 48:11-18; SEOR 334 pp. 56:22-25; 57:1-10; SEOR 345, p. 101:20-25; SEOR 346, p. 102:1-2; SEOR 212, pp. 23:5-25, 24:1-9, 25:1-23.

Ms. Morrison's has not provided any evidence to substantiate her claim for defamation (libel or slander)[14] Ms. Morrison is mistaken when she claims that in

_____

[14] Because libel (written defamation) and slander (spoken defamation) are all considered "defamation," and Plaintiff has not provided any evidence or specified

2007 Dr. Goodman did not have the authority to look into the 1996 report.[15]   In 2007, the Boxer wanted to fight professionally.   Inquiries came into the NSAC concerning the 1996 HIV test.   Dr. Goodman, the Chairman of the medical advisory board, who was not involved in the cancellation of the fight in 1996, asked the NSAC's contact person at Quest, Dr. Hiatt, about the testing process used at the time that the Boxer was tested, and was told that the testing algorithm met the standard of care and the results were generally considered ironclad and unequivocal.   SEOR 198-199. Her decision to inquire about the testing used in 1996 was part of her duties.

When Dr. Goodman inquired into the testing process used in 1996, she did not disclose any medical information that was confidential by law or breach any alleged duty. NRS 467.1005.[16] She did not disclose any new information that had not already been released by the Boxer himself.[17] SEOR 198-199.

---

any specific libel or slander, all three causes of action will be addressed in this Motion for Summary Judgment as one claim.

[15] Ms. Morrison fails to cite any statue or regulation that was violated.

[16] The Judge dismissed any alleged HIPAA violations with prejudice (regardless, the NSAC is not subject to HIPAA, and Morrison was never a patient of Dr. Goodman). SEOR 1-62I.

[17] The announcement concerning Morrison's HIV status was made public by

42

When the Boxer applied for a license to fight in Nevada, the Boxer accepted the risk of adverse public notice, embarrassment, criticism, financial loss or other action when he applied for an unarmed combatant's license in 1996, and expressly waived any claim for damages as a result of any disclosures. NRS 467.100(3). Dr. Goodman acted in good faith within the scope of her position as the Chairman of the Medical Advisory Board in 2007 in making the inquiry of Quest.

Furthermore, the re-publication of public information from the 2007 article combined with other public information over the last 20 years, including information furnished by the Boxer himself, is not actionable and is simply an unauthorized re-publication of public information, and not new interviews or statements.[18]

---

Mr. Holden and Morrison himself. SEOR 148; SEOR 339, p. 76:11-25; SEOR 332, p. 47:8-21; SEOR 194-197.

[18] The Boxer confirmed that he was HIV positive at the press

43

Moreover, while he was alive, the Boxer never questioned the actual lab results.[19] *See generally,* SEOR 335, pp. 59:24-25, 60:1-3. Morrison never contacted any of the State Defendants to question or protest the 1996 test results. SEOR 194-197. In 2009, when the Boxer contacted the NSAC for his file, he did not state that it had anything to do with the results; he stated that the purpose was for a book, and never mentioned the cancellation of the fight. SEOR 126.

Thus in 1996, Director Ratner's decision to inform the Boxer's representative that the Boxer was not medically cleared to fight, and Dr. Goodman's 2007 inquiry into the testing process were done in good faith and did not violate any law.

---

conference held at the Marriott in Tulsa, which was followed by Morrison's February 15, 1996 interviews with Larry King, Maria Shriver and a week or so later an appearance on the Maury Povich show. Accordingly, Morrison and his representative, Tony Holden were the first to announce his positive HIV status. SEOR 332, pp. 48:24-25, 49:1-23, SEOR 333, p. 50-52:1-20.

[19] The NSAC had required a negative HIV test since 1988, and over 2100 fighters had been tested by 1996. Many of them had been tested locally at Quest. During that time, only one other fighter tested positive, and that was in 1991. SEOR 144.

### c.  Plaintiff has failed to show any proof to  support a claim for Fraud

The Plaintiff has the burden of proving each and every element of fraud against each defendant claim by clear and convincing evidence. *Lubbe v. Barba,* 91 Nev. 596, 540 P.2d 115 (1975). The elements of fraud are: 1. A false representation made by the defendant; 2. Defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation); 3. Defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; 4. Plaintiff's justifiable reliance upon the misrepresentation; and 5. Damage to the plaintiff resulting from such reliance. *Lubbe,* 91 Nev. 599, 540 P.2d at 117; *Barmettler v. Reno Air, Inc.,* 114 Nev. 441, 447, 956 P.2d 1382, 1386 (1998).  Lack of justifiable reliance bars recovery in an action at law for damages for the tort of fraud.  *Pacific Maxon, Inc. v. Wilson,* 96 Nev. 867, 870, 619 P.2d 816, 818 (1980).  Here, the evidence of confirming tests show that the Boxer did not rely on the 1996 Las Vegas HIV test.

The Boxer did not go public about HIV until the test results from Las Vegas were confirmed by a number of follow- up tests.  Once receiving confirmation, the Boxer announced to the world that he was HIV positive. Moreover, between 1996 and 2013, the Boxer had hundreds of HIV tests performed which also confirmed that he was HIV positive.   SEOR 744-922.

Ms. Morrison's uncorroborated statement that the "Defendants intentionally concealed or suppressed a material fact and had a duty to disclose that fact" does not support a claim for fraud. (Appeal Brief, CD #5-1, p. 86) Ms. Morrison has not provided any evidence that any State Defendant made a false representation to the Boxer or any of his representatives in 1996 or concealed any evidence.

Likewise, there is no evidence in the record to support a claim that the Boxer relied on the 1996 HIV test. To the contrary, the evidence in the record clearly proves that the Boxer did not rely on the Las Vegas HIV test because he immediately flew home to Oklahoma and had several additional HIV tests performed and confirm the positive results. SEOR 212, pp. 23:5-25, 24:1-9; SEOR 331, p. 45:18-25, SEOR 332, p. 48:11-18; SEOR 334, pp. 56:22-25, 57:1-10; SEOR 345, p. 101:20-23; SEOR 148.

## d. Plaintiff has failed to show any facts that support a claim for Negligent Misrepresentation.

Ms. Morrison's allegation of negligent misrepresentation is inapplicable to the State Defendants. In Nevada, the elements of negligent misrepresentation are "[o]ne who, in the course of his business, profession or employment, or in any other action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to

46

exercise reasonable care or competence in obtaining or communicating the information." *Barmettler v. Reno Air, Inc.* 114 Nev. 441,449, 956 p.2d 1382, 1387(1998).

Again, Ms. Morrison has not provided any evidence of false information provided by any State Defendant. The NSAC and its employees and officers regulate the sport of unarmed combat and issue licenses to participate in unarmed Combat in the State of Nevada. It is not the job of the NSAC nor its employees or officers to confirm laboratory findings; it is the responsibility of the applicant to provide a complete license application which includes a laboratory report showing that the applicant is not carrying the human immunodeficiency virus.[20] NAC 467.022; NAC 467.027; NRS 467.100; SEOR 509, p. 341:14-18; SEOR 510, p. 343:18-25; SEOR 512, p. 352:10-17; SEOR 194-197; SEOR 200-202.

When the Boxer did not provide the mandatory negative HIV test, the State Defendants were not required to perform any additional investigation. Plaintiff's allegation that the State Defendants intended to deceive Morrison into believing that he was HIV positive when he was not, is belied by the medical records and deposition testimony which confirm that Morrison was HIV positive in 1996 and

---

[20] Moreover, the Boxer delayed taking the test until two days before the bout so when the results were received several hours before the bout, there was no time to even check the results.

for all times thereafter.[21]  SEOR 637:¶¶76-79, *See e.g.* SEOR 929-932; SEOR 935-1056; SEOR 647-648; SEOR 744-922; SEOR 624-742; 933-934; SEOR 649-650; SEOR 924-938; SEOR 1065.

### e. Plaintiff has failed to show any facts to support a claim for Intentional Infliction of Emotional Distress.

Ms. Morrison alleges that the Boxer was immediately harmed when Director Ratner informed the Boxer's representative that he was not medically cleared to fight and therefore is entitled to a claim for intentional infliction of emotional distress ("IIED").  Under Nevada law, to show IIED, Ms. Morrison must prove: (1) extreme and outrageous conduct by the NSAC, Ratner and/or Dr. Goodman with the intention of, or reckless disregard for, causing emotional distress; (2) that the Boxer actually suffered severe or extreme emotional distress; and (3) actual or proximate cause.  *Barmettler v. Reno Air, Inc.,* 114 Nev. 441, 447, 956 P.2d 1382 (1998).

Plaintiff cannot meet her burden. Merely alleging that a defendant acted in an intentionally extreme and outrageous manner without evidence does not support this claim.  *Scott v. Corizon Health, Inc.*, 2014 Westlaw 1877431*4

---

[21] Plaintiff's reliance on an electron microscope is misplaced.  The medical community does not recognize an electron microscope examination of blood as proof of the existence or non-existence of HIV.  CD 174-26.

(D.Nev. May 9, 2014)   The  Boxer was not licensed and the bout was cancelled because the Boxer did not receive medical clearance.  Ms. Morrison does not have any knowledge of what information was conveyed concerning the specific reason that the Boxer did not have medical clearance. SEOR 490, p. 265:5-16.

Furthermore, Ms. Morrison failed to produce any evidence to show that the laboratory report was not the standard of care and that the NSAC should not have relied on it when declining to issue the Boxer a license.

### f.   **Plaintiff has failed to show any facts that support a claim for Intentional Interference with a Contract**.

To support a claim for intentional interference with a contract, Ms. Morrison must establish:   (1) a valid and existing contract; (2) the State Defendants' knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage.  *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 273, 71 P.3d 1264, 1267 (2003).   Here, Ms. Morrison does not have personal knowledge of an alleged contract with Don King.  CD SEOR 443, pp. 74:1-25, 75:1-25, 76:1-25, 77:1-16.

While the NSAC has bout agreements that are relevant to the specific fight, the NSAC does not have promoter-fighter multi fight contracts, such as the one that Ms. Morrison alleges that the Boxer entered into with Don King. Those

49

agreements are between the promoter and/or manager and fighter. Accordingly, the claim fails because Ms. Morrison has not provided a valid and existing contract.

The three page excerpt produced by the Ms. Morrison cannot be a valid and existing contract because the document provides that in order to get additional fights; the Boxer would have to beat Lennox Lewis. SEOR 1066-1068. Morrison lost the fight to Lennox Lewis in 1995. Furthermore, the February 10, 1996 fight was a last minute substitution fight arranged on January 15, 1996, three weeks before the February 10, 1996 event. SEOR 162. The purse was only $50,000 not a multi-million dollar purse. SEOR 158.

Moreover, Ms. Morrison testified that she has not seen any proof that there was to be a fight with Mike Tyson.

> A: I know that it was the first of the three fights with the 3rd fight to meet Mike Tyson.
> Q: How do you know that?
> A: Because Tommy would say it almost every day.
> Q: Okay, but you have never seen any paperwork that would indicate with anybody, is that fair?
> A: Up until today I have not, not yet.

SEOR 448, p. 94:16-23.

Nevertheless, to prove intentional interference with a contract, Ms. Morrison "must establish that each of the State Defendants including the NSAC, Ratner and/or Dr. Goodman intentionally wanted to disturb an existing contract. There is no proof of an existing contract and Plaintiff has not provided a single piece of

50

evidence to show that any of the State Defendants would want to disturb the alleged contract, if it did exist. Although the claim names Dr. Goodman, she was not involved with any of the events that took place in February 1996.

**g.  The errata to the State Defendants' Motion for Summary Judgment relates back to the Motion for Summary Judgment,**

The Errata filed by the state defendants (SEOR 63-94) properly related back to the State Defendant's timely filed Motion for Summary Judgment (SEOR 1069-1118). As stated in the Errata, no new arguments were presented, and no new evidence was added, the Errata was simply a reduced version of the original Motion  (SEOR 1069-1118) filed when the District Judge denied the State Defendants Motion to Enlarge (SEOR 98) in order to comply with Local Rule 7-3. Accordingly, the Errata related back to (SEOR 1066-1117) pursuant to Fed R. Civ P. 15(c)(1)(B) because the amended pleading (SEOR 63-94) arose out of the same conduct, transaction or occurrence set forth or attempted to be set for the in the original pleading and is not considered untimely.

**4.    The District Court should have granted the State Defendants Immunity from this Suit**

**A. Standard of Review**

The Denial of Eleventh Amendment Immunity is reviewed de novo. *Coalition of Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1133 (9th Cir. 2012).

**a.  *The Eleventh Amendment Requires dismissal of the NSAC.***

States, state agencies, and state officials may only be held to answer in federal court in two limited circumstances; where the state unequivocally waives its sovereign immunity, and where Congress expressly abrogates state sovereign immunity with respect to a particular federal cause of action. If neither of these exceptions applies, the suit against the state or its agency must be dismissed. This jurisdictional bar applies regardless of the nature of the relief sought. See, *e.g., Missouri v. Fiske,* 290 U.S. 18, 27, 54 S.Ct. 18, 21 (1933)

In addition, a state must expressly waive Eleventh Amendment Immunity. *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347,1361 (1974).  Here, the State of Nevada has expressly retained Eleventh Amendment immunity by statute. NRS 41.031(3).  In addition, state agencies, officers and employees are also immune from civil liability for "any decision or action taken in good faith and without malicious intent in carrying out the provisions of this chapter or any law or regulation governing occupational licensing."   NRS 622A.150

Ms. Morrison cannot be granted relief because neither monetary nor equitable relief is available from the NSAC in Federal Court.  *See generally, State of Missouri v. Fiske*, 54 S. Ct. 18, 24-26, 290 U.S. 18, 20  (1933).   Accordingly, as a matter of law, the NSAC is immune from suit and should have been dismissed.

### b.  Director Ratner and Dr. Goodman should have been given Discretionary Function Immunity

Immunizing government officials performing discretionary functions balances two important interests: the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. Immunity balances the "social utility of providing immunity against the social loss of being unable to attack the immune defendant." *State v. Second Judicial Dist. Court ex rel. County of Washoe*, 118 Nev. 609, 614, 55 P.3d 420 (2002).   NRS 41.032 applies to actions brought against state officers and employees as well as state agencies.  *Henry A. v. Willden,* 2014 WL 1809634 (2014).

Discretionary function immunity is governed by the *Berkovitz-Gaubert* two part test, which provides that discretionary-function immunity will apply if the government actions at issue (1) involve an element of individual judgment or choice and (2) are based on considerations of social, economic, or political policy. S*hafer v. City of Boulder,* 596 F.Supp.2d 915, 938 (2012).

In Nevada, the standard for analysis of discretionary function immunity was summed up as follows:

> Under this standard, a court does not ask whether the official abused his or her discretion, but only whether the acts concerned a matter in which the official had discretion. In other words, the immunity is not

> infinitely broad, but once it is determined that the acts
> at issue were within the breadth of the statute, i.e., that
> they involved judgment or choice on social, economic,
> or political policy considerations, the immunity then
> applies even to abuses of discretion. Still, there is no
> discretionary immunity for acts taken in "bad faith,"
> which is a subjective failure that is worse than an
> objective abuse of discretion.

*Henry A. v. Willden,* 2014 WL 1809634 (internal citations removed)

On the afternoon of February 10, 1996, the NSAC was informed that the Boxer had not produced a negative HIV test as required of all unarmed combatants applying for a license to participate in unarmed combat in Nevada. As the face of the NSAC, the Executive Director has the responsibility to protect the health and safety of the fighters. Despite the ability to release medical information pursuant to NRS 467.1005 and NRS 467.100(3), the NSAC and its Executive Director used their discretion and for public policy reasons did not release any information, except to state that the Boxer was not medically cleared to fight.

In 2007, Dr. Goodman was informed that the Boxer was planning to apply for a license to fight in Nevada. As head of the Medical Advisory Board, Dr. Goodman was authorized to speak to the media regarding health and safety issues. For public policy reasons, and in good faith, she reached out to the laboratory to make sure that the test used in 1996 was an accurate test. Accordingly, it is without question the actions of the State Defendants satisfy both prongs of the Berkovitz-Gaubert test.

54

Because the conduct of the State Defendants involved an element of individual judgment or choice, and their actions were in good faith, based on considerations of social, economic, or political policy, and the Plaintiff has failed to allege that any of the State Defendants acted outside the limits of their authority or in violation of the Constitution, the State Defendants, NSAC, Goodman and Ratner were entitled to discretionary function immunity and should have been dismissed.

## CONCLUSION

Based on the foregoing, the State Defendant's respectfully request that a this Honorable Court affirm the Order of the District Court granting the Defendants Summary Judgment on all claims.

DATED this 13th[th] day of March, 2017.

ADAM PAUL LAXALT
Attorney General


By: __s/ Vivienne Rakowsky___
VIVIENNE RAKOWSKY
Deputy Attorney General

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of FED. R. APP. P.

32 (a)(7)(B) because:

☒      this brief contains 12,675 words, excluding the parts of the brief
exempted by FED. R. APP. P. 32 (a)(7)(B)(iii), or

☐      this brief uses a monospaced typeface and contains *[state number of
lines]* of text, excluding the parts of the brief exempted by FED. R. APP. P. 32
(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of FED. R. APP. P.

32 (a)(5) and the type style requirements of FED. R. APP. P. 32 (a)(6) because:

☒      this brief has been prepared in a proportionally spaced typeface using
Microsoft Office Word 2003 in 14 pt font and Times New Roman, or

☐      this brief has been prepared in a monospaced typeface using [state
name and version of work processing program] with [state number of characters
per inch and name of type style].

DATED this 13th day of March, 2017.

ADAM PAUL LAXALT
Attorney General

By:   s/ Vivienne Rakowsky
VIVIENNE RAKOWSKY
Deputy Attorney General

56

## STATEMENT OF RELATED CASES

Attorney General of the State of Nevada, ADAM PAUL LAXALT, by and through VIVIENNE RAKOWSKY, Deputy Attorney General, hereby certifies and states that there are no known cases before this Court related to the foregoing case.

DATED this 13th day of March, 2017.

ADAM PAUL LAXALT
Attorney General

By:   s/ Vivienne Rakowsky
      VIVIENNE RAKOWSKY
      Deputy Attorney General

57

## <u>CERTIFICATE OF SERVICE</u>

U.S. Court of Appeals Docket Number: 16-17050

I hereby certify that I electronically filed the foregoing ***Appellees' Answering Brief*** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system, on March 13, 2017.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

The following participant is not a registered CM/ECF user and will be served by Certified US Mail Number 7012 1640 0000 6149 3592 and a courtesy copy of the Answering Brief (without Appendices) via e-mail.

Patricia Harding Morrison
P.O. Box 454
Rose Hill, KS 67133

/s/ M. Caro
An Employee of the
Office of the Attorney General