No. 16-17050

IN THE

## UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

PATRICIA HARDING MORRISON
for the Estate of TOMMY MORRISON
*Plaintiff & Appellant,*

v.

QUEST DIAGNOSTICS INCORPORATED
JOHN HIATT
DR. MARGARET GOODMAN
NEVADA STATE ATHLETIC COMMISSION
MARC RATNER
*Defendants & Respondents.*

Appeal from the United States District Court for the District of Nevada
-Southern Division-
The Hon. Richard F. Boulware II, Judge (case number 2:2014-cv-01207)

## APPELLANT'S SINGLE REPLY BRIEF
## TO APPELLEES' MULTIPLE ANSWERING BRIEFS

PATRICIA HARDING MORRISON
P.O. Box 454,
Rose Hill, KS 67133
Tel. No. (865) 296-9973
e-mail: tommyandtrishamorrison@yahoo.com
Plaintiff, *Pro Se* & Appellant,
Personal Representative/ Administratrix for the
ESTATE OF TOMMY MORRISON

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…    …    …    …    …    …    …    vii.

PREFACE…    …    …    …    …    …    …    …    …    …    01.

ARGUMENT…  …    …    …    …    …    …    …    …    …    02.

1.    RESERVATION OF RIGHTS…    …    …    …    …    …    04.

2.    **STATUTE OF LIMITATIONS DOES NOT APPLY TO THIS**

**PUBLIC POLICY CASE OF FIRST IMPRESSION…**    …    05.

3.    MORRISON'S APPEAL HAS GREAT MERIT, AND SUCCEEDS

ON CONSTITUTIONAL AND PUBLIC POLICY GROUNDS…    08.

    **A.**    **Morrison Has Standing as an Individual and on**

        **Public Policy Grounds Which Voids all Statute of**

        **Limitations and Immunity Defenses…**    …    …    …    **08.**

    (i)    Standing…  …    …    …    …    …    …    …    …    08.

    (ii)    Likelihood of Success, Due Process Violation,

        Discrimination…  …    …    …    …    …    …    …    14.

    (iii)    Discrimination Voids Immunity for Defendants…  ……  …    16.

    **B.**    **Appellees' continuing, misleading assertions…  …    …    17.**

    (i)    NSAC continuing to this day assert a QUEST/HIATT

        Clinical laboratory report can 'show that an applicant's blood

        [TOMMY's] is, or not, infected with the human immuno-

deficiency virus ......    ...    ...    ...    ...    ...    ...    17.

(ii)    After two years of litigation, the lower court ruled **a)** the tests

        on TOMMY did not detect the human immunodeficiency

        Virus/HIV...    ...    ...    ...    ...    ...    ...    ...    17.

(iii)   QUEST/HIATT conceded, more than 20 years later, tolling

        the statutes of limitations, that the February 10th, 1996 QUEST

        lab report, was not, is not, never was, a showing/diagnosis of

        any condition...    ...    ...    ...    ...    ...    ...    ...    18.

(iv)    NSAC claim it is not their 'job' to confirm laboratory

        findings...    ...    ...    ...    ...    ...    ...    ...    ...    18.

(v)     However, NSAC proceeded to intentionally issue their

        own immediate indefinite medical suspension...    ...    ...    19.

(vi)    NSAC were put on notice by the physician that TOMMY was

        fit to fight at the time...    ...    ...    ...    ...    ...    ...    19.

(vii)   NSAC by their intentional failure to contest, these recently

        revealed facts are deemed undisputed...    ...    ...    ...    20.

(viii)  Pursuant to NRS 197.180; NRS 197.200; NRS 197.220

        Appellees' conduct was in bad faith, and against the law...    21.

(ix)    Public Officer who, being authorized by law to make or give

        A certificate or other writing (such as a lab report), knowingly

iii

makes and delivers as true a certificate of writing containing
any statement (a condition of HIV), which the public officer
knows to be false is a crime...   ...   ...   ...   ...   ...   20.

(x)   The offering of QUEST lab reports, and acceptance of this
Lab report by NSAC/RATNER/GOODMAN as a 'condition
of HIV', was the sole reason for the cancellation of a $50,000
bout; immediate indefinite medical suspension leading to the
loss of a multimillion dollar fight contract with Don King;
cancellation of boxing license C#1306, and TOMMY forever
living with the stigma of a loathsome disease 'HIV' and
being declared 'disabled' under the American Disabilities Act
effective February 10th, 1996... ...   ...   ...   ...   ...   21.

(xi)   NRS 197.180...   ...   ...   ...   ...   ...   ...   ...   22.

(xii)   NRS 197.200...   ...   ...   ...   ...   ...   ...   ...   22.

(xiii)  NRS 197.220...   ...   ...   ...   ...   ...   ...   ...   22.

(xiv)  Granting MSJ based on statute of limitations when the same
conduct of fraud, deceit, misrepresentation, and health care
fraud exists today...   ...   ...   ...   ...   ...   ...   22.

(xv)   Appellees' continuing fraudulent misrepresentations,
contradictions, omissions have been uncovered during this

action…      …      …      …      …      …      …      …      …      22.

    (xvi)  NSAC/RATNER/GOODMAN' attempts to re-plead immunity

       for their unconscionable actions screams Color of Law…      23.

4.    TOMMY WAS A BOXER, NOT A PHYSICIAN…      …      …      23.

5.    APPELLEES OPINE NO CONTRACT EXISTS…      …      …      25.

6.    APPELLEES OPINE THEY HAVE NO KNOWLEDGE…      …      26.

7.    STATE DEFENDANTS ARE RESPONSIBLE TO PROTECT

    THE  HEALTH AND SAFETY OF THE PUBLIC WHICH

    INCLUDES THE BOXERS… …      …      …      …      …      …      27.

8.    UNDISCLOSED PACKET INSERTS Are Material and Necessary      27.

9.    TEST KIT MANUFACTURER LIMITATIONS, WARNINGS,

    DISCLAIMERS REMAIN CONCEALED BY ALL APPELLEES.

    A genuine issue of material facts exist…      …      …      …      …      28.

10.   APPELLEES' NEW ISSUES RAISED are deemed material for a

    Trial to occur. Existence and content of undisclosed evidence has

    been established….      …      …      …      …      …      …      …      30.

    A.    Appellees scramble to add the word ("negative test"). on the
       record further discriminating against fighters testing
       'reactive/positive' for *autoimmune antibodies* to over 100
       other non-HIV conditions, not contagious in the ring…      …      30.

    B.    Pursuant to *NRS467.1005* TOMMY's personal health
       information, new or old, could not be disclosed without
       TOMMY's approval. GOODMAN breached the law in 2007.

The 1996 medical release form had already expired… … 30.

C. Pursuant to court records, NSAC, required TOMMY to take the Roche/PCR test in 2010. (which does not detect/diagnose HIV-infection)… … … … … … … … 31.

D. No AIDS 'defining diseases' were present in TOMMY…… 31.

E. Pursuant to CDC and *Appellees' Document 175-11*, CD4+ counts are used as a 'surveillance case' definition, for '*statistics*', but Appellees change CDC recommendations just for this action… … … … … … … 31.

F. Appellees now claim FDA Approved Packet Insert statements were created by an organization "*Alberta Reappraising AIDS Society*", and not by manufacturers… … … … … 32.

G. MORRISON Seeks NOT to Alter Manufacturers' FDA Labeling, nor FDA/PMA Labeling Requirements of Packet Insert warnings/disclaimers… … … … … … 32.

H. Packet Inserts were provided to Counsel Caldwell by MORRISON's *Expert Rebuttal Witness.* Video deposition testimony proves that. QUEST/HIATT now further misrepresent… … … … … … … … 33.

I. Since 1996 forward QUEST/HIATT have been including P.31 to report HIV in TOMMY, and the public, even though FDA and CDC dropped this marker in 1993… … … 33.

J. THIRD NON-PARTY PHYSICIANS ,1996-2013, were not aware of test names, packet inserts, intended uses, other interfering conditions, prior to ordering them, and that lab reports were not a ready-made patient specific diagnoses… 34.

K. FDA PMA Labeling Requirements on TOMMY's tests were and are extremely specific. If not adhered to, *manufacturers* do not receive an Approval to sell test kits to QUEST/HIATT… … … … … … … … 35.

vi

L. Dr.Ho works at a non CLIA *research center* in New York
utilizing 'home-brew' testing not approved by FDA.... ... 36.

M. The New '1989' allegation is automatically deemed material
for a Trial to occur... ... ... ... ... ... ... 36.

N. Since 1984, the world has recognized, accepted, the Electron
Microscope and EM photo images, and was used to test
and make the first diagnosis of the discovery of HIV
in humans...... ... ... ... ... ... ... ... 37.

O. QUEST/HIATT's 'Bill of Costs', erroneously directed at a
*Nebraska Court*, include subpoenaed records from Boston
and Omaha... ... ... ... ... ... ... ... 38.

P. Appellees need to explain why they are still producing lab
reports to this Court as definitive diagnoses of HIV in
TOMMY when the test kits they purchase do not
diagnose HIV... ... ... ... ... ... ... ... 39.

10. APPELLEES' EXHIBITS lack: FDA Premarket Approvals;
clinical/physical examinations to support clinical diagnoses
of HIV; no exhibits marked or received in evidence supporting
'proof of the HIV/Virus' *other than* presentation of 'QUEST
self-serving lab reports without scientific data such as *human
clinical trials* to validate them... ... ... ... ... 39.

11. APPELLANT SHOULD BE ALLOWED TO CONDUCT

FURTHER DISCOVERY REGARDING APPELLEES'

CONTINUING HEALTH CARE FRAUD... ... ... ... 41.

CONCLUSION... ... ... ... ... ... ... ... ... **42.**

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS,
AND TYPE STYLE REQUIREMENTS... ... ... ... ... ... 43.

vii

CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS…    …    44.

CERTIFICATE OF SERVICE…    …    …    …    …    …    …    45.

FORM.8……    …    …    …    …    …    …    …    …    …    48.

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Baker v. Carr,*
369 U.S. 186, 204 (1962)…    …    …    …    …    …    …    …    11.

*Bituminous Casulaty Corp. v. Black and Decker Manufacturing Co.,*
518 S.W.2d 868,873 (Tex.Civ.App.-Dallas 1974,writ ref'n.r.e….    … 27,33.

*Brady v. Maryland,*
U.S. Supreme Court. -373 U.S.83 (1963)……    …    …    …    …    30.

*Carey v. Fiphus,*
435 U.S. 247 (1978)…   …    …    …    …    …    …    …    …    20.

*Cleveland Bd. of Educ v. Loudermill,*
470 U.S. 532, 542 (1985)…    …    …    …    …    …    …    …    14.

*Clinton v. Jones,*
520 U.S. 681 (1997)…   …    …    …    …    …    …    …    …    16.

*Craig v. Boren,*
429 U.S. 190, 195 (1976)…    …    …    …    …    …    …    …    13.

*Flast v. Cohen,*
392 U.S. 83, 95 (1968))…    …    …    …    …    …    …    …    11.

*Griswold v. Connecticut,*
381 U.S. 479 (1965)…   …    …    …    …    …    …    …    …    13.

*Jones v. Hittle Service, Inc.;*
219 Kan. 627, 549 P2d. 1383,(1976)...    ...    ...    ...    ...    ... 27,29.

*Khan v. Velsicol Chemical Corp.,*
711 S.W.2d 310 (Tex.App.-Dallas 1985, writ ref'd n.r.e....    ...    ... 27,29.

*Landers v. Smith.;*
379 S.W.2d 884,887 S.D.App (1964)...    ...    ...    ...    ...    ... 36.

*Lujan v. Defs. of Wildlife,*
504 U.S. 555, 560 (1992)...    ...    ...    ...    ...    ...    ... 11.

*Lujan v. Defs. of Wildlife,*
504 U.S. 555, 560-61 (1992)...    ...    ...    ...    ...    ...    ... 11.

*Lujan v. Defs. of Wildlife,*
504 U.S. at 561...    ...    ...    ...    ...    ...    ...    ... 12.

*Massachusetts v. EPA,*
549 U.S. 497, 516 (2007)...    ...    ...    ...    ...    ...    ... 11.

*NAACP v. Alabama,*
357 U.S. 449 (1958)...    ...    ...    ...    ...    ...    ...    ... 13.

*Nat'l Indus., Inc. v. Republic Nat'l Life Ins. Co.,*
677 F.2d 1258, 1262 (9th Cir. 1982)...    ...    ...    ...    ... 10.

Olivarez v. Broadway Hardware, Inc.,
564 S.W.2d 195 (Tex.Civ.App.-Corpus Christi 1978, writ ref'd n.r.e)... 29.

*Parks Sch. of Bus., Inc. v. Symington,*
51 F.3d 1480, 1487-88 (9th Cir. 1995)...    ...    ...    ...    ... 13.

*Pierce v. Soc'y of Sisters,*
268 U.S. 510, 536 (1925)...    ...    ...    ...    ...    ...    ... 13.

*Promotions, Ltd. v. Conrad,*
420 U.S. 546 (1975)...    ...    ...    ...    ...    ...    ...    ... 20.

*Runyon v. McCrary,*
427 U.S. 160, 175 & n.13 (1976)… … … … … … … 13.

*Shell Oil Co. v. Guitierrez*… … … … … … … … 27,29.

*Singleton v. Wulff,*
428 U.S. 106, 114-16 (1976)… … … … … … … 12.

*State of Washington v. President Donald Trump,*
9th Cir, (Feb. 2017)… … … … … … … … … 16.

*United States v. Raya-Vaca,*
771 F.3d 1195, 1204 (9th Cir. 2014)... … … … … … 14.

## ACTS, REGULATIONS, RULES & STATUTES

### Acts & Federal Statutory Authorities

U.S. Constitution Article III, section 2… … … … … … 11.

U.S. Constitution Rights… … … … … … … … 20.

The Fifth Amendment of the Constitution… … … … … 14.

U.S. Const. amend. V…. … … … … … … … 14.

United States Constitution
Articles VII, VII(v) and (h)… … … … … … … … 21.

USC 42,1983, the Civil Rights Act… … … … … … 20.

Americans with Disability Act **of 1990 (42 U.S.C. § 12101)**… … … **05.**

18 U.S.C.§1347… … … … … … … … … 22.

42 C.F.R.§493.1291… … … … … … … … … 32,35.

42 C.F.R.§493.1253… … … … … … … … … 35.

**Federal Rules & Regulations**

Fed. R. Evid. 201(a)(b)(1)(2) and (c)(1)… … … … … … … 03.

Fed.R.App.P.32(a)(7)(B)(ii)…… … … … … … … 43.

Fed.R.App.P.32(a)(7)(B)(iii)… … … … … … … 43.

Fed.R.App.P.32(a)(5)…… … … … … … … … 43.

Fed.R.App.P.32(a)(6)…… … … … … … … … 43.

**State Statutory Authorities**

NAC Chapter 467… … … … … … … … … 01,30.

NAC 467.027(3)… … … … … … … … … 01,36.

NAC 652.340… … … … … … … … … … 32.

NRS section 11.250… … … … … … … … … 05.

NRS 0.025(1)(a)… … … … … … … … … 06.

NRS 0.025 (1)(d)… … … … … … … … … 06.

NRS 0.039… … … … … … … … … … 06.

NRS 11.250… … … … … … … … … … 06.

NRS 11.280… … … … … … … … … … 06.

NRS 11.360… … … … … … … … … … 07.

NRS 11.370… … … … … … … … … … 07.

NRS 197.180… … … … … … … … … … 21,22.

NRS 197.200… … … … … … … … … … 21,22.

NRS 197.220… … … … … … … … … … 21,22.

NRS.467.1005… … … … … … … … … … 30.

NRS A. 1967,42… … … … … … … … … 22.

NRS A. 1995,1172… … … … … … … … … 22.

## **OTHER SOURCES**

JAMA Sep.23/30 1998 Vol.280.No 12p.65… … … … … 35,40.

*Luke 8:17*…. … … … … … … … … … 42.

Mullis KB. Pantheon 1998… … … … … … … … 38.

U.S. Patent #4,647,773; #4464465…… … … … … … 30.

## **PREFACE**

**Note Bene:**  As a case of first impression involving the billion-dollar business of boxing which is on a worldwide, United States, and Federal level the aforesaid required TOMMY and other professional Boxers to submit blood test/lab results to receive a boxing license to earn a living.

TOMMY's case is irrefutably … a public policy case.

In that regard, it also contains massive public ramifications involving the health care industry and ongoing misrepresentations by Defendants QUEST/HIATT of its lab reports leading to unsubstantiated conclusion of a *disability medical condition* having overwhelming, lifetime, degrading, discrimination, and blacklisting effects on said boxers and members of the public, including women and children, alleged to … HIV/AIDS.

MORRISON, as a whistleblower, has in substance voiced since the filing of the case, the condition precedent of blood-lab reports required by Nevada and its Boxing Commission routinely supplied by Defendants QUEST/HIATT has astronomically injured and damaged TOMMY, other Boxers and massive members of the public, to wit:

> STATE DEFENDANTS: "All that is required to comply with the regulation is to show that the applicant is not infected with the **HIV virus**. (NAC 467.027(3))." *State's dkt#249 p.5:14-16*

1

STATE DEFENDANTS: "As stated numerous times, no diagnosis of HIV was made on February 10,1996, or at any other time by any State Defendant."

*State's dkt#249 p.5:11-12*

DR.VOY: "It is important for you to understand that Dr.Voy did not diagnose and never has diagnosed Mr. Morrison as 'HIV positive'.

*Counsel Mortensen for VOY, APP.B,dkt#283 p.28:14-15*

STATE DEFENDANTS: "There was absolutely no reliance on the 1996 Quest test."

*State's dkt#217 p.11:27*

STATE DEFENDANTS: "*Plaintiff* attempts to mislead this Court into believing that the State Defendants state that they did not rely on Quest's findings in 1996, but that is absolutely not the case."

*State's dkt#249 p.7:4-6*

QUEST/HIATT: "…only the NSAC relied on the test results."

*Quest/Hiatt's dkt#208 p.12:25-27*

**STATE DEFENDANTS: "Moreover, while he was alive, the Boxer never questioned the actual lab results"**

*State's Answering Brief p.*44

## ARGUMENT

**MORRISON's SINGLE APPELLANT'S REPLY BRIEF** responds to five defendants: Nevada State Athletic Commission ("NSAC"); Marc Ratner ("RATNER"); Dr. Margaret Goodman ("GOODMAN"); (collectively "state defendants") or, ("*Appellees");* and Quest Diagnostics Inc ("QUEST"); John Hiatt ("HIATT"); *separately filed Appellees' Answering Briefs.*

2

The lower court committed prejudicial error by failing to view the substantive facts, inferences, and consider all the evidence in the record in the light most favorable to MORRISON and ignored the blatant critical public policy issues which are also admitted and conceded by Appellees in all of the Briefs and Court record. The Court is requested to take judicial notice of its record. *Fed. R. Evid. 201(a)(b)(1)(2) and (c)(1).*

MORRISON argues triable issues remain, *inter alia,* 'who' and 'with what' determined TOMMY's blood was '*positive for the human immunodeficiency virus (HIV)*' when **QUEST/HIATT's** *"tests didn't test for the virus."* on February 10th, 1996, and continue not to test for the virus, or HIV infection, between February 11th, 1996 through to September 01st, 2013.

TOMMY passed away September 01st, 2013 without knowledge of uncovered facts in this action. TOMMY's final blood draw, and FINAL DIAGNOSIS of September 17th, 2013 scientifically revealed he did not have 'HIV' *(scientifically known as a 'retrovirus', abbreviated-HIV). Appellees* have not presented any scientific evidence to refute the pathology report(s) and findings.

It is a serious misstatement of the court's ruling for Appellees to claim the 1996 lab report, or any clinical lab reports in Appellees' document dump now in

3

front of this court, as pre-decisional of a condition of HIV because they were undisputed by TOMMY at the time.

TOMMY was 'the BOXER' and was owed a duty. 'State Defendants Are Responsible To Protect The Health And Safety of the Fighters', by their own Answering Brief admissions.

Appellees made the final decision concerning whether TOMMY's blood was infected with the human immunodeficiency virus/HIV on February 10th, 1996.

## 1. RESERVATION OF RIGHTS.

MORRISON incorporates her Appellant's Opening Brief and all Reply Briefs, the court docket, and all exhibits filed in the case by this reference thereto and reserves the right to supplement the appellate record in all appeal courts filings at any time.

MORRISON's Reply Brief is intended solely to respond to Appellees' contentions requiring further discussion for proper determination of issues raised on appeal.

This Brief does not respond to issues MORRISON adequately discussed in Appellant's Opening Brief, and intends no waiver of these issues by not expressly reiterating them herein.

4

## 2.    STATUTE OF LIMITATIONS DOES NOT APPLY TO THIS

## PUBLIC POLICY CASE OF FIRST IMPRESSION.

Because of QUEST/HIATT's lab test reports misrepresentation that TOMMY had HIV, which NSAC/doctor/agents accepted and ratified, TOMMY's boxing license and legal right to box was instantly terminated and he was placed by NSAC on Fightfax.com, which is used worldwide and throughout the United States, as "indefinite medical suspension" effectively terminating his professional multimillion dollar boxing career which continued until his death.

In short, he was suddenly declared by **Appellees** to have a **permanent highly contagious medical disability** that was to last a lifetime and was to forever threaten all other professional boxer contenders, ring referees, and members of the public attending bouts.

Immediately, blacklisted and discriminated against by NSAC and all United States Boxing Commissioners due to the **stigma of the HIV disability**, TOMMY  was immediately automatically covered by Federal assistance under the **Americans with Disability Act of 1990 (42 U.S.C. § 12101):**

**"The Americans with Disabilities Act (ADA) prohibits: discrimination against people with disabilities in employment, transportation, public accommodation, communications, and governmental activities. The ADA also establishes requirements for telecommunications relay services."**

5

TOMMY's disability, admitted by all Appellees, stops-dead the application of the defense of the statute of limitations.

Nevada Revised Statutes ("NRS") section 11.250 [Disability Prevent Running of Statute of Limitations] in pertinent part:

> **"If a person entitled to bring an action …at the time of action accrued, either: …, except when the person is imprisoned, paroled or on probation, the time of such <u>disability</u> shall not be a part of the time limited for the commencement of the action."**

**NRS 11.280 [Legal Disability Prevents Running of Statutes] in pertinent part:**

> **…shall not apply to … others under any legal disability to sue at the time when the right of action first accrues, but <u>all such persons</u> <u>may</u> commence an action at any time within 1 year after the removal of the disability."**

The Nevada Legislature's specific use of the operative word "may" is construed as permissive *(NRS 0.025(1)(a)* not mandatory such as the word "shall" *(NRS 0.025(1)(d).*

'Disabled' TOMMY and/or ESTATE [both construed as a "Person" *NRS 0.039*] was legally deemed disabled from February 10th, 1996 up to his date of death on September 01st, 2013 pursuant to the A.D.A. **Despite the fact he [Estate] did not learn of the fraudulent activities/representations of Appellees until the last expert pathology report revealed the truth on or about <u>September 17th, 2013,</u> that TOMMY did not have 'HIV', and further**

6

**when the court ruled on <u>September 8th, 2016</u> confirmation of the tests used on TOMMY didn't test for the human immunodeficiency virus (HIV).**

The original complaint was filed July 24th, 2014; a court approved Amended Complaint on October 16th, 2015; and a Second Amended Complaint February 09th,2016 well within any arguable limitation period, despite none apply under the facts herein as a matter of law. Moreover, *NRS 11.360* [Disability must exist when right of action accrued]:

> **"No person shall avail himself of a disability, unless it existed when his right of action accrued."**

TOMMY's *alleged* HIV disability unquestionably started on February 10th, 1996 when NSAC **forced** the indefinite suspension of his boxing license on February 10th, 1996 based on fraudulent misrepresentations of Defendant-Appellees QUEST/HIATT's lab report (HIV) which NSAC ratified by acceptance and enforced the aforesaid. And, *NRS 11.370* [Coexisting disabilities must be removed]:

> **"When two or more disabilities coexist, at the time the right of action accrues, the limitation shall not attach until they all be removed.**

It is now medically understood TOMMY had coexisting disabilities based on QUEST/HIATT's **representations** relied upon by NSAC of HIV and AIDS. These two legal disabilities are treated as separate attacks on TOMMY's body

7

and one is implied to follow the other but both are distinctly different medically determined disabilities to the human body.

HIV does not lead to death, AIDS does despite they coexist based on the representations of QUEST/HIATT, relied and acted upon by state defendants to punish TOMMY by discriminating against him by blacklisting him instantly from his boxing career based on his disability and failing to provide him a required accommodation under the antidiscrimination laws, id ADA.

The point carried to its logical conclusion by Appellees all during this litigation/appeal is TOMMY had HIV and later died of AIDS and they therefore admit the limitation period, could not have possibly have started until the day of his death on September 01st, 2013, and, on September 08th, 2016 regarding the testing.

Irrespective of which unmeritorious argument path the Appellees traverse based on the above, no limitation period applies and the court committed prejudicial error as a matter of law, requiring reversal to prevent a gross miscarriage of justice.

## 3. MORRISON's APPEAL HAS GREAT MERIT, AND SUCCEEDS ON CONSTITUTIONAL AND PUBLIC POLICY GROUNDS.

A. **Morrison Has Standing as an Individual and on Public Policy Grounds Which Voids all Statute of Limitation and Immunity Defenses.**

8

### (i) <u>Standing.</u>

The core of substance voiced from 1996 thru to the present of MORRISON'S individual position including appeal is simple:

**(a)** the Nevada Boxing Commission, its designated doctors and agents ("NSAC") use, and acceptance of Co-Defendant/Appellees QUEST/HIATT's lab reports representations which they have collectively admitted, and irrefutably agree, as stated in their Briefs, **only as of 2015**, <u>cannot</u> and does <u>not</u> <u>confirm</u> TOMMY or any other boxer harbors HIV, ***and***

**(b)** NSAC's reliance on the intentionally concealed misrepresentation and ratification of Co-Defendant/Appellees QUEST/HIATT fraudulent lab reports and misbranded testing,

**(c)** resulted in the instant termination of TOMMY's multimillion dollar boxing career by NSAC which controls the reporting of boxing license status throughout the United States, and the World;

**(d)** NSAC requires every professional Boxer to take a blood test that complies with legal standards set by Nevada forcing all similarly situated Boxers (license suspended, denied or terminated) into the same vicarious position as TOMMY, whose *Estate,* asserts their position as their shared legal position as a matter of great **public policy** concern, ***and***

9

**(e)** TOMMY, like the vast majority of Boxers, have no legal or medical education or training and detrimentally rely on the representations of Appellees NSAC/state defendants and QUEST/HIATT, who induce the Boxers to believe the lab reports of the tests purchased, performed, interpreted and reported, justify Nevada *denial, suspension and termination* of the boxing career and the right to have a license to work in their profession due to erroneous, fraudulent, and misleading lab reports and conclusions.

Assuming arguendo, MORRISON does not have standing to assert a public policy position against the continuing wrongful and continuing deceitful acts of NSAC and QUEST/HIATT, any such opposition is misplaced as a matter of law.

This Court is not precluded consideration of appellate jurisdiction at the merits stage of this appeal. *See Nat'l Indus., Inc. v. Republic Nat'l Life Ins. Co., 677 F.2d 1258, 1262 (9th Cir. 1982).*

All Defendants have conceded to their newly revealed and admitted evidence of use of QUEST/HIATT lab reports knowing the results do not confirm the human immunodeficiency virus/HIV, or even HIV infection, which has **never before been told** in any manner to TOMMY, or any other Boxer that truth, including MORRISON, the general public, and the medical profession itself such as the third non-party physicians in this action.

10

At any stage of the proceedings this Court can consider any case and controversy involving violations of the Constitution such as here. *See Article III, section 2 of the Constitution* allows federal courts to consider only "Cases" and "Controversies." *Massachusetts v. EPA, 549 U.S. 497, 516 (2007)*. "Those two words confine 'the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process.'" *Id. (quoting Flast v. Cohen, 392 U.S. 83, 95 (1968)). "Standing is an essential and unchanging part of the case-or-controversy requirement"* and is therefore a prerequisite to our jurisdiction. *See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).* The "gist of the question of standing" is whether the plaintiff has a sufficiently "personal stake in the out-come of the controversy" to ensure that the parties will be truly adverse and their legal position. TOMMY and all other similarly situated Boxers have been and currently are in this adverse position to the Defendant-Appellees. *Baker v. Carr, 369 U.S. 186, 204 (1962)).*

All Boxers trying to get a license to box like TOMMY will or have *"suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury." Id. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61(1992).*

11

The inconclusive QUEST/HIATT chosen tests or similar tests required and relied upon by NSAC of all Boxers, effecting boxing licensing rights, have now been exposed and revealed **as newly discovered evidence** by MORRISON, and would have remained concealed by Appellees but for the ESTATE's pursuit of the truth.

This proof is confirmed in all of the stages of this litigation including on appeal which satisfies the manner and degree of evidence required at the successive stages of the litigation." *Lujan, 504 U.S. at 561*.

Under the "third party standing" doctrine, these injuries to TOMMY and the Boxers, give MORRISON standing to assert her rights and as a matter of public policy the rights of all other Boxers who actually or potentially are effected by NSAC and QUEST/HIATT's lab reports and misrepresentations, which lead or may lead to boxing license denial, suspension or termination irreparably injuring/damaging their professional boxing careers like TOMMY's. *Singleton v. Wulff, 428 U.S. 106, 114-16 (1976)* (explaining that third-party standing is allowed when the third party's interests are "inextricably bound up with the activity the litigant wishes to pursue"; when the litigant is "fully, or very nearly, as effective a proponent of the right" as the third party; or when the third party is less able to assert his/her own rights).

12

**For example,** Vendors, "have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function." *Craig v. Boren*, 429 U.S. 190, 195 (1976). Likewise, doctors have been permitted to assert the rights of their patients. *See, e.g.*, *Griswold v. Connecticut, 381 U.S. 479 (1965);* Advocacy organizations such as the NAACP have been permitted to assert the constitutional rights of their members. *See, e.g.*, *NAACP v. Alabama, 357 U.S. 449 (1958);* schools have been permitted to assert the rights of their students. *See, e.g.*, *Runyon v. McCrary, 427 U.S. 160, 175 & n.13 (1976)* ("It is clear that the schools have standing to assert these arguments [asserting free-association rights, privacy rights, and 'a parent's right to direct the education of his children'] on behalf of their patrons."); *Pierce v. Soc'y of Sisters, 268 U.S. 510, 536 (1925)* (allowing a school to assert the "right of parents to choose schools where their children will receive appropriate mental and religious training [and] the right of the child to influence the parents' choice of a school"); *Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1487-88 (9th Cir. 1995)* (citing *Pierce* and rejecting the argument that the plaintiff school had no standing to assert claims of discrimination against its minority students.

TOMMY's Estate has the right to assert claims in substance asserted in the Complaint of discrimination, *inter alia,* based on TOMMY's alleged medical

13

condition asserted by Defendant-Appellees and those of all other Boxers that have been, and potentially will be, effected by Nevada's licensing medical lab requirements and the reports of those labs (QUEST/HIATT) misrepresenting they conclusively show the *human immunodeficiency virus* 'HIV', or HIV *infection*.

Moreover, as stated above, concerning the unmeritorious arguments desperately raised in Appellees' *Answering Briefs,* MORRISON's claims are not barred by the statute of limitations and desperate requests for immunity must be denied on strong public policy grounds as stated herein.

### (ii) Likelihood of Success, Due Process Violation, Discrimination.

The Fifth Amendment of the Constitution prohibits the Government (Nevada) from depriving individuals of their "life, liberty, or property, without due process of law." *U.S. Const. amend. V.*

Nevada may not deprive TOMMY or any Boxer of one of these protected interests without providing "notice and opportunity to respond," or, in other words, the opportunity to present reasons not to proceed with the deprivation of the boxing license (a property right) and have then considered. *United States v. Raya-Vaca, 771 F.3d 1195, 1204 (9th Cir. 2014); accord Cleveland Bd. of Educ v. Loudermill, 470 U.S. 532, 542 (1985).*

14

TOMMY's license was instantly permanently suspended based on Appellees QUEST/HIATT's misrepresented lab tests, and reports, that he had tested positive for the *human immunodeficiency virus* 'HIV'.

All Defendants recently in this litigation **for the first time, twenty years later,** *unconcealed* the fact the tests they use, do not confirm the human immunodeficiency virus/HIV, and **for the first time, twenty years later,** QUEST/HIATT's clinical lab reports do not confirm any condition of any disease in TOMMY, or anyone else. Further, now even in this Appeal, over twenty years later, all Appellees continue to fraudulently conceal the fact, that the test kit companies supply them with **packet inserts** which have warnings, disclaimers, intended uses, and other interferences that will alter test results, not related to any condition of the human immunodeficiency virus, or its antibodies.

TOMMY was not given a notice or fair hearing before the permanent suspension and lost in excess of millions of dollars from that point forward through now. It is and has been from the start of this litigation Nevada's burden to make "a strong showing that it is likely to" prevail against MORRISON's assertion of NSAC's violation of due process claim and discrimination based on an alleged medical status (HIV/virus) that it shackled TOMMY with based on Co-Defendant QUEST/HIATT's misrepresentations in their lab tests, reports,

15

and acceptance of those reports, as harboring the *human immunodeficiency virus* (HIV).

NSAC cannot carry its heavy burden on grounds it created the very discrimination stated onto TOMMY than without due process deprived TOMMY of his rights based on the 'HIV status' discriminating against depriving him of his license, terminating the scheduled $50,000 fight, and the collateral money sources resulting therefrom. *See all Appellees Brief admitting those facts.*

### (iii) Discrimination Voids Immunity for Defendants.

In short, based on state defendants and QUEST/HIATT collusion, ratification and tacit agreement to deprive TOMMY, and other Boxers, of their right to have a license to box based on QUEST/HIATT's fraudulent lab test reporting and the resulting intentional discrimination based on the medical status (HIV) flowing as a direct result as stated above, immunity is **not** a defense recognized under the law. *Clinton v. Jones, 520 U.S. 681 (1997)* [ No one is above the law when sued for discrimination, not even the President of the United States]; also, *State of Washington v. President Donald Trump, 9th Cir, (Feb. 2017);[Per Curiam Order, Injunction Against Discrimination].*

MORRISON has shown Appellees' collective acts were intentional resulting in their creation of the events to intentionally deprive TOMMY of a

16

boxing license to pursue his career as a professional boxer based on the medical status they created for him … 'HIV'.

Based on the strong public policy grounds against discrimination Appellees have waived their purported immunity and are liable for violating TOMMY's Constitutional rights.

## B. Appellees' continuing, misleading assertions.

**(i)** NSAC, continuing to this day assert a QUEST/HIATT clinical lab report can 'show that an applicant's blood [TOMMY's] is, or not, infected with the human immunodeficiency virus/HIV, highlighting a stark inconsistency in their defense, one that has existed from the start of this action but that the district court never required *Appellees* to account for.

**(ii)** After two years of litigation, the lower court ruled **a)** the tests on TOMMY did not detect the *human immunodeficiency virus/HIV*; **b)** Dr. VOY did not order the blood test, although listed on the lab report; and **c)** HIATT in 2007, although an unlicensed physician/ non-board certified pathologist, disclosed TOMMY's reports to GOODMAN, whom Appellees now concede in their Answering Brief was never TOMMY's physician.

> **THE COURT:**
> **"We wouldn't even be having this discussion**
> **if the test was specific for the existence of the virus or not.**
> **That's obviously why there's even the possibility of a claim**
> **the tests didn't test for the virus".**
> *Hon. Judge Richard F.Boulware II. (Hearing Sep. 08th 2016)*

THE COURT: "Dr.Voy did not test a blood sample
of Mr.Morrison's, and only completed
a physical examination of Mr. Morrison."

*Hon. Judge Richard F. Boulware II.*
*(Opinion & Order, dkt#277)*

**(iii)** QUEST/HIATT conceded and **told for the very first time** to MORRISON, the general public, and to third non-party physicians in this case, and the lower court, <u>now more than 20 years later</u>, further tolling any statute of limitations, that the February 10th, 1996, <u>QUEST lab report</u>, (or any lab report between 1996 and 2013 in front of this court) was not, is not, never was, a showing/ diagnosis of any condition, and that only *state defendants* relied upon it to make their admittedly wrongful 'medical denial' ["permanent medical suspension"] of TOMMY which terminated his multimillion dollar boxing career, and events of February 10th, 1996:

> **QUEST/HIATT: "While Quest diagnostics defends the accuracy of its <u>laboratory test results</u>, it has <u>never claimed</u> to have diagnosed Tommy Morrison with <u>any condition.</u>"**
>
> *Counsel Caldwell, Quest/Hiatt (dkt#91page.8:26-27)*
> *\*Laboratory test results...never claimed...any condition.*

**(iv)** NSAC now, **told for the first time,** suddenly claim it is not *their*

*'job'* to confirm laboratory findings.

> **<u>STATE DEFENDANTS</u>: It is not the job of the NSAC nor its employees or officers to confirm laboratory findings.**

*State's Answering Brief p.47*

**(v)** However, NSAC proceeded to intentionally issue their own

**immediate indefinite medical suspension effective February 10th, 1996**,

completely disregarding Dr.Voy's written medical report, signed, submitted by

him to NSAC/RATNER confirming TOMMY was physically and mentally fit

to box on February 10th, 1996.

**(vi)** NSAC were put on notice that TOMMY was fit to fight at the time.

'Standard of care' in Nevada, and other parts of the world, physicians ENSURE

*differential diagnoses* (i.e. other medical conditions ruled that may have same

or similar symptoms) are ruled out, when test results do not correspond to

clinical and physical presentations of the patient. TOMMY was discriminated

against and not afforded this 'standard of care' by any of the Appellees.

Newly discovered evidence recently revealed by Appellees proves state

defendants delivered a 'medical denial' to third parties, unlicensed for the

fight, not named on any medical release form; and self-servingly interpreted

the 'lab report' as a condition of 'positive for human immunodeficiency virus',

using tests that do not detect the virus/HIV (not even today in 2017), and with

out the ordering physician present.

> STATE DEFENDANTS: Thus in 1996, Ratner's decision to inform
> the Boxer's representative that the Boxer was not medically cleared
> to fight, and Dr. Goodman's 2007 inquiry into the testing process
> were done in good faith and did not violate any law".

*Appellees' Answering Brief p.44*

19

State defendants were supposedly under the color of office but actually acting outside of their legal authority, knowledge, education by self-interpreting a QUEST/HIATT lab report of Positive Western Blot test **wrongfully** asserting the misplaced pretext of the appearance of a confirmation of TOMMY's blood as carrying the HIV – *human immunodeficiency virus.*

**(vii)** NSAC by their intentional failure to contest, these recently revealed facts now are deemed undisputed.

> "QUEST reported results of tests as a definitive showing of the human immunodeficiency virus…but a "Positive Western Blot" *also means positive for HLA antibodies in autoimmune disorders* unrelated to HIV. (*APP.A.27*)" *MORRISON's Opening Brief p.35*.

Violations of procedural due process may be redressed under *USC 42 1983, the Civil Rights Act (Carey v. Fiphus, 435 U.S. 247 (1978).)* The right to procedural due process is 'absolute' in that it does not depend upon the merits of the underlying substantive allegations *(id., at p. 266 [55 L.Ed.2d at pp. 266-267])."*

*United States Constitution's Rights,* which protect TOMMY and Boxers, to protect him especially when as here, are forbidden to assert sovereign immunity, quasi-judicial immunity, qualified immunity or any other immunity as a matter of law. *Promotions, Ltd. v. Conrad, 420 U.S. 546 (1975); United States Constitution*

20

and the Federal statutes in force to protect their federal rights, *Articles VII, VII(v) and (h)*.

**(viii)** Pursuant to *NRS 197.180; NRS 197.200; NRS 197.220,* Appellees' conduct was in bad faith, and against the law.

**(ix)** Public officers who, being authorized by law to make or give a certificate or other writing (such as a lab-report), knowingly makes and delivers as true a certificate or writing containing any statement (a condition of HIV), which the public officer knows to be false is a crime. **NSAC/RATNER/GOODMAN were aware, or should have been aware that a lab report is not a condition of any disease, not even HIV. Closing their collective professional eyes to the truthful facts and asking this Court to do the same is even a greater injustice to TOMMY, MORRISON, all other Boxers and the public.**

**(x)** The offering of QUEST lab reports, and acceptance of this lab report by NSAC/RATNER/GOODMAN **as** a 'condition of HIV', was the sole reason for the cancellation of a $50,000 bout; immediate indefinite medical suspension leading to the loss of a multi-million-dollar fight contract with Don King; cancellation of boxing license #C1306, and TOMMY forever living with the stigma of a loathsome disease 'HIV' and being declared 'disabled' under the American Disabilities Act effective February 10th, 1996.

21

**(xi)** *NRS 197.180.* Any person who willfully takes upon himself or herself to exercise or officiate in any office or <u>place of another,</u> without being lawfully authorized thereto, is guilty of a gross misdemeanor. [1911 C&P § 539; RL § 6804; NCL § 10485] (NRS A <u>1967, 462</u>).

**(xii)** *NRS 197.200* **Oppression under color of office.**

1.    (d) Does any act whereby the person, <u>property or rights of another person</u> <u>are injured, commits oppression.</u>
2.    An officer or person committing oppression shall be punished: (b) Where no physical force or immediate threat of physical force is used, for a gross misdemeanor. [1911 C&P § 541; RL § 6806; NCL § 10487] — (NRS A <u>1967, 462</u>; <u>1995, 1172</u>)

**(xiii)** *NRS 197.220* Every public officer or other person who shall willfully disobey **any provision of law** regulating his or her official conduct in cases for which no other punishment is provided shall be guilty of a misdemeanor.

**(xiv)** Granting MSJ based on statute of limitations when the same conduct of fraud, deceit, misrepresentation, and *health care fraud* exists today that forced TOMMY to be classified as 'disabled' and receive health care benefits is against public policy, and considered <u>health care fraud</u>. *18 USC 1347.*

**(xv)** *Appellees'* continuing fraudulent misrepresentations, contradictions, omissions have been uncovered during this action. Discovery Rule applies.

22

**(xvi)** State defendants' attempt to re-plead immunity for their unconscionable actions scream Color of Law. This is neither law nor what the law should be.

## 4.   TOMMY WAS A BOXER, NOT PHYSICIAN.

TOMMY was a BOXER not physician, did not select, perform or self-report results of testing on February 10, 1996, or any other time. TOMMY was not aware that the tests, *whether performed once or 100 times*, still did not detect the human immunodeficiency virus/HIV in Las Vegas, or any state in the USA.

In fact, TOMMY was interviewed by Larry King in February 1996, and openly stated that he had **'tested positive for the virus'**, not even knowing then that 'the tests didn't test for the virus' as uncovered in this action.

TOMMY was not aware lab reports handed to him, mailed, faxed, emailed to physicians, such as in the 'document dump' now in front of this court, were never a diagnosis or showing of HIV, but appellees even want this Appellate Court to close their eyes to that **never-been-told fact.**

TOMMY's only proof of a diagnosis of HIV **was a lab report.** He did not know **packet inserts** with warnings, limitations, disclaimers, had not been given to his physicians, nor was he aware **packet inserts** existed.

TOMMY did not know his blood reacted to tests because he had auto-immune antibodies, as CDC, FDA, and test kit companies acknowledge and

23

warn. He did not know over 100 other non-HIV-related conditions, many of which he had, react to the testing purchased, performed, and reported by QUEST/HIATT.

TOMMY relied on lab reports, because Appellees relied upon them and required him to do so until his death.

Appellees put no one on notice that a lab report is not a confirmation of HIV, **until two years after TOMMY's death. (2015).**

TOMMY was never able to receive the benefit of the court's ruling: **the 'tests don't test for the virus'. September 08th, 2016, three years after TOMMY's death.**

Equitable tolling applies. TOMMY, nor MORRISON, knew what Appellees knew, or should have known, regarding limitations of tests, existence of packet inserts, and lab reports are not a diagnosis/showing or confirmation of any disease. Appellees should have disclosed this information to TOMMY in 1996, and throughout his attempted come-backs.

**Truth is, genuine issues of material fact exist and MSJ is not appropriate. Packet Inserts of all these 100 tests Appellees turn a blind eye to, remain in dispute until the court rules them into existence.**

24

## 5.  APPELLEES OPINE NO CONTRACT EXISTS.

Basic law of contract is similar in all common-law countries – countries that derive their legal system from England. Three prongs are needed to form a valid contract.

**Contract 1.:** Multi-million-dollar fight contract: initialed by both parties, 3 pages of the contract filed in this court. The contract was not contingent on a win or loss against Lennox Lewis, if that were the case Don King would not have been the promoter in 1996.

- An offer by one person – DON KING

- Acceptance by another person – TOMMY MORRISON

- A mutual exchange of value between the parties - $10million dollars.

**February 10th, 1996 contract issued by NSAC but not produced by them in this court, yet acknowledged throughout this action:**

**Contract 2:**

- An offer by one person – DON KING

- Acceptance by another person – TOMMY MORRISON

- A mutual exchange of value between the parties- $50,000.00

Appellees cannot argue over three pages of a multi-million-dollar contract, on record, when they have not produced the contract they authored for February 10th, 1996.

25

## 6.   APPELLEES OPINE THEY HAVE NO KNOWLEDGE.

State defendants now claim *no first-hand knowledge:* about tests used on TOMMY; about laboratory reports not a diagnosis; *about* tests reported do not diagnose HIV infection, nor human immunodeficiency virus; *no first-hand knowledge* tests used in 1996 and repeatedly through to 2013 on TOMMY react to autoimmune antibodies and other conditions; *no first-hand knowledge* manufacturers supply QUEST/HIATT with instructions; intended uses; limitations; reactions occur to unrelated to HIV; *no first-hand knowledge* interpreting test results (they did Feb.10) ; *that* Elisa, Westernblot, Roche/PCR Viral load tests do not diagnose the virus or HIV infection or where the February 10th, 1996 Boxing Agreement is for $50,000.00 **they authored**.

It is extremely relevant that this court take notice of Appellees' conflicting testimonies throughout this action.

**"The duty of the NSAC is to protect the health and safety of the Fighters and to comply with the requirements of NRS and NAC Chapter 467."** *State's Answering Brief p.37.* But...

**"The State Defendants did not violate a standard of care"** *State's Answering Brief p.37.* And...

**"A defendant cannot breach a duty that they do not have."** *State's Answering Brief p.37.*

26

NSAC Medical Advisory Board was made up of physicians. State defendants cannot have it both ways.

## 7.   STATE DEFENDANTS ARE RESPONSIBLE TO PROTECT THE HEALTH AND SAFETY OF THE PUBLIC WHICH INCLUDES THE BOXERS.

**Adequacy of a warning is a question of fact to be determined by the JURY.** *Bituminous Casualty Corp. v. Black and Decker Manufacturing Co.,* 518 S.W.2d 868, 873 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.).

Appellees adequately trained and familiar with the product were capable of passing on knowledge to fighters, but did not. *See Khan v. Velsicol Chemical Corp.,* 711 S.W.2d 310 (Tex.App.—Dallas 1985, writ ref'd n.r.e.); *Jones v. Hittle Service, Inc.; Shell Oil Co. v. Gutierrez.*

## 8.    UNDISCLOSED PACKET INSERTS Are Material and Necessary.

**Undisclosed Manufacturers' Packet Inserts** on TOMMY's tests between 1996 and 2013 explain results are *consistent with other possibilities*. 100 other *non-HIV-related* conditions cause reactions to their testing and could be interpreted to display a number of potential conditions, nevertheless, not one of TOMMY's tests concluded the *human immunodeficiency virus*, nor diagnosed *HIV infection.* Appellees did not contend, discuss, or squarely address this fact.

Packet Inserts state **no standard** in detecting the presence, or absence, of _Antibodies to HIV_. Despite this, QUEST/HIATT intentionally omitted these specific alternatives, and without Federal, or State authority,presented TOMMY, physicians, and court, a _condition_ that TOMMY's blood was infected with HIV with misleading lab reports.

Discovery led MORRISON to uncover third-party physicians to this day had _no opinions of their own_ merely adopting QUEST/HIATT's interpretation of their _self-serving lab reports_ as definitive diagnoses, showing, of 'HIV', without knowledge of Packet Insert contents, reviewed and approved by FDA, _as part of PMA Review Process,_ manufacturers supply with test kits to Distributors QUEST/HIATT.

## 9.   TEST KIT MANUFACTURER LIMITATIONS, WARNINGS,

## DISCLAIMERS REMAIN CONCEALED BY ALL APPELLEES.

### A genuine issue of material facts exist.

**ABBOTT:** "At present there is no recognized standard for establishing the presence or absence of HIV-1 antibodies in human blood." _FDA packet insert - Elisa Test_

**ROCHE PCR/VIRAL LOAD**: "The Amplicor HIV-1 Monitor test, is not intended to be used as a screening test for HIV, or as a diagnostic test to confirm the presence of HIV infection" _FDA packet insert –ROCHE_

**ROCHE:**
"Thank you for your interest.

28

Because there have been several different emails over the past few days,
we want to be clear regarding the intended use of the Roche
FDA- approved COBAS AmpilPrep/COBAS Taqman HIV-1 Test, v2.o.
A copy of the **package insert** for this test is attached,
and the 'intended use' statement can be found on page.2.
Please note that **neither this test nor** any other Roche Diagnostics assay
**is intended** for use as a diagnostic test to confirm the presence of *HIV-1
infection." Sarah I. Mosley, PhD, Manager PAS,*
*Medical and Scientific Affairs, Roche Diagnostics Corp.*

Manufacturers, as well as suppliers of a product, (QUEST/HIATT), have a

**duty** to inform users of hazards associated with the use of its products.

*Restatement (Second) of Torts* § 388 (1965); *Olivarez v. Broadway Hardware,*

*Inc., 564 S.W.2d 195 (Tex.Civ. App.—Corpus Christi 1978, writ ref'd n.r. e.).*

Courts have held bulk suppliers, one who sells a product to a **distributor**

who in turn further sells the product, (to physicians, TOMMY, the public) need

only warn its **intermediate distributor, (QUEST/HIATT),** and not each indi-

vidual consumer. *See Jones v. Hittle Service, Inc.,* 219 Kan. 627, 549 P.2d 1383

(1976); *Shell Oil Co. v. Gutierrez,* 119 Ariz. 426, 581 P.2d 271

(Ariz.App.1978).

Appellees are adequately trained, familiar with the properties of the

product, capable of passing on knowledge to consumers, **but did not.** *See Khan*

*v. Velsicol Chemical Corp.,* 711 S.W.2d 310 (Tex.App.—Dallas 1985, writ ref'd

n.r.e.); *Jones v. Hittle Service, Inc.; Shell Oil Co. v. Gutierrez.*

**10.  APPELLEES' NEW ISSUES RAISED are deemed material for a**

**Trial to occur. Existence and content of undisclosed evidence has been**

**established.**

Materiality of this evidence under *BRADY* is a question of law. *Brady v.*

*Maryland, U.S. Supreme Court. -373 U.S.83 (1963), a* remedy for a *Brady viola-*

*tion* is trial. It determines a *Brady* violation was the result of outrageous conduct

amounting to a due process violation. *Id.at 913.*

> **A.   Appellees scramble to add the word (*"negative test"*). on the**
> **record further *discriminating* against fighters testing**
> **'reactive/positive' for *autoimmune antibodies* to over 100 other**
> **non-HIV conditions, not contagious in the ring.**
>
> 'One of the requirements is to provide a laboratory test that
> shows that the applicant is not infected with the human immuno-
> deficiency virus ("negative test").'
> *(State's Answering Brief p.3.)*

But, pursuant to *NAC 467.027(3)*, **'negative test'** is not part of its

wording.

> **B.   Pursuant to *NRS467.1005* TOMMY's personal health**
> **information, new or old, could not be disclosed without**
> **TOMMY's approval. GOODMAN breached the law in 2007.**
> **The 1996 medical release form had already expired.**
>
>
> "NRS 467.1005 Confidentiality of certain information concerning
> applicant for license; disclosure of information procedures."
> *(State's Answering Brief p.42,43)*

However, NRS 467.1005, except as otherwise provided in subsection 2,

the Commission shall keep confidential:

> **1(a) Any information** that it receives concerning an applicant for the issuance of a license pursuant to this chapter which is **declared confidential by law** …
> **1(d) Any information** required to be disclosed to the Commission and kept confidential pursuant to **federal law.**
> **2.** The Commission shall reveal the information set forth in subsection 1:
> (b) To any person **upon the request of the person who is the subject of the information**;

**C.**     **Pursuant to court records, NSAC, required TOMMY to take the Roche/PCR test in 2010. (which does not detect/diagnose HIV-infection).**

> "State Defendants were not involved with the Boxers Choice of Provider to perform the HIV test process, or what specific tests were performed." *(State's Answering Brief p.14.)*

**D.**     **No AIDS 'defining diseases' were present in TOMMY.**

> "Death due to complications of untreated AIDS."
> *(Appellees' Answering Brief)*

Death Certificate issued September 4th,2013 states *other-wise*: **Cause of Death: pseudomonas septicemia, cardiac arrest, multi-organ failure, septic shock.**

**E.**     **Pursuant to CDC and *Appellees' Document 175-11*, CD4+ counts are used as a 'surveillance case' definition, for '*statistics*', but Appellees change CDC recommendations just for this action.**

> "Low T-cell count confirmed Boxer was HIV positive."
> *(Appellees'Answering Brief)*

31

CDC emphatically state these counts **_are NOT a diagnosis_** of AIDS, because other non-HIV-related conditions effect CD4+ counts, and nor do these counts confirm HIV positive.

### F.   Appellees now claim FDA Approved Packet Insert statements were created by an organization "*Alberta Reappraising AIDS Society*", and not by manufacturers.

But, it is the FDA and manufacturers that acknowledge the wording within the packet inserts and claim the ELISA, nor Western blot, nor Viral Load/PCR tests are specific to diagnose HIV infection, or HIV/Virus.  ROCHE Diagnostics, and Kary Mullis himself, **Nobel Prize laureate** for his discovery of the PCR method, categorically rejects the use of 'his' method for quantitative measurements of HIV viremia. *(Mullis KB. Pantheon;1998).*

### G.   MORRISON Seeks NOT to Alter Manufacturers' FDA Labeling, nor FDA/PMA Labeling Requirements of Packet Insert warnings/disclaimers.

FDA approved statements are clear, but **undisclosed** to TOMMY, physicians, the public, and courts by Appellees.

> QUEST/HIATT: "The content of clinical laboratory test reports is   governed by both CLIA and Nevada regulations. Those regulations specifically state the required elements of a laboratory test report, which do not include the inclusions of PMA information.
> 42 C.F.R.§493.1291; NEV.ADMIN.CODE §652.340"
> *(Quest Answering Brief p.47)*

Neither *42 C.F.R.§493.1291 nor NAC 652.340* confirm **warnings** and **limitations** cannot be placed on <u>lab reports.</u> **Adequacy of a warning is a**

32

question of fact to be determined <u>by the jury.</u> *Bituminous Casualty Corp. v.*

*Black and Decker Manufacturing Co.,* 518 S.W.2d 868, 873 (Tex.Civ.App.—

Dallas 1974, writ ref'd n.r.e.).

> **H.  Packet Inserts were provided to <u>Counsel Caldwell</u> by
> MORRISON's *Expert Rebuttal Witness*. Video deposition
> testimony proves that.  QUEST/HIATT now further
> misrepresent:**

" In this litigation, Morrison herself never actually
produced the product labels (referred to by Morrison as
"package inserts") upon which she relies…"

*(Quest Answering Brief p.46)*

**Packet Inserts are, and have always been,** in QUEST/HIATT's custody,

possession, and control from when they purchased tests from manufacturers, to

further promote, distribute, and sell to third parties.

> **I.  Since 1996 forward QUEST/HIATT have been including P.31 to
> report HIV in TOMMY, and the public, even though FDA and
> CDC dropped this marker in 1993:**

<u>CALDWELL:</u> ----but when you have P31 or P32, it's
never been known to have a false positive.
So the algorithm was what was ordered, and that's
what was done in <u>1996 forward</u>.

  <u>THE COURT:</u>   <u>Right.</u>

*(page.15:14-17 Hearing Sep.08[th],2016)*

MORRISON:   <u>Wrong.</u>
Counsel misleads the court by stating p31 and p32 are conclusive for
'HIV'.
*First,* p31 is also found in fish.
*Second,* p32 is a mitochondrial/cell surface protein overexpressed in cer-
tain cancer cells. Neither are specific for HIV.

33

Peer reviewed medical literature confirms p32 is exclusively localized in the mitochondrial matrix and this has been verified using an *electron microscope* and published in the *'Journal of Biological Chemistry'*. No p31 or p32 were found in TOMMY's blood under electron microscope."

*(MORRISON'S Opening Brief p.13 )*

**CALDWELL**:   (Answering Brief did not contend, discuss, or address.)

**MORRISON:**   *(Appellant's Reply Brief)*

> ➤ **ASTPHLD/CDC deleted p31 as a criteria
> for a positive Western blot.**

*(Quest Document 175-12
filed **Jun,08[th]**,2016 p.85)*

> ➤ **The 1993 FDA-revised criteria
> for a positive Western blot result
> dropped the requirement for p31 reactivity".**

*(Quest Document 175-11
filed **Jun.08[th]**,2016
JAMA, Sep. 23/30, 1998-Vol 280. No.12 p.65)*

**J.___THIRD NON-PARTY PHYSICIANS ,1996-2013, were not aware of test names, packet inserts, intended uses, other interfering conditions, prior to ordering them, and that lab reports were not a ready-made patient specific diagnoses.**

**Further,** embarrassingly for *Appellees*, alleged samples of TOMMY's

blood tested 100 times, with the very same tests, in different parts of the USA,

revealed *different* results as demonstrated in Appellees exhibits, and further

uncontested in their answering briefs:

(MORRISON's Opening Brief p.41.)

"Physicians merely check a box that states 'HIV' on a QUEST

34

requisition form without knowing the names and intended use,

limitations, warnings, of the tests being used by QUEST."

### K.    FDA PMA Labeling Requirements on TOMMY's tests were and are extremely specific. If not adhered to, *manufacturers* do not receive an Approval to sell test kits to QUEST/HIATT.

QUEST/HIATT continue misleading the courts they never receive(d)

**Packet Inserts**:

> "The alleged "test kit warnings" upon which Morrison relies
> appear to be package inserts that manufacturers are required
> to provide to the FDA for approval as part of the PMA."

*(Quest Answering Brief p.46)*

Appellees have failed to produce any Packet Inserts corresponding to

'over 100 tests'. Initially claiming 1) *packet inserts* did not exist, 2) were in the

hands of third parties, and not in their possession, custody, or control.

### This is fraud upon the court. Pursuant to: 42 C.F.R.§493.1291

" (e) The laboratory must, upon request,
make available to clients a list of test methods employed
by the laboratory and, as applicable, the
performance specifications established or verified
as specified in § 493.1253. In addition, information
that may affect the interpretation of test results, for
example test interferences, must be provided upon request.
Pertinent updates on testing information must be provided
to clients whenever changes occur that affect the test
results or interpretation of test results."

**L.     Dr.Ho works at a non CLIA *research center* in New York utilizing 'home-brew' testing not approved by FDA.**

Appellees claim there is evidence of isolation/purification of the virus in TOMMY's blood**, but have failed to produce** the most  frequently used technique for isolation purification of retroviruses (HIV is a retrovirus) which includes 5 primary steps: <u>1.</u> Concentration of the viral particles by centrifugation; <u>2.</u> Electron microscopy monitoring of the concentrated viral particles; <u>3.</u> Biochemical and genetic analysis of the purified viral particles; <u>4.</u> Controlling experiments to avoid misinterpreting endogenous retroviruses as exogenous infectious retroviruses; <u>5.</u> Biological tests to ascertain if the isolated retrovirus is indeed potentially pathogenic and virulent. No supporting scientific data supports Ho's isolation of HIV/Virus in Tommy exist on the record. Undisclosed 'evidence' Appellees claim to support their MSJ **<u>must be produced, and replicated.</u>**

**M.     The New '1989' allegation is automatically deemed material for a Trial to occur.**

".... despite having previously tested positive for HIV in 1989."
*(State's Answering Brief p.10)*

In an appeal, attorneys' statements cannot be accepted as a substitute for proof in the record, even when the appellate court has no reason to disbelieve the statement. *Landers v Smith, 379 S.W. 2d 884, 887 (S.D.App.1964).*

**" Oral reports of prior laboratory test results are not acceptable."**

*(MMWR/Vol.57 Quest Document 175-11 filed Jun.08,2016, p.3)*

**N.  Since 1984, the world has recognized, accepted, the Electron
    Microscope and EM photo images, and was used to test
    and make the first diagnosis of the discovery of HIV
    in humans.**

**Now, 33 years later,** Appellees without scientific proof, or sworn

affidavits directly from their alleged sources, FDA and CDC, recklessly claim:

> "Morrison's gross mischaracterization of this type of testing as
> "accepted, peer-reviewed technology," (Br.,p.29),   is not
>   supported by any evidence."
>
> *(State's Answering Brief p.30)*

> "Electron microscopy is not recognized by the FDA or CDC
> for testing or diagnosing HIV in humans."
>
> *(State's Answering Brief p.3*

**However, Uncontested by Appellees:**

> "However, nobody at the FDA will be able to advise you
> regarding which test or tests to employ…CDC-INFO is not
> able to recommend a brand name of a HIV test to you as
> CDC is not the regulatory agency for the approval
> of these tests."
>
> *David Banks FDA Office Of Special Health Issues*
> *(dkt#283 p.26:14-16)*

**And,** MORRISON's Opening Brief p.39:

> " CDC does not make diagnoses for any physician.
> CDC confirms the 'testing algorithm' also reacts to autoimmune
> disorders and autoimmune antibodies…and CDC does not refer
> specific testing or trade names, does not regulate testing, does not
> see the patient, cannot report a positive result, or diagnoses for the
> presence of the human immunodeficiency virus."

**And,** <u>MORRISON's Opening Brief p.39:</u>

> "No scientific evidence exists on the record that TOMMY's blood was 'positive for the human immunodeficiency virus' at any time **by CDC.**"

**And,** <u>MORRISON's Opening Brief p.29:</u>

> " HIV discovery was patented. U.S. PATENT #4,647,773; #4464465; and legally documented claims of the technique used and scientific terminology: *retrovirus; virus observed by electron microscopy"*

Proper foundation, is to put Branson on the witness stand to <u>testify for the jury</u> as to what he did in terms of preparing his report. Not to have this witness, (who influenced the court) testify prejudices MORRISON.

### O.   QUEST/HIATT's 'Bill of Costs', erroneously directed at a *Nebraska Court*, include subpoenaed records from Boston and Omaha.

Counsel Caldwell successfully hacked TOMMY's 'data' prior to entering this case, and cannot now, **for the first time, 4 (four) years later,** inform the Court she was 'not successful in obtaining' TOMMY's **Final Diagnosis of September 17, 2013, <u>superseding a discharge summary upon which Appellees base their MSJ and now want the court to violate FDA mandates and manufacturers packet inserts to believe a ROCHE test detects the virus/HIV and HIV infection to win their MSJ.</u>**

Nebraska personally informed MORRISON everything in TOMMY's files were presented to Counsel Caldwell upon receipt of her subpoena.

> **P.    Appellees need to explain why they are still producing lab reports to this Court as definitive diagnoses of HIV in TOMMY when the test kits they purchase do not diagnose HIV.**

And, as conceded are not a diagnosis of any condition in TOMMY.

## 10.   APPELLEES' EXHIBITS lack: FDA Premarket Approvals; clinical/physical examinations to support clinical diagnoses of HIV; no exhibits marked or received in evidence supporting 'proof of the HIV/Virus' *other than* presentation of 'QUEST self-serving lab reports without scientific data such as *human clinical trials* to validate them.

**Branson's Affidavit:** Branson's role was to assist the court by providing objective, unbiased opinions on matters within his expertise, his Affidavit' is entirely worthless, his testimony has made a mockery of the oath, and he is little more than a 'mouthpiece' for *Appellees*. Branson provide no <u>scientific</u> study, or reference one, supporting 'antibodies' are synonymous with 'infection'. **No** literature supporting a medical condition of 'contagious antibodies'. Branson has never seen 'HIV' because to see 'it' an Electron Microscope would be required, a technology not accepted <u>by Branson.</u> *(p.30 Appellees Brief).* Branson claims

**p31** is proof of HIV infection, but **omits ASTPHLD/CDC deleted p31** as criteria for a positive Western blot. (*p.85 Document 175-12), **and***

> **"The 1993 FDA-revised criteria for a positive Western blot result dropped the requirement for p31 reactivity".**

> *(p.65 Document 175-11 filed by QUEST JAMA, September 23/30, 1998-Vol 280. No.12.)*

Branson fails to adhere to his own *Document 175-11 Jun.08th,2016.* TOMMY's personal health, **(thousands of pages now in front of this court),** never corresponded with <u>category A, B, or C,</u> of the CDC 'clinical categories of HIV infection' and any TOMMY <u>CD4+ counts</u> 'reports' are used **only** as a 'surveillance case' definition, basically for '*statistics*' and per CDC *are NOT a diagnosis of AIDS,* because other non-HIV-related conditions also effect CD4+ counts.

> "CD4+ T-lymphocyte test results alone should not be used as a surrogate marker for HIV or AIDS."

> "Information from a laboratory-initiated report of a CD4+ T-lymphocyte count is insufficient for reporting a case of AIDS".

> "Health care providers MUST ENSURE that persons who have a CD4+ T-lymphocyte count of less than 200/Ul are HIV infected BEFORE initiating treatment for HIV disease or reporting persons as cases of AIDS".

Branson excluded critical inculpatory CDC data, and used lab reports that do not confirm any condition, used tests that do not diagnose HIV infection, and

failed to inform the court that TOMMY's health never fell into Category A, B, C, and CD4+ counts reports are not a diagnosis of AIDS.

How Branson concluded TOMMY had CMV (cytomegalovirus) when the testing revealed below <290 IU/ mL and his blood could not be quantitated for CMV and no treatment was necessary in 2013.

**Genuine issues of material facts.**

## 11.  APPELLANT SHOULD BE ALLOWED TO CONDUCT FURTHER DISCOVERY REGARDING APPELLEES' CONTINUING HEALTH CARE FRAUD.

Because in the court's current ruling, packet inserts, manufacturers' disclaimers, warnings, reactions to QUEST/HIATT's tests by non-HIV-related conditions, and the *true* meaning of a QUEST lab report will continue to be fraudulently concealed from the public. TOMMY was a victim of Appellees' healthcare fraud when labelled 'disabled' on February 10th, 1996.

TOMMY's blood did not harbor the human immunodeficiency virus/HIV.

TOMMY's case is irrefutably...a public policy case, and shall not be ignored.

41

## CONCLUSION

'For there is nothing hidden that will not become manifest, nor secret which shall not be revealed, and nothing hidden that won't be made known and come to the light to be revealed, and everything concealed is meant to be brought to light.' *Luke 8:17.*

Respectfully reverse and remand with instructions.

**APRIL 04th, 2017**          **Respectfully submitted,**

By _____

**Patricia Harding Morrison- Appellant**

**Personal Representative/Administratrix**

**THE ESTATE OF TOMMY MORRISON**

42

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS,
AND TYPE STYLE REQUIREMENTS**

**I.**     This Brief complies with the type-volume limitation

of Fed.R.App.P.32(a)(7)(B)(ii) because the Brief contains: **8394 words**

excluding the parts of the brief exempted by Fed.R.App.P.32(a)(7)(B)(iii).

**II.**    This Brief complies with the typeface requirements

of Fed.R.App.P.32(a)(5) and the type style requirements

of Fed.R.App.P.32(a)(6) because this Brief has been prepared

in a proportionally spaced typeface using Microsoft Word 2010,

in 14-point Times New Roman.

**III.**   Form 8.

**APRIL 04th, 2017**          **THE ESTATE OF TOMMY MORRISON,**

By _____

PATRICIA HARDING MORRISON

PLAINTIFF-APPELLANT

PERSONAL REPRESENTATIVE /

ADMINISTRATRIX

43

## CERTIFICATE OF IDENTICAL COMPLIANCE
## OF BRIEFS

I certify that the text of the briefs sent to defense counsels are identical to the text of this original copy sent on April 04th, 2017, to the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit.

**APRIL 04th, 2017**          **THE ESTATE OF TOMMY MORRISON,**

By _____

PATRICIA HARDING MORRISON

PLAINTIFF-APPELLANT

PERSONAL REPRESENTATIVE /

ADMINISTRATRIX

44

# CERTIFICATE OF SERVICE

## Case Name: MORRISON v QUEST ET AL

### 9th Cir. Case No: 16-17050

I am over 18 years of age and a party to this action. On April 04th, 2017, I certify that I sent from Wichita, Kansas, the following documents:

## APPELLANT'S SINGLE REPLY BRIEF

by enclosing copies in envelopes and depositing the sealed envelopes with first class postage fully prepaid to the respondents' attorneys.

A true, identical, correct copy of the above documents were sent using fully prepaid Federal Express Overnight Service to the Office of the Clerk for filing.

Seven additional, bound, copies of the above documents were also sent to the Office of the Clerk. The addresses and recipients are as follows,

D. Faye Caldwell, Pro Hac Vice, Caldwell Everson, PLLC

2777 Allen Parkway, Suite 950, Houston, TX 77019

*(Attorney for Appellees Quest Diagnostics Incorporated and John Hiatt) (served via First Class Mail)*

**and**

45

Vivienne Rakowsky, Esq.

Deputy Attorney General

555 East Washington Avenue, Suite 3900,

Las Vegas, Nevada 89101

*(Attorney for Appellees Nevada State Athletic Commission, Marc*

*Ratner, And Dr. Margaret Goodman (served Via First Class Mail)*

Defense counsels are registered CM/ECF users.

**And for scanning and filing on to the ECF system, to:**

OFFICE OF THE CLERK

James. R. Browning Courthouse, U.S. Court of Appeals,

95 Seventh Street, San Francisco, CA 94103-1526

(Ninth Circuit Court of Appeals)

(served via Federal Express)

I declare I am not a registered CM/ECF user.

I declare under penalty of perjury that the foregoing is true and correct.

**April 04th,  2017**    **THE ESTATE OF TOMMY MORRISON,**

By _____

PATRICIA HARDING MORRISON

PLAINTIFF-APPELLANT

PERSONAL REPRESENTATIVE /

ADMINISTRATRIX

47

**Form 8.** **Certificate of Compliance Pursuant to 9th Circuit Rules 28-1.1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case Number** ___16 - 17050___

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (*check appropriate option*):

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 28-1.1.
The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-1.
The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☑ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b).
The brief is [ 8394 ] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable, and is filed by (1) ☐ separately represented parties; (2) ☑ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the longer length limit authorized by court order dated [_____]
The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 32-2 (a) and is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32 (f), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 29-2 (c)(2) or (3) and is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4.
The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

| Signature of Attorney or Unrepresented Litigant | *[signature] Peter Hardy Morrison* | Date | 4/3/17 |

("s/" plus typed name is acceptable for electronically-filed documents)

*(Rev. 12/1/16)*